**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**FOAM HOLDINGS, INC.**
**d/b/a Alleguard** **PLAINTIFF**

**v.** **Case No. 4:23-cv-00320-KGB**

**CREATIVE FOAM PRODUCTS, LLC, *et al.*** **DEFENDANTS**

**ORDER**

Before the Court is the issue of recusal. Plaintiff Foam Holdings, Inc. d/b/a Alleguard ("Alleguard") seeks this Court's recusal in the middle of a bench trial purportedly based on a document—the 2006 Asset Purchase Agreement ("2006 APA")—that no party to this litigation produced during the discovery period, that all parties to this litigation became aware of at least by January 2026 when Alleguard provided it prior to the start of this bench trial in April 2026, and that no party listed as a trial exhibit. Further, the Court has no way of knowing on the record before it that the document provided by Alleguard was the document executed in 2006 (*see* Dkt. Nos. 199-2; 259-1). The 2006 APA that has been provided to the Court is not signed, is not complete, and Alleguard has offered no witness with personal knowledge who can authenticate the document (*Id.*). Alleguard relies on the fact that this 2006 APA produced to the Court references Timothy W. Grooms of Quattlebaum, Grooms, Tull & Burrow PLLC ("QGT")[1] as a party to receive a copy of any notice sent to purchaser Drew Foam Companies Inc. (Delaware) ("Drew Foam Delaware") (Dkt. No. 199-2, at 31) as a basis to trigger what Alleguard maintains is this Court's mandatory obligation to recuse. The Court observes among other things that, immediately prior to notifying this Court by unfiled letter of its position on recusal, Alleguard filed

---

[1] Quattlebaum, Grooms & Tull PLLC was formerly known as Quattlebaum, Grooms, Tull & Burrow PLLC.

a motion to amend its trial exhibit list in the middle of the bench trial to add the 2006 APA to its exhibit list (Dkt. No. 259). For the following reasons, the Court denies Alleguard's motion to recuse (Dkt. No. 262).

**I. Correspondence First Raising The Issue**

At approximately 4:00 p.m. Central Standard Time on Friday, July 24, 2026, the Court received a letter from John T. Stembridge, counsel for plaintiff Alleguard by electronic mail ("Court's Exhibit A"). In the letter, Stembridge suggests that there are "matters that have recently come to light" that "appear to require [the Court's] recusal under 28 U.S.C. § 455 and Canons 2A and 3C of the Code of Conduct for United States Judges." (Court's Exhibit A, at 1). At approximately 7:15 a.m. Central Standard Time on Monday, July 27, 2026, the Court received a letter from Abtin Mehdizadegan, counsel for defendants Charles Tyner and Creative Foam Products, LLC ("Creative Foam") (collectively "Defendants"), by electronic mail ("Court's Exhibit B"). Mehdizadegan's letter responds to Alleguard's letter and opposes recusal. On July 28, 2029, Mehdizadegan supplemented the exhibits to his letter by electronic mail ("Court's Exhibit C"). On the same day, Stembridge sent a reply to Mehdizadegan's letter to the Court by electronic mail ("Court's Exhibit D").

On July 30, 2026, the Court entered a written Order setting a "schedule for submitting briefs and proof, should any party wish to file briefs or proof on any of the matters raised in the correspondence sent to the Court." (Dkt. No. 261). Thereafter, Alleguard filed a motion for recusal under 28 U.S.C. § 455(a) and (b)(2) and incorporated brief in support (Dkt. No. 262). Defendants responded in opposition to the motion (Dkt. No. 263). Alleguard replied (Dkt. No. 271).

For the following reasons, the Court declines to recuse and denies Alleguard's motion for recusal (Dkt. No. 262). The Court also declines to stay this matter. Trial will continue as scheduled.

## II. Relevant Background

Alleguard filed its verified complaint in this matter on April 3, 2023, alleging violations of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*, against Tyner and Creative Foam in count one (Dkt. No. 1, ¶¶ 55-71); violations of the Arkansas Uniform Trade Secrets Act ("AUTSA"), Arkansas Code Annotated, § 4-75-601, *et seq.*, against Tyner and Creative Foam in count two (*Id.*, ¶¶ 72-84); breach of contract against Tyner in count three arising out of a Confidentiality Agreement ("2001 Confidentiality Agreement") executed on March 9, 2001, between Tyner and Drew Foam Companies, Inc. (*Id.*, ¶¶ 85-93); and unjust enrichment against Tyner and Creative Foam in count four (*Id.*, ¶¶ 94-96). Alleguard seeks injunctive and other specific relief (*Id.*, ¶¶ 97-105).

On April 17, 2023, in its response to the motion for temporary restraining order, Defendants argued the following:

> Alleguard has not demonstrated that it even has standing to enforce the confidentiality [agreement]. Since Tyner signed the confidentiality agreement on March 9, 2001, Drew Foam has been sold a total of four times, with the fourth sale being to W[ynnchurch], now Alleguard. On the face of the purported agreement, it does not provide that Drew Foam could assign the agreement to its successors and assigns. . . . Without knowing the specific terms of each of those sales, and absent any opportunity to conduct discovery, Alleguard has not demonstrated either that it has any rights under the purported [agreement] or that it can enforce any rights contemplated by that document.

(Dkt. No. 17, at 8–9).

Alleguard responded that "[c]ontrary to Defendants' position, Mr. Tyner entered into a valid confidentiality agreement," and promised the Court and all parties that "Alleguard w[ould]

produce evidence showing that the [2001] [C]onfidentiality [A]greement was assigned to Alleguard post-sale." (Dkt. No. 21, at 7, n.5).

Defendants also answered and raised the issue of Alleguard's lack of "standing to enforce the alleged confidentiality policy" in their answer (Dkt. No. 37, at 15, ¶ 7).[2] With the Court's permission, on September 20, 2023, Defendants filed an amended answer asserting as a defense that Alleguard "lacks standing to enforce the alleged confidentiality policy on which Plaintiff's claims are based." (Dkt. No. 60, at 15, ¶ 7).

The discovery deadline in this case was November 12, 2025 (Dkt. No. 120). This Court ruled that certain matters raised before that deadline would be addressed by the Court (*see* Dkt. No. 136, at 15–16). However, the Court declined to grant the final request made by Alleguard for an extension of the discovery deadline (*Id.*).

On January 6, 2026, Tyner filed a motion for partial summary judgment as to count three of Alleguard's complaint (Dkt. No. 160). Specifically, Tyner asserted that judgment should be granted in his favor on Alleguard's breach of contract claim based on the 2001 Confidentiality Agreement between Tyner and Drew Foam Companies, Inc. (*Id.*, ¶ 1). Tyner argued that Alleguard lacks standing to enforce the 2001 Confidentiality Agreement because Alleguard was not a party to the agreement, the agreement was not assigned to Alleguard, and Alleguard is not a successor-in-interest to the original contracting party (*Id.*, ¶ 2). Tyner maintained that, even if Alleguard could enforce the 2001 Confidentiality Agreement, the 2001 Confidentiality Agreement is unenforceable as an improper restraint on trade under Arkansas law (*Id.*, ¶ 3). Further, Tyner asserted that he had not breached the 2001 Confidentiality Agreement regardless (*Id.*, ¶¶ 4, 6) or

---

[2] Defendants filed counterclaims against Alleguard that Defendants later moved to dismiss voluntarily (Dkt. No. 131). The Court granted that motion and dismissed Defendants' counterclaims prior to the start of trial (Dkt. No. 136, at 12–15).

that Alleguard, through its conduct, waived the right to enforce or should be estopped from enforcing the 2001 Confidentiality Agreement (*Id.*, ¶ 5).

Alleguard opposed Tyner's motion for partial summary judgment, asserting disputed issues of material fact precluded granting summary judgment (Dkt. No. 199). Alleguard attached to its response the 2006 APA; this appears based on the record before the Court to be the first time Alleguard or any party to this case produced the 2006 APA during the course of the litigation (Dkt. No. 199-2; 253, at 11). Alleguard's response was filed on January 20, 2026, well after discovery in the case had closed (Dkt. No. 199; *see* Dkt. No. 120). Alleguard specifically argued, in part, that it "has standing to enforce the Agreement under controlling Arkansas and Eighth Circuit authority recognizing successor enforcement of confidentiality covenants where, as here, the employee's duties and obligations remained unchanged." (*Id.*, at 2). Alleguard also maintained that facts in the record, at a minimum, created genuine disputed issues of material fact on breach, waiver, and estoppel (*Id.*, at 2–3).

In his reply, Tyner disputed much of Alleguard's response (Dkt. No. 214). For his initial argument, Tyner asserted that Alleguard should not be permitted to oppose summary judgment with the 2006 APA when Alleguard did not produce that agreement in discovery (Dkt. No. 214, at 5–6).[3] Tyner argued against application of the *de facto* merger doctrine upon which Alleguard

[3] Tyner argued with respect to the 2006 Asset Purchase Agreement, in part, as follows:

> The 2006 Asset Purchase Agreement fell under at least two of Defendants' Requests for Production. In Request for Production No. 6, Defendants requested that Alleguard "identify all documents or documentation . . . that supports, tends to support, or in any way relates to the factual allegations you made or claims you asserted against Defendants in your Complaint." Exhibit 2, Defendants First Set of Interrogatories and Requests for Production of Documents to Plaintiff, p. 8. And in Request for Production No. 19, Defendants requested that Alleguard "[p]roduce all documents, correspondence, records, or other material that relates to your allegations that Defendants have violated any applicable contract, agreement,

relied and argued that, even if that doctrine applies, nothing in that doctrine or the 2006 APA provided a basis upon which Alleguard could prove a right to enforce the 2001 Confidentiality Agreement or establish a genuine issue of material fact to defeat his summary judgment motion (*Id.*, at 2).

Alleguard filed a surreply, arguing many points, including a claim that the 2006 APA was not requested by Defendants in discovery (Dkt. No. 231, at 15–19). In fact, while essentially asserting that it has "contractual privity" to enforce the 2001 Confidentiality Agreement (Dkt. No. 231, at 14 ("Other than the 2006 asset purchase transaction, Defendant does not specifically allege that any of the other Drew Foam corporate transactions actually break Alleguard's contractual privity to enforce the Confidentiality Agreement.")), Alleguard maintained that "none of Defendant's discovery requests specifically mention anything about Drew Foam's corporate transactions at all, much less the specific transactions in 2006 (Drew Foam Delaware), 2012 (Gladstone), 2018 (Bradford Castle Partners), or 2020 (Foam Holdings)." (Dkt. No. 231, at 15). The Court understands these to be four corporate transactions—including corporate entities involved— that occurred from the date Tyner executed the 2001 Confidentiality Agreement with Drew Foam Companies, Inc. to the date Alleguard filed suit attempting to enforce it.

At the summary judgment stage, the Court declined to strike the 2006 APA from the record in the case or to limit the Court's consideration of the 2006 APA to favor one side only in this dispute (Dkt. No. 236, at 3). Construing all reasonable inferences from the record evidence in

---

> statute, or duty that has harmed Alleguard or caused it to incur damages." *Id.* at p. 13. Additionally, Mr. Tyner raised deficiencies in Alleguard's response to both Requests. . . . And the subject of Drew Foam's many purchases and sales was the specific topic of multiple depositions, and of Defendants' subpoena to Wynnchurch Capitol, which Wynnchurch opposed.

(Dkt. No. 214, at 5 n.5).

favor of Alleguard, the Court determined that genuine issues of material fact remained in dispute as to whether Alleguard had standing to enforce the 2001 Confidentiality Agreement with Drew Foam Companies, Inc. under controlling law, whether Tyner had breached the 2001 Confidentiality Agreement, and whether Alleguard had waived its right to enforce the 2001 Confidentiality Agreement or should be estopped from doing so (*Id*., at 5). The Court denied Tyner's motion for partial summary judgment (*Id*.).

The bench trial in this matter began on April 27, 2026, because of a delay with the January trial due to inclement weather, and the bench trial continued on April 28, 2026, and April 30, 2026 (Dkt. Nos. 243; 244; 247). The parties were directed by the Court to submit exhibit and witness lists to the Court 30 minutes before the beginning of trial and did so (Dkt. No. 120, at 3). The parties were also told by the Court during the pretrial conference that the Court would not admit any documents into evidence that were not produced during discovery. The Court stated, "I'm not going to entertain any motions to produce any more discovery. Discovery is closed. But documents that got produced after the discovery deadline can't be used as exhibits at trial." (Dkt. No. 253, at 13).

The 2006 APA was not on the exhibit list that Alleguard provided to the Court at the beginning of the trial of this matter and was not produced in discovery (Dkt. No. 253, at 11; Trial Tr., Vol. III, at 647). Based upon the Court's review, the 2006 APA also is not on Defendants' exhibit list for trial and was not produced by Defendants in discovery.

At approximately 2:00 p.m. Central Standard Time on Friday, July 24, 2026, Alleguard filed a motion to amend trial exhibit list seeking to add the 2006 APA, the 2018 Stock Purchase Agreement, and the 2020 Stock Purchase Agreement to its exhibit list (Dkt. No. 259).

Since June 10, 2026, all parties have been on notice that the bench trial of this matter is set to continue at 9:00 a.m. on Monday, August 10, 2026, and continue through August 12, 2027, and resume on Monday, August 17, 2026, and continue through August 21, 2026 (Dkt. No. 254).

To summarize, the events related to Alleguard's motion are as follows:

- April 3, 2023 – Alleguard files a verified complaint alleging, in part, breach of contract against Tyner in count three based on the 2001 Confidentiality Agreement Tyner entered into with Drew Foam Companies, Inc. (Dkt. No. 1, ¶¶ 85-93), which verified complaint was executed specifically by Eva Madison as counsel for Alleguard and Dusty McNab as Vice President of Sales and Marketing for Foam Holdings, Inc. d/b/a Alleguard[4] (Dkt. No. 1, at 21–22).
- April 17, 2023 – Defendants respond to the motion for temporary restraining order and assert that Alleguard has not demonstrated that it has standing to enforce the 2001 Confidentiality Agreement between Tyner and Drew Foam Companies, Inc. (Dkt. No. 17, at 8-9).
- April 21, 2023 – Alleguard replied and promised to produce evidence showing that the 2001 Confidentiality Agreement between Tyner and Drew Foam Companies, Inc. was assigned to Alleguard post-sale (Dkt. No. 21, at 7, n.5).
- September 20, 2023 – Tyner files an amended answer asserting as a defense that Alleguard lacks standing to enforce the alleged confidentiality policy on which Alleguard's claims are based (Dkt. No. 60, at 15, ¶ 7).

[4] Dusty McNab is also referred to in this record at times as Dustin McNab (*see* Dkt. No. 220, at 3).

- November 12, 2025 – The discovery deadline (Dkt. No. 120). It is undisputed that the 2006 APA was not produced during discovery (*see* Dkt. Nos. 214, at 5–6; 231, at 15–19).
- January 6, 2026 – Tyner files a motion for partial summary judgment based, in part, on Alleguard's lack of standing (Dkt. No. 160, ¶ 2).
- January 20, 2026 – Alleguard asserts that it "immediately located the company's copy" of the 2006 APA and provided it to Defendants and the Court by attaching the 2006 APA to its response to Tyner's motion for partial summary judgment (Dkt. No. 199-2). The 2006 APA references Grooms of QGT as a party to receive a copy of any notice sent to purchaser Drew Foam Companies Inc. (Delaware) ("Drew Foam Delaware") (Dkt. No. 199-2, at 31). Eva Madison's name appears in the signature block of Alleguard's response to Tyner's motion for partial summary judgment (Dkt. No. 199, at 28).
- April 24, 2026 – the Court entered an Order denying Tyner's motion to strike the 2006 APA from the summary judgment record and denied Tyner's motion for partial summary judgment, in part, because the Court found that there was a genuine dispute of material fact as to Alleguard's standing to enforce the 2001 Confidentiality Agreement between Tyner and Drew Foam Companies, Inc. (Dkt. No. 236, at 5).
- April 27, 2026 – Day 1 of the bench trial in this matter (Dkt. No. 243) (the 2006 APA was not on any party's trial exhibit list, including Alleguard's exhibit list; Grooms was not on any party's trial witness list).

## III. Analysis

For the reasons that follow, the Court sees no basis for it to recuse under 28 U.S.C. § 455 and Canons 2A and 3C of the Code of Conduct for United States Judges. Further, the Court determines that Alleguard's motion for recusal is untimely and forfeited.

### A. Recusal Under 28 U.S.C. § 455

There are no grounds for disqualification in this case. Section 455 states, in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> . . .
>
> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
>
> . . . .

28 U.S.C. § 455.

The test for disqualification under § 455 "is one of objective reasonableness, that is, whether the judicial officer's impartiality might reasonably be questioned under the circumstances." *Lunde v. Helms*, 29 F. 3d 367, 370 (8th Cir. 1994). "It is well established that the recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004) (internal quotes omitted); *see also ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2nd Cir. 2012) ("The question. . . is whether an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." (internal quotes omitted)).

**1. 28 U.S.C. § 455(b)(2)**

Alleguard asserts that the Court must recuse under 28 U.S.C. § 455(b)(2) (Dkt. No. 262, at 6–11). Alleguard does not contend, nor is there any evidence on the record, that the Court "served as lawyer in the matter in controversy." 28 U.S.C. § 455(b)(2). Alleguard's argument focuses on the second half of the subsection that provides the Court must disqualify from any matter in which "a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter" (Dkt. No. 262, at 6; Court's Exhibit A, at 3–4). As support for its argument, Alleguard contends, without citation, that "matter in controversy" means the same dispute "or a sufficiently related dispute such that the prior representation bears a *substantial and non-attenuated connection to the merits* of the matter now before the Court." (Dkt. No. 262, at 6; Exhibit A, at 4).

Alleguard discusses several cases in its motion: *Little Rock School District v. Armstrong*, 359 F.3d 957 (8th Cir. 2004), *Philip Morris USA Inc. v. U.S. Food & Drug Administration*, 156 F. Supp. 3d 36 (D.D.C. 2016), *In re Rodgers*, 537 F.2d 1196 (4th Cir. 1976); and *Preston v. United States*, 923 F.2d 731 (9th Cir. 1991) (Dkt. No. 262, at 7–9). The Court will discuss each in turn.

In *Little Rock School District*, the Eighth Circuit Court of Appeals affirmed the denial of recusal. *Id*. There, the current Judge formerly represented the prior Judge in a mandamus proceeding involving the desegregation litigation over which the current Judge was presiding. The Eighth Circuit looked to the "substance of the issues argued and decided in the two proceedings" and held that, because the prior representation "did not touch upon the merits," it was not the same matter. *Id*. at 960–61. Conducting the same analysis here, the Court is not aware from this record what the nature of Grooms's prior representation of Drew Foam Delaware was. Alleguard, in its reply, admits that the 2006 APA "does not identify the Court by name and does not on its face

establish that Quattlebaum, Grooms had in fact served as transaction counsel for Drew Foam in a way sufficient to trigger Section 455(b)(2)." (Court's Exhibit D, at 3).[5]

Even assuming from representations of Alleguard's counsel that Grooms's representation of Drew Foam Delaware was transactional in nature, that representation 20 years ago does not touch upon the merits of the breach of contract claim between Tyner and Alleguard at issue in this case. Alleguard has the burden of proving standing to enforce the 2001 Confidentiality Agreement between Tyner and Drew Foam Companies, Inc.; Tyner has no affirmative defense to prove standing. Alleguard did not produce the 2006 APA in discovery in this case and still has not produced a signed and complete copy of the 2006 APA, in spite of claiming throughout its briefing on the recusal issue that Drew Foam Delaware and Alleguard are essentially the same entity. Defendants also did not produce the 2006 APA in discovery. Moreover, the 2006 APA has not been and is not currently on any party's exhibit list for trial.[6] Grooms has not been and is not now

[5] Ms. Pierson's declaration references unsworn communications with attorney John Bryan whose name also appears in the 2006 APA and states that Grooms "represented Drew Foam Delaware, together with Mr. Bryan and his firm, in the 2006 transaction, consistent with the identification of Mr. Grooms as a notice contact for the purchaser in Section 12.3 of the 2006 APA." (Dkt. No. 264-3, ¶ 10). The Court does not understand the extent of Grooms's representation of Drew Foam Delaware in 2006 from Alleguard's statement. Additionally, the Court has no way of knowing on the record before it that the document produced by Alleguard was the document executed by the parties (*see* Dkt. No. 259-1). The 2006 APA that has been provided to the Court is not signed, is not complete, and Alleguard has offered no witness with personal knowledge who can authenticate the document (*Id.*). The Court notes that attorney Bryan, whose name appears with Grooms on the 2006 APA, also appears on Minority Stockholder Stock Purchase Agreement dated July 2012 that was attached as an exhibit to Tyner's motion for partial summary judgment, but Grooms's name does not (Dkt. No. 160, at 81–96; TYNER-078001-078016).

[6] In its reply, Alleguard makes much of Defendants having placed the 2006 APA on the ELMO during trial (Dkt. No. 270, at 4). Based on the Court's review of the record, counsel for Defendants never questioned a witness about the 2006 APA or moved to have the 2006 APA admitted into evidence (*see* Trial Tr., Vol. III, at 648:19–649:16). It appears to the Court from its reading of the transcript that the 2006 APA was placed on the ELMO as a courtesy to the Court during a conversation between the Court and counsel about standing. Again, Defendants did not

on either party's witness list. Additionally, as the parties can discern from a review of the Court's Financial Interest and Recusal List, which the Court has ordered the parties to review several times in this case (Dkt. Nos. 81; 96; 105; 120), neither Grooms nor Drew Foam Delaware are on the Court's recusal list (*see* Court's Exhibit C). Because of this and other facts on the record, there was no conflict that the Court had an affirmative duty to disclose to the parties in this case.

Alleguard has repeatedly asserted that the 2006 APA is not required to be and is not part of its proof in this case and is only an issue because Tyner belatedly raised standing as a defense in support of his motion for partial summary judgment in this case (*See* Dkt. No. 262, at 14–15; Court's Exhibit D, at 3–4). Neither Alleguard nor Defendants produced the 2006 APA in discovery. According to Alleguard, it provided the 2006 APA to Defendants shortly after it was discovered and filed it on the docket on the same date, January 20, 2026, in response to Tyner's motion for partial summary judgment (Dkt. No. 199-2).

No party has the 2006 APA that has been provided in this case on its exhibit list for trial. Alleguard stated at trial that it intends to prove standing through witness testimony (Trial Tr., Vol. III at 649:17–20; *see also* Dkt. No. 259, at 20). Alleguard's counsel maintains that it intends to rely on the testimony of witnesses with personal knowledge, including at least Tyner, Bobby Cole, and William Givens, to establish the only fact about these transactions that is relevant to this case according to Alleguard – that they were all stock purchases (Trial Tr., Vol. III, at 650:7-12; Dkt.

---

move to admit the document into evidence, and the 2006 APA that Defendants and the Court have been provided is not on any party's trial exhibit list. In their response to the motion to recuse, Defendants have raised several evidentiary issues with the 2006 APA that Alleguard provided to Defendants and the Court including that the document is not signed, the document is not complete, and there is no witness with personal knowledge who can authenticate the document (*see* Dkt. No. 265, at 1, n.1; Trial Tr., Vol. III, at 648:19–17). McNab testified that he had not seen asset purchase agreements or stock purchase agreements that date back to the company identified on the 2001 Confidentiality Agreement, Drew Foam Companies, Inc. (Trial Tr., Vol. III, 642: 11–17).

No. 252, at 21). In sum, Alleguard argues that it was not required to produce all documents reflecting every corporate transaction from 2001 through 2020 (Dkt. No. 252, at 21).

In its reply in support of motion for recusal, Alleguard argues that it need not introduce the 2006 APA at trial because it "was never required to plead or prove, as part of its prima facie case, that no intervening transaction over a two-decade corporate history extinguished the 2001 Confidentiality Agreement" (Dkt. No. 270, at 4–5). Citing the Court to *GFRB, LLC v. Worthy Promotional Prods., LLC*, 746 F. Supp. 3d 540, 567 (N.D. Ill. 2024), Alleguard contends that it only has the narrow burden of "establishing the contract's existence, and once the proponent makes a prima facie showing, the burden shifts to the opponent to demonstrate the contrary." (Dkt. No. 270, at 5).

The Court does not understand *GFRB, LLC*, to apply to this case for several reasons. First, as a case arising out of the Northern District of Illinois, *GFRB, LLC*, is not precedent in the Eastern District of Arkansas. Second, *GRFB, LLC*, involved a contract that required the court to apply Illinois law. 746 F. Supp. 3d at 553. The Confidentiality Agreement between Tyner and Drew Foam Companies, Inc. does not specify what law applies, but the Court has no reason to believe, and the parties have never argued, that Illinois law applies. *See e.g.*, Alleguard's Findings of Fact and Conclusions of Law (Dkt. 198, at 9) (citing two Eighth Circuit cases, one applying Arkansas contract law and one applying Missouri contract law, as well as an Arkansas statute to support its claim that Alleguard may enforce the Confidentiality Agreement).

Finally, and perhaps most importantly, Article III of the Constitution extends the judicial power of the United States to "Cases" and "Controversies" only. U.S. Const. Art. III, § 2. "Constitutional standing (as opposed to statutory standing) is a threshold question that determines whether a federal court has jurisdiction over a plaintiff's claims." *Kuhns v. Scottrade, Inc.*, 868

F.3d 711, 716 (8th Cir. 2017) (affirming dismissal for lack of subject matter jurisdiction on grounds that appellant lacked standing in case seeking declaratory judgment based on written agreement); *see also Farm Bureau Ins. Co. of Arkansas v. Running M Farms, Inc.*, 237 S.W.3d 32, 36 (Ark. 2006) (other citation omitted) ("[i]t is fundamental in American jurisprudence that in order to bring a lawsuit against an opposing party, one must have standing to do so. Without standing, a party is not properly before the court to advance a cause of action."); *Roggasch v. Sims*, 481 S.W.3d 440, 444 (Ark. Ct. App. 2016) (finding no standing on breach of contract claim because Sims was not a party to the written contract) (citing *City of Dover v. City of Russellville,* 100 S.W.3d 689 (Ark. 2003)). A plaintiff who brings suit in federal court has the burden of establishing standing. *Agred Found. v. United States Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021).

The additional cases cited by Alleguard stand for the proposition that the burden of proof shifts to a defendant to prove any affirmative defense (Dkt. No. 270, at 5). The Court does not dispute this, but Alleguard has not, at this stage, established a *prima facie* case of breach of contract, and standing is not an affirmative defense that is listed in Federal Rule of Civil Procedure 8(c)(1).

Given that Alleguard does not intend to rely on the 2006 APA at trial, the Court does not view Grooms's representation to touch upon the merits of any claim in this case. *See United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998) (determining that any connection between Judge's former law partners' representation of creditors in bankruptcy and the criminal defendant's criminal matter for several charges including bankruptcy fraud was too attenuated to be considered "the same matter in controversy" even though the cases involved common facts). Along with no

party listing the 2006 APA as a trial exhibit, no party produced the 2006 APA during discovery nor did any party list Grooms as a trial witness.

Alleguard also directs the Court to *Philip Morris USA Inc., et al. v. United States Food and Drug Administration, et al.*, 156 F. Supp. 3d 36 (D.D.C. 2016). In *Philip Morris*, the plaintiffs sought recusal of the Judge under § 455(b)(2) because his former law partner had represented an anti-tobacco organization, while the Judge was in private practice, that submitted comments to the FDA supporting the regulatory action that plaintiffs were challenging in the lawsuit before the Judge. *Id*. at 39. The court determined that the Judge's former law partner's advice to the organization was "too attenuated from the present litigation to constitute the same 'matter in controversy.'" *Id*. The court pointed out that the organization was unlikely to become a party or witness in the matter, the court's former law partner's legal advice was unlikely to become an issue in the litigation, and the organization would not directly receive a financial benefit or incur a liability resulting from the outcome in the case. *Id*. at 39-40. The same is true here.

The 2006 APA was produced by no party during discovery; it was first provided by Alleguard after the close of discovery and is not now, and has not been, on any party's exhibit list for trial. Grooms is not on any party's witness list. Even if Grooms represented Drew Foam Delaware in a transaction 20 years ago that fact is too attenuated from the present litigation to constitute the same matter in controversy.

Alleguard also cites the Court to *In re Henry W. Rodgers, III*, 537 F.2d 1196 (4th Cir. 1976). *In re Rodgers, III* involved defendants in a mail fraud and antiracketeering prosecution who applied for a writ of mandamus asserting that the Judge erred in not recusing himself from their criminal trial. *Id*. at 1197. The trial Judge's former law partner and his client, who were not charged with anything unlawful or improper, were set to testify about events that took place before

the Judge withdrew from the law firm for the defendants who wanted to prove that their conduct, for which they had been indicted, was no more culpable than the conduct of the client of the Judge's former law partner. *Id*. at 1197–98. The Fourth Circuit held that that the former partner's representation of the client before the Judge withdrew was a matter in controversy because it involved "evidence of matters in which the judge's former partner served as a lawyer." *Id*. at 1198. The Fourth Circuit required the trial Judge's recusal under § 455(b)(2). *Id*. This case is distinguishable from *In re Rogers III* because the 2006 APA is not on either party's exhibit list in this case, Grooms is not on either party's witness list in this case, and Alleguard has advised the Court that it intends to establish standing through the witness testimony of Tyner, Cole, and Givens (Trial Tr., Vol. III, at 650:9-12).

Finally, Alleguard references *Preston v. United States*, 923 F.2d 731, 734–36 (9th Cir. 1991), but it too is not helpful to Alleguard. In *Preston*, the Ninth Circuit Court of Appeals determined that a Judge should have recused himself from a case that involved his former law firm that entered an appearance in the litigation to represent a non-party that had indemnity exposure that turned directly on the outcome of the case over which the Judge was presiding. *Id*. at 734–35. *Preston* is not similar to this case. Neither Grooms, nor any lawyer from QGT, have entered an appearance in this case on behalf of Drew Foam Delaware.

The Court concludes, based on its review of the facts and the law, that § 455(b) does not compel the Court's recusal in this case.

**2. 28 U.S.C. § 455(a)**

Alleguard argues that recusal is independently warranted under § 455(a) and Canon 2A and 3C of the Code of Conduct for the United States Judges (Dkt. No. 262, at 11–13). Under § 455(a), a judge is required to recuse when her impartiality "might reasonably be questioned." "It

is well established that the recusal inquiry must be made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 924 (2004) (internal quotes omitted); *see Scenic Holding, LLC v. New Board of Trustees of Tabernacle Missionary Baptist Church, Inc.*, 506 F.3d 656, 662 (8th Cir. 2007) ("§ 455(a) sets forth an objective standard"); *see also ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2nd Cir. 2012) ("The question. . . is whether an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." (internal quotes omitted)). "A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *In re Steward*, 828 F.3d 672, 682 (8th Cir. 2016) (quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003) (quoting *Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992)). Moreover, the Supreme Court explains that a party is not entitled to recusal merely because a judge is, or is perceived by the moving party to be, "exceedingly ill disposed" toward them, where the judge's "knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings . . . ." *Liteky v. United States*, 510 U.S. 540, 551 (1994). Alleguard has supplied no evidence from which the Court could conclude that a reasonable observer, fully informed of the facts, would entertain significant doubt that justice could be done if the Court did not recuse.

The only information in the record supporting such a conclusion comes from the allegations in Alleguard's motion that the Court is "asked to construe and assign potentially dispositive significance to an agreement handled by the Court's former firm during the Court's tenure there." (Dkt. No. 262, at 12; Court's Exhibit A, at 6). Alleguard argues that the concern for impartiality

is heightened because this is a bench trial and not a jury trial (Dkt. No. 262, at 12–13; Court's Exhibit A, at 6). The Court reiterates that the 2006 APA was not produced by any party during discovery and is not on either party's exhibit list. The Court cannot be asked to construe and assign significance to a document that is not in evidence in the matter before it. Counsel for Alleguard has represented to the Court that it intends to establish standing based on witness testimony (Trial Tr,, Vol. III, at 649:17–19). Grooms is not on either party's witness list in this case.

In what may be an attempt to make the Court appear impartial, Alleguard contends that the Court "expressed during trial that it may make a negative inference against Alleguard's petition to its successor rights if the document is not put into evidence" (Court's Exhibit A, at 4, n.7 (citing Trial Tr. Vol. III, at 654–55)). The Court has reviewed the trial transcript, and this is a mischaracterization of the Court's statements. The comments of the Court to which Alleguard refers were made to *all parties* in the context of a larger discussion about proof of standing after counsel for Alleguard stated on the record that it had not produced during discovery the 2006, 2012, 2018, or the 2020 transactional agreements[7] tracing the contracting entity in the 2001 Confidentiality Agreement, Drew Foam Companies, Inc., forward to Alleguard (Trial Tr., Vol. III, at 642-47). In this context, the Court made the following comments:

> There is more than one way to prove up information. There is a best evidence issue. There is clearly a hearsay issue. If you intend to rely upon witnesses on the other side, you are stuck with whatever those witnesses testify to. You certainly can impeach them. And I won't permit this to be any part of rebuttal, really. It's not a surprise you have an obligation to prove standing, right? And if you didn't depose anybody on it, didn't do anything like that, good luck arguing that any of that is rebuttal to me. I'm not going to be sympathetic to it. It's your burden. It's your contract.

[7] As noted in Exhibit 1, at 2, n.2, Alleguard has moved to amend its trial exhibit list to add the 2006, 2018, and 2020 transaction documents. The Court has the motion under advisement.

> I can take credibility into play with respect to witness testimony. Most lawyers use documents to bolster the credibility of witnesses who testify. If documents exist and they're not brought into the courtroom, you can read the inference with respect to credibility as well as I can, as well as any juror with respect to it. And that goes both ways. You're both able to cross-examine on those issues.

(Trial Tr. Vol. III, at 654).[8]

The Court's explanation of trial procedure and comments to all parties about best evidence, personal knowledge, and hearsay are not sufficient to demonstrate an inability to render a fair judgment. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). Moreover, the Court denied Tyner's motion for partial summary judgment in Alleguard's favor; a decision contrary to the expectation of a reasonable person if the Court were biased in favor of Tyner. *See Fletcher*, 323 F.3d at 665 (citing *In re Apex Oil Co.*, 981 F.2d 302, 304 (8th Cir. 1992) (noting that a reasonable person would not question a judge's impartiality when a judge rules contrary to his alleged bias)).

Alleguard contends that, even if the Court has no personal recollection of the Court's involvement in the 2006 matter, a reasonable observer could question the impartiality of the Court

---

[8] In Alleguard's motion for recusal, Alleguard states that "when Alleguard's witness Dustin McNab began to testify about the formation and history of Alleguard, Defendants objected on best-evidence grounds, and the Court sustained the objection, declining to permit testimony offered for the truth of the matter asserted regarding the formation history" (Dkt. No. 262, at 15). The Court did not make the ruling suggested by Alleguard. Defendants objected to the testimony on best evidence grounds (Trial Tr., Vol. I, 48:13–18). When the Court asked for a response from counsel for Alleguard, he stated, "Your Honor, Mr. McNab is not testifying for the truth of the matter. He is just testifying for the background, and he has been – already said – testified that he has personal knowledge." (Trial Tr., Vol. I, 48:20–23). The Court ruled that "[h]e can testify as to his personal knowledge. I'm not going to let him testify – I mean, and his personal knowledge seems limited to the financial information, right?" (Trial Tr., Vol. I, 48:24–49:2). McNab was not testifying as a Federal Rule of Civil Procedure 30(b)(6) corporate representative on behalf of Alleguard (Trial Tr., Vol. I, at 55:3–13; 137:8-16; Dkt. No. 220, at 25, 94:8–12). McNab's testimony made clear he worked on consolidating three entities' financial information for reporting. Further, McNab testified later that he had not seen asset purchase agreements or stock purchase agreements that date back to the company identified on the 2001 Confidentiality Agreement, Drew Foam Companies, Inc. (Trial Tr., Vol. III, 642: 11–17).

because the Court will decide both the facts and the law, but this is true with every bench trial (Dkt. No. 262, at 12; Court's Exhibit D, at 9 (citing *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847 859–60 (1988)). Alleguard has not pointed to any statements that would show that the Court's disposition is "so extreme as to display clear inability to render fair judgment." *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013) ("[E]xpressions of impatience, dissatisfaction, annoyance, and even anger are not sufficient to require recusal.") (internal quotation marks omitted).

On this record, the Court cannot find that Alleguard has cleared its substantial burden of proving that the Court was not or has not been impartial.

**B. Alleguard's Motion For Recusal Is Untimely And Forfeited**

In Court's Exhibit A, Alleguard asserts that the 2006 transaction and the 2006 APA have "now become central to Tyner's position on the adjudication of Alleguard's breach of contract claim" and Alleguard contends in it motion "that it only recently confirmed, through attorney John Bryan, Grooms represented Drew Foam Delaware in the 2006 transaction "rather than merely appearing as a notice contact (Dkt. No. 262, at 14; Court's Exhibit A, at 1). Alleguard maintains that it "immediately located the company's copy of the 2006 agreement in its files and produced it to both Defendants and the Court." (Court's Exhibit A, at 2). As the Court explains, the 2006 APA was an attachment to Alleguard's response to the Tyner's motion for partial summary judgment, which was filed on January 20, 2026 (Dkt. No. 199-2). According to Alleguard, it "only recently learned" that the Court was a partner at QGT in 2006, and it learned of the connection "by happenstance . . . through the historical knowledge of its local counsel" (Court's Exhibit A, at 1–2).

In their response in opposition to Alleguard's motion for recusal, Defendants argue that, in their view, Alleguard knew of QGT's involvement no later than January 2026, when it attached the 2006 APA to its response to Tyner's motion for partial summary judgment and had those facts in its corporate record the entire time (Dkt. No. 265, at 4, Court's Exhibit B, at 2). Furthermore, Defendants contend that the Court's professional history is no secret and that the information was easily ascertainable from public records with minimal diligence and inquiry to Alleguard's own local counsel, who has appeared before the Court several times (Dkt. No. 265, at 4–5; Court's Exhibit B, at 2–3; Court's Exhibit C). Defendants argue that Alleguard did not file its motion at the earliest possible moment, that the recusal statute "does not provide a vehicle for parties to shop among judges," and the Court need not consider it (Dkt. No. 265, at 5 (citing *Little Rock School District v. Pulaski Cty. Special Sch. Dist. No. 1*, 839 F.2d 1296, 1302 (8th Cir. 1988)). Defendants maintain that Alleguard has had notice since January 20, 2026. According to Alleguard, it only identified QGT's potential representation of Drew Foam Delaware on July 9, 2026, when it reviewed the 2006 APA "in preparation" for trial to resume (Dkt. No. 243-3, ¶ 7; 263, ¶ 4). Alleguard maintains that one day later, on July 10, 2026, it was able to "confirm[]" that QGT represented Drew Foam Delaware. Alleguard waited until July 24, 2026, after three days of trial and 15 days before trial is to restart, to bring the matter to the Court's attention by a letter dated July 24, 2026, and only after it filed a motion to amend its trial exhibit list to add the 2006 APA to its list of trial exhibits (Dkt. No. 265, at 5–6; Court's Exhibit B, at 1–2, 4–5).

Motions for recusal under 28 U.S.C. § 455 must be timely. *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 655 (8th Cir. 2008). "The timelines doctrine under § 455 requires a party to raise a claim at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for such a claim. A party is required to bring its recusal motion promptly to avoid the risk

that the party might hold its application as an option in the event the trial court rules against it." *Id*. (internal quotes and citations omitted). Courts determine that a litigant obtains knowledge of the facts allegedly demonstrating the basis for the claim of recusal when the litigant could have known the facts "with due diligence." *In re Medtronic, Inc., Spring Fidelis Leads Prods. Liab. Litig*. *v. Medtronic, Inc.*, 623 F.3d 1200, 1209 (8th Cir. 2010). Therefore, a motion for recusal is untimely if the party does not file the motion at the earliest possible moment after being able to discover with due diligence the allegedly disqualifying facts. *See id*. ("Thus, the recusal motion was untimely. It was also a device interposed for suspect tactical and strategic reasons following the district court's adverse rulings. As the grant of such a belated motion would have serious adverse effects on the efficient use of judicial resources and the administration of justice, . . . denial of the recusal motion is affirmed." (internal quotes omitted)); *see also Neal v. Wilson,* 112 F.3d 351, 357 n.6 (8th Cir. 1997) (determining that it was improper "to wait until after Judge Waters had issued an unfavorable ruling before moving for recusal."); *In re Kansas Pub. Employees Retirement Sys.,* 85 F.3d 1353, 1360 (8th Cir. 1996) (hereinafter "KPERs") (determining that untimely recusal motions that are filed for tactical or other suspect reasons "can and should be denied" on the basis of untimeliness alone).

In its reply, Alleguard contends that the Eighth Circuit held in KPERs that a two week investigation was not untimely (Dkt. No. 270, at 9–10). The KPERs case was more nuanced. In KPERs, decided on a writ of mandamus, the Eighth Circuit held that KPERs' petition was untimely as to two matters because it filed its disqualification petition for "suspect tactical and strategic reasons" alone. *KPERs*, 85 F.3d at 1360. As to the third petition with respect to the Judge's daughter's prospective employment at a firm involved in the case, the facts were that a summer associate position ripened into an offer of a permanent position. *Id*. The Eighth Circuit concluded

that, because the "prospective permanent employment at Shook at least altered the landscape slightly, we give KPERs the benefit of the doubt and do not find the request for disqualification untimely as to the Shook matter." *Id*. at 1361. The investigation required by KPERs is not analogous to the investigation here. Here, the investigation required was of documents admittedly in the hands of Alleguard throughout this litigation.

After a thorough review of the record and the timeline set forth above, the Court determines that Alleguard did not bring its motion for recusal at the earliest possible moment that it could have known the facts "with due diligence." *In re Medtronic, Inc., Spring Fidelis Leads Prods. Liab. Litig*., 623 F.3d at 1209. Instead, the record before the Court suggests that there may be other motives. The issue was raised for the first time 15 days before trail is to resume in this case and after Alleguard filed its motion to add for the first time in this case certain transactional documents, including the 2006 APA, as trial exhibits. Also pending before the Court are evidentiary and sanctions motions.

Even if the Court accepts Alleguard's timeline in this case, knowledge of Grooms's involvement in the 2006 APA, which is a Drew Foam Delaware transaction, was available to Alleguard on January 20, 2026.[9] With minimal due diligence, the connection between Grooms, QGT, and the Court could have been discovered by Alleguard immediately thereafter based on available public records and the historical knowledge of local counsel, who has appeared before this Court many times (*see* Dkt. No. 265, at 7; Court's Exhibits B, C). It is not a fair statement for Alleguard to express to the Court that it did not have the facts necessary to raise this issue with the

[9] Defendants maintain that, under Federal Rule of Civil Procedure 11, due diligence should have been conducted regarding these transactions and agreements before the verified complaint was filed, meaning well before January 20, 2026 (Court's Exhibit B, at 9–11). For reasons explained in this Order, the Court declines to address Rule 11 issues at this time.

Court until "very recently" (Dkt. No. 265, at 7; Court's Exhibit D, n. 14).[10] The facts have been available to Alleguard *with due diligence* at least since January 2026, yet Alleguard chose not to raise the recusal issue it now raises until July 24, 2026, six months later, and 15 days before trial is set to resume, while critical rulings on evidentiary issues and sanctions are under advisement. *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008) (determining that actions that occurred between 20 and seven months before recusal motion was filed rendered motion brought under 28 U.S.C. § 455 untimely and, on that basis alone, Court affirmed denial of recusal motion); *KPERs.,* 85 F.3d at 1360–61 (finding on writ of mandamus that ten-month delay from initial awareness of a potential conflict rendered the motion untimely).

In its letter reply and motion for recusal, Alleguard argues that the reference to Grooms was "buried in the middle of a Notice paragraph in the 2006 APA itself, and that reference does not mention the Court by name or even directly confirm that Quattlebaum, Grooms represented Drew Foam Delaware in that transaction." (Dkt. No. 262, at 5; Court's Exhibit D, at 4). Alleguard complains that it "had to investigate the matter to gather the relevant facts found nowhere in the document." (Dkt. No. 262, at 5; Court's Exhibit D, at 4). As set forth above, it did not do so diligently.

The Court's history as a partner at QGT is a matter of public record. *See Confirmation Hearings on Federal Appointments Before the S. Comm. On the Judiciary*, 112th Cong. (2011); First Financial Disclosure Report for Calendar Year 2012 (Court's Exhibit B). Alleguard's local

---

[10] Tyner raised the issue of standing in Defendants' answers (Dkt. Nos.37; 60) and raised the issue of privity in response to Alleguard's motion for a temporary restraining order (Dkt. No. 17, at 8–9). In reply to Defendants' response to Alleguard's motion for temporary restraining order, Alleguard promised that it "w[ould] produce evidence showing that the confidentiality agreement was assigned to Alleguard post-sale." (Dkt. No. 21, at 7, n.5). Clearly, Alleguard was on notice of this issue and the need to develop a litigation strategy and competent proof to address it early in this litigation, well before January 2026.

counsel had previously appeared before the Court many times, including in a case that was transferred to the Court when the Court was appointed to the bench (*see* Court's Exhibit B, at 3, n. 2). Alleguard's submission of the declaration of Eva Madison is puzzling, given the record of her involvement in this case as evidenced by filings, transcripts of discovery hearings, and attendance at trial (*see* Dkt. No. 263).[11]

In its reply, Alleguard cites the Eleventh Circuit case of *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524–25 (11th Cir. 1988), to suggest that the Court was remiss in fulfilling its duty to disclose a conflict of which it was aware when it obtained a copy of the 2006 APA as part of Alleguard's response to Tyner's motion for partial summary judgment (Dkt. No. 270, at 14–15; Court's Exhibit D, at 4–5, n.14). In *Parker*, the Eleventh Circuit considered a district court case involving a close familial relationship between the judge's law clerk and a senior partner in the firm that represented the appellees. *Id*. at 1524. The district court issued an opinion granting summary judgment to appellees that contained a footnote that gave credit to the law clerk. *Id*. Additionally, during the course of the district court proceedings, the law clerk held a hearing in the district judge's absence. *Id*. The Eleventh Circuit determined that the facts might lead an objective observer to believe that the appellees received favorable treatment. *Id*. at 1525. The Court determined that, in this circumstance, either the district Judge or his law clerk, knowing the grounds for disqualification, should have raised the issue with the parties and then it could have been waived. *Id*. at 1525.

[11] Madison participated in Judge Ray's discovery conferences on February 11, 2025 (Dkt. No. 107), February 26, 2025 (Dkt. No. 106), April 3, 2025 (Dkt. No. 260), May 12, 2025 (Dkt. No. 126), and November 24, 2025 (Dkt. No. 140). Madison also attended two conferences with the Court and the first three days of trial (Dkt. Nos. 139, 243, 244, 247, 253). Madison signed the verified complaint (Dkt. Nos. 1, at 21).

Alleguard ignores crucial facts in this case that are not similar to those in *Parker*. As has been explained in this Order, no reasonable person would look at the facts and circumstance of this case, principally that the 2006 APA was not produced by Alleguard or Defendants in discovery in this case, that the 2006 APA has not been and is not currently on any party's exhibit list for trial, and that Grooms has not been and is not now on any party's witness list, and question the Court's impartiality. Additionally, as the parties can discern from a review of the Court's Financial Interest and Recusal List, which the Court has ordered the parties to review several times in this case (Dkt. Nos. 81; 96; 105; 120), neither Grooms nor Drew Foam Delaware are on the Court's recusal list (*see* Court's Exhibit C). Because of this and other facts on the record, there was no conflict that the Court had an affirmative duty to disclose to the parties in this case.

Alleguard did not file its motion to recuse at the earliest possible moment after being able to discover the allegedly disqualifying facts with due diligence. Accordingly, the motion for recusal is denied based on untimeliness. *See In re Medtronic, Inc., Spring Fidelis Leads Prods. Liab. Litig.*, 623 F.3d at 1209 (affirming district court's denial of recusal motion because, with due diligence, plaintiffs could have known the basis for the motion months prior to bringing the motion).

**C. Alleguard's Offer**

In Alleguard's letter, it suggests in a footnote that "[i]f Mr. Tyner wishes to abandon his chain-of-title defense based on the 2006 APA, concede that Alleguard is the successor in interest to Drew Foam who has the right to enforce the 2001 Confidentiality Agreement, and waive any objections to this Court continuing to serve in this case, then, in Alleguard's view, recusal could be avoided. But that is a decision that must be made by Mr. Tyner and his counsel." (Court's Exhibit A, at 3, n.5).

Defendants responded that this "offer" is unethical and forbidden by the statute (Court's Exhibit B, at 8–9). According to Defendants, any circumstance requiring the Court's recusal must stem from the Court's prior firm, not from Tyner's litigation position (Court's Exhibit B, at 9). In other words, it is Defendants' position that, if Grooms's work while the Court was a partner at QGT truly concerned this matter, nothing Tyner could or could not do would change whether recusal is required (Court's Exhibit B, at 9).

In its reply correspondence, Alleguard stated that the conflict requiring recusal could "perhaps be eliminated (not waived) if Mr. Tyner removes the 2006 APA from the matter in controversy." (Court's Exhibit D, at 9). Alleguard states that it is "not suggesting that a Section 455(b)(2) conflict may be waived. It may not." (Court's Exhibit D, at 9). Alleguard suggested that it was making a different point that the conflict existed because Tyner had chosen a "chain-of-title defense" and that if Tyner were to stipulate that Alleguard is the successor in interest to the 2001 Confidentiality Agreement, then Grooms's work on the transaction would likely cease to be a part of the "matter in controversy." (Court's Exhibit D, at 9).

In its response to the motion to recuse, Defendants suggest that Alleguard's motivation for waiting to file its motion to recuse was to convince Tyner to waive his standing defense (Dkt. No. 265, at 2).

Under § 455(b)(2), recusal cannot be waived, and it is not conditional. 28 U.S.C. § 455(e) ("No justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection."). Where a ground for recusal arises under § 455(a), "waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). In their letter, Defendants make clear that "Mr. Tyner will not waive his defenses." (Court's Exhibit B, at 9). Regardless, for the reasons

stated in this Order, the Court has determined that there is no basis for the recusal motion under either 28 U.S.C. § 455(b)(2) or § 455(a) or under Canons 2A and 3C of the Code of Conduct for United States Judges and that Alleguard's motion for recusal is untimely. Accordingly, waiver of recusal is a moot issue.

### D. Rule 11

In its correspondence with the Court, Defendants suggest that Alleguard's own account of the events "demonstrates that a serious pre-suit investigation never occurred." (Court's Exhibit B, at 9–10). Defendants reference Federal Rule of Civil Procedure 11, including subsection 11(b) requiring that a representative of the court certify when filing a "pleading, written motion, or other paper," that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the paper "is not being presented for any improper purpose," that its "legal contentions are warranted by existing law," that its "factual contentions have evidentiary support," and that "the denials of factual contentions are warranted on the evidence." Fed. R. Civ. P. 11(b). The letter goes on to describe conduct of Alleguard and its counsel that Defendants find objectionable (Court's Exhibit B, at 9–11). A motion for sanctions under Rule 11 must, however, be made separately from any other motion. *See* Fed. R. Civ. P. 11(c)(2). Defendants state that they do not ask the Court to resolve this issue now, and the Court will not do so without a proper motion.

## IV. Conclusion

For the reasons set forth above, the Court declines to recuse and denies Alleguard's motion for recusal (Dkt. No. 262). The Court also declines to stay this matter. Trial will continue as scheduled.

It is so ordered this 7th day of August, 2026.

Kristine G. Baker
Chief United States District Judge

STEMBRIDGE
TAYLOR LLC
EMPLOYMENT LAW | BUSINESS LAW

July 24, 2026

Hon. Kristine G. Baker
United States District Judge
United States District Court
Eastern District of Arkansas
600 West Capitol Avenue
Little Rock, Arkansas 72201

Re: *Foam Holdings Inc. d/b/a Alleguard v. Creative Foam Products LLC, et al.,* Case No. 4:23-cv-320-KGB

Dear Judge Baker:

Plaintiff Foam Holdings Inc. d/b/a Alleguard ("Alleguard") writes to bring to the Court's attention matters that have recently come to light and appear to require recusal under 28 U.S.C. § 455 and Canons 2A and 3C of the Code of Conduct for United States Judges. Specifically, the law firm in which the Court was previously a partner, Quattlebaum, Grooms, & Tull PLLC ("Quattlebaum, Grooms"), represented Alleguard's predecessor entity in a transaction that is now material to the matter in controversy: the 2006 Drew Foam purchase transaction. More particularly, Quattlebaum, Grooms represented Drew Foam Companies, a Delaware corporation ("Drew Foam Delaware"), the entity Alleguard ultimately acquired in 2020, when it purchased Drew Foam Companies, Inc. (an Arkansas corporation) and Drew Foam of Tennessee, Inc. (a Tennessee corporation) (collectively, "Drew Foam Arkansas") in 2006. That 2006 transaction and its attendant purchase agreement have now become central to Mr. Tyner's position on the adjudication of Alleguard's breach-of-contract claim against him, and Alleguard has only recently learned and been able to confirm that Quattlebaum, Grooms represented Drew Foam Delaware in that transaction while the Court was a partner at the firm.[1]

## 1. Timing and Guidance

Alleguard raises this issue promptly, as soon as the necessary operative facts became available and could be verified. By way of background, the 2006 Asset Purchase Agreement ("APA") as a merits issue emerged only after the close of discovery, in the context of Mr. Tyner's summary judgment motion on his standing/privity/enforceability defense to Alleguard's contract claim. Until then, the 2006 transaction had never been identified in discovery responses or in any of Mr. Tyner's filings as the basis for his contention that the 2001 Confidentiality Agreement cannot be enforced by

---

[1] As noted in Alleguard's response and surreply to Mr. Tyner's Motion for Partial Summary Judgment (Docs. 199 and 231), Alleguard's position is that under applicable Eighth Circuit and other case law, Mr. Tyner's 2001 Confidentiality Agreement traveled with him through each of the transactions in 2006, 2012, 2018, and 2020 regardless of the fact that the 2006 transaction was titled as an asset purchase and the other three were stock purchases. Mr. Tyner disagrees and contends that the 2006 transaction and APA extinguished his 2001 Confidentiality Agreement and that the 2006 APA is central to his defense. Resolution of those issues will directly impact the resolution of Alleguard's breach of contract claim.

4840 ROSWELL ROAD, SUITE E300, ATLANTA, GA 30342
JOHN@STEMBRIDGETAYLOR.COM | (678) 362-6567

Court's
Exhibit
A

Alleguard.[2] After Mr. Tyner's summary judgment briefing raised that issue, Alleguard immediately located the company's copy of the 2006 agreement in its files and produced it to both Defendants and the Court. *See* Doc. No. 199 at Ex. 2.

That document lists Tim Grooms of Quattlebaum, Grooms as a notice contact for Drew Foam Delaware, *id.* at 31, but it does not identify the Court by name. Alleguard only very recently learned that the Court was a partner at Quattlebaum, Grooms in 2006, at the time of that transaction, and counsel has only just been able to confirm that Quattlebaum, Grooms (and specifically Mr. Grooms) actually represented Drew Foam Delaware in the 2006 transaction, rather than merely appearing as a notice contact in the agreement. Upon learning of the Court's prior association with Quattlebaum, Grooms, Alleguard's counsel immediately contacted Mr. Grooms at Quattlebaum, Grooms and his co-counsel in the transaction, John Bryan of Bean, Kinney & Korman, P.C.[3] Although Mr. Grooms has not yet responded, counsel was able to speak with Mr. Bryan, who confirmed that Tim Grooms of Quattlebaum, Grooms represented Drew Foam Delaware with him in that 2006 transaction, consistent with the agreement's identification of Mr. Grooms as a notice contact for the purchaser.[4]

---

[2] As explained in Alleguard's Response to Mr. Tyner's Motion for Partial Summary Judgment, *see* Doc. 199 at 8–14, its Surreply in Opposition to Tyner's Motion for Partial Summary Judgment, *see* Doc. 231, and Alleguard's recent Reply regarding discovery issues raised during the first three days of trial, *see* Doc. 258 at 20–22, Mr. Tyner first advanced the argument that the 2006 sale of Drew Foam extinguished Mr. Tyner's 2001 Confidentiality Agreement only after discovery had closed, in summary judgment briefing. Alleguard posed questions in written discovery and depositions about Mr. Tyner's standing/enforceability defense, but Mr. Tyner never disclosed or explained any position that the 2006 transaction (or any other corporate transaction) extinguished the 2001 Confidentiality Agreement. Instead, his written discovery responses made *no mention* of the 2006 agreement, or of any acquisition structure, as a basis for his enforceability defense, and he testified in deposition that he had simply forgotten about the 2001 agreement. *See* Tyner Dep. at 131:10–19. He further testified that he believed the agreement had been signed with Zach McClendon's company that was sold in 2006, but elaborated that he believed that deal was a stock purchase. *Id.* at 129:25–130:22. When asked specifically whether there was "any reason" he believed the 2001 agreement was no longer in effect when he resigned from Alleguard, Mr. Tyner responded, "I just—I don't think it's in effect 20 years later." *Id.* at 131:22–132:3. And when counsel followed up, "Just because of the age, is that your belief?," Mr. Tyner answered, "Yes." *Id.* at 132:4–8. Thus, the first time Mr. Tyner raised the 2006 agreement as the basis for his standing/enforceability defense was in his summary judgment briefing. In response, Alleguard immediately located the company's copy of that agreement and produced it to both Defendants and the Court, *see* Doc. No. 199 at Ex. 2, and because of developments during the first three days of trial, Alleguard has moved to amend its trial exhibit list to add the 2006, 2018, and 2020 transaction documents. Alleguard also confirmed with Foley & Lardner, outside counsel that represented Foam Holdings, Inc./Alleguard in the 2020 stock purchase of Drew Foam Delaware, that the 2006 agreement had not been part of the firm's due diligence in the 2020 transaction and that typical due diligence in such transactions would not ordinarily require locating or reviewing transactional documents from so far back.

[3] At the time of the 2006 transaction, Mr. Bryan was employed by Richards McGettigan Reilly & West P.C. in Alexandria, VA.

[4] Other than the reference to Mr. Grooms as a notice contact in the 2006 Asset Purchase Agreement, Alleguard received no other information that could have put it on notice that Quattlebaum, Grooms represented Drew Foam Delaware in that transaction or that this Court was a partner there at the time. It was only by happenstance that Alleguard connected Quattlebaum, Grooms to this Court through the historical knowledge of its local counsel. As soon as those issues came to light and the necessary connections were made, Alleguard undertook diligent efforts to ascertain and verify Quattlebaum, Grooms's representation in the 2006 transaction and to confirm that the Court was a partner at Quattlebaum, Grooms during the relevant period. Once that information was verified and Mr. Bryan provided confirmation, Alleguard promptly brought the matter to the Court's attention via this letter.

Alleguard is therefore compelled to raise this issue now,[5] and it does so promptly after learning the operative facts giving rise to the bases for recusal. Alleguard's purpose with this letter is to alert the Court to the recusal issue and seek its guidance as to how the Court would prefer to proceed, whether by this letter, by formal motion with an appropriate briefing schedule, or in some other manner.

**2. The Bases for Recusal**

As the Court knows, recusal is governed by 28 U.S.C. § 455. Subsections (a) and (b)(2) are specifically relevant here and provide, in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify [her/him]self in any proceeding in which [such judge's] impartiality might reasonably be questioned.
>
> (b) [Sh]e shall also disqualify [her/him]self in the following circumstances:
>
> * * * * *
>
> > (2) Where in private practice [s]he served as lawyer in the matter in controversy, or a lawyer with whom [s]he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

Both subsections are addressed here.

**Section 455(b)(2).** The principal statutory basis for recusal here is 28 U.S.C. § 455(b)(2). As noted, that section provides that a judge "shall" disqualify herself where, in private practice, she "served as lawyer in the matter in controversy,"[6] or where "a lawyer with whom [she] previously practiced law served during such association as a lawyer concerning the matter." 28 U.S.C. § 455(b)(2).

Under Section 455(b)(2), the question is not merely whether the Court's former firm once represented the same client in some earlier matter; it is whether lawyers at the Court's former firm, during the Court's association with that firm, served as lawyers concerning the matter now in

---

[5] Alleguard is obligated to raise this issue, notwithstanding the inconvenience and disruption that may result, in order to protect the integrity of the record and of the proceedings. If Alleguard were not to raise it now, it could risk forfeiting the issue, while Mr. Tyner could himself seek to invoke it later as an undisclosed basis for recusal on appeal. If Mr. Tyner wishes to abandon his chain-of-title defense based on the 2006 APA, concede that Alleguard is the successor in interest to Drew Foam who has the right to enforce the 2001 Confidentiality Agreement, and waive any objections to this Court continuing to serve in this case, then, in Alleguard's view, recusal could be avoided. But that is a decision that must be made by Mr. Tyner and his counsel.

[6] Because Alleguard has not yet succeeded in speaking directly with Mr. Grooms about the 2006 transaction, it does not presently know whether the Court had any personal involvement in that matter while at Quattlebaum, Grooms. Alleguard assumes at this stage that the Court did not have personal or direct involvement because, if the Court had, Alleguard believes the Court would have independently disclosed that fact to the parties. But that is one of the questions that should be definitively addressed through this process.

controversy. Although Alleguard has found no reported decision matching these facts precisely, the better reading of the statute, as reflected in the reported authorities, is that "matter in controversy" means either the same dispute or a sufficiently related dispute such that the prior representation bears a *substantial and non-attenuated connection to the merits* of the matter now before the Court.

The Eighth Circuit addressed the scope of the phrase "matter in controversy" in *Little Rock School District v. Armstrong*, 359 F.3d 957 (8th Cir. 2004). There, the court emphasized that Congress chose the phrase "matter in controversy," not simply "case," in § 455(b)(2), and that choice requires courts to examine the substance of the issues, rather than the formal identity of the docket. *Id.* at 960. The Eighth Circuit denied recusal there only because the judge's earlier representation "did not touch upon the merits of the case" and was "wholly unrelated" to the issues then before him. *Id.* at 960–61.

Under *Little Rock*, the dispositive question is whether the 2006 transaction is merely historical background or instead part of the "matter in controversy." The Eighth Circuit's reasoning in *Little Rock* strongly suggests the latter here because Mr. Tyner contends that the 2006 APA (in which Quattlebaum, Grooms represented Drew Foam Delaware, the entity Alleguard later acquired) bears directly on the merits of Alleguard's contract claim. In his chain-of-title defense, Mr. Tyner squarely places at issue whether the 2006 transaction transferred or preserved Drew Foam's, and ultimately Alleguard's, rights under the 2001 Confidentiality Agreement. According to Mr. Tyner, if Alleguard cannot establish through that document that those rights survived and passed forward through the 2006 transaction and the later corporate transactions, its breach-of-contract claim may fail.[7] Where, as here, a defendant's defense turns on what the 2006 transaction transferred, what rights were assumed or preserved, how the deal documents should be construed, and what legal consequences flow from the structure of that transaction, the Quattlebaum, Grooms firm's work on that transaction is not collateral or merely historical. It is work "concerning the matter" within the ordinary and statutory sense of that phrase.

The most useful extended discussion of the phrase "matter in controversy" appears in *Philip Morris USA Inc. v. U.S. Food & Drug Administration*, 156 F. Supp. 3d 36 (D.D.C. 2016). There, the district court recognized that most courts, including the Eighth Circuit, interpret "matter in controversy" more broadly than just the case on the docket and that the inquiry is necessarily fact-intensive, turning on such considerations as overlap in legal and factual issues, whether the former firm's work is likely to become an issue in the case, whether former-firm lawyers may become witnesses, and whether the connection is substantial rather than attenuated. *Id.* at 43–48 (collecting cases).

Although *Philip Morris* denied recusal, it did so because the particular facts there were too attenuated. The advice of the judge's former partner to a nonparty advocacy group had no direct legal or pecuniary consequence in the litigation, the prior client was unlikely to become a party or

[7] Again, for the reasons set forth in Alleguard's Response to Tyner's Motion for Partial Summary Judgment, its Surreply to the same, and its Motion to Amend Trial Exhibit List, Alleguard disagrees with Mr. Tyner's position that the 2006 APA is necessary to this inquiry, but it agrees that it is evidence supportive of Alleguard on the matter. And the Court expressed during trial that it may make a negative inference against Alleguard's position as to its successor rights if the document is not put into evidence. Trial Tr. Vol. III at 654-55. As such, the 2006 APA in particular has taken on a central role in both Mr. Tyner's defense and the overall case.

witness, and the former partner's advice was unlikely to become an issue in the case. *Id.* at 40–42, 47–49. The court contrasted those facts with decisions requiring recusal where the substance of the former firm's work, or the former firm's role itself, was likely to become an issue in the current proceeding. *Id.* at 47–48.

This case falls on the opposite side of that line. The 2006 APA is itself a merits document; the legal significance and effect of that transaction is directly disputed; the former firm's representation concerned the very agreement whose effect (or lack thereof) on assignment and enforceability the Court will be required to determine; and counsel has now confirmed that Tim Grooms of Quattlebaum, Grooms represented Drew Foam Delaware in that transaction while the Court was a partner at the firm.

The Fourth Circuit's decision in *In re Rodgers*, 537 F.2d 1196 (4th Cir. 1976), is also instructive. There, the court granted mandamus and required recusal under § 455(b)(2) because the judge's former law partner had represented a client in connection with the same legislation and racetrack transaction that later became part of the defense in a criminal case. *Id.* at 1197–98. The Fourth Circuit emphasized that the "actual case before the court consists of more than the charges brought by the government. It also includes the defense asserted by the accused," and because the defense would rely on "evidence of matters in which the judge's former partner served as a lawyer," those matters were part of the "matter in controversy." *Id.* at 1198.

That principle maps closely onto this case. The matter in controversy is not limited to Alleguard's complaint viewed in isolation; it includes Mr. Tyner's defense that the 2001 Confidentiality Agreement did not survive, or was not assigned through, the 2006 transaction. And that defense, according to Mr. Tyner, turns directly on the legal consequences of a transaction and APA in which the Court's former firm served as counsel while the Court was a partner there.

Similarly, in *Preston v. United States*, 923 F.2d 731 (9th Cir. 1991), the Ninth Circuit required recusal under § 455(b)(2) where the judge's former firm had represented a nonparty whose contractual indemnity obligations could be triggered by the outcome of the case and had also participated in related discovery. *Id.* at 734–36. *Preston* confirms that the "matter in controversy" inquiry is not confined to identical party alignment or to the captioned lawsuit itself when the prior representation bears directly on the legal consequences presently being adjudicated. Here, more directly still, the former firm's legal work surrounded the very transaction whose interpretation and consequences could bear directly on whether Alleguard has an enforceable contract claim.

The predecessor relationship between Drew Foam Delaware and Alleguard further reinforces the conclusion that this is the same matter for purposes of Section 455(b)(2). Section 455 does not create a special rule for predecessors or successors. But where the predecessor was the represented entity in the earlier transaction and the present plaintiff claims rights through that entity with respect to rights allegedly transferred by that transaction, the predecessor relationship underscores the conclusion that the former representation and the present litigation concern the same matter.

That is precisely the posture here. Drew Foam Delaware was the represented entity in the 2006 transaction; Alleguard claims rights through the corporate chain that followed; and Mr. Tyner's

defense asserts that those rights did not survive or were not transferred through the very transaction Quattlebaum, Grooms handled. This is therefore not merely a case in which the Court's former firm once represented a remote corporate relative in some unrelated business matter. Rather, the Court's former firm represented Alleguard's predecessor in a transaction whose terms may directly affect the prevailing party on Alleguard's breach-of-contract claim.

**Section 455(a) and Code of Conduct.** Recusal is independently warranted under § 455(a) and Canons 2A and 3C of the Code of Conduct for United States Judges.[8] Section 455(a) requires disqualification where a judge's impartiality "might reasonably be questioned," and the standard is objective, focusing on how a fully informed observer would view the situation, not on actual bias. 28 U.S.C. § 455(a); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859–65 (1988).

As *Liljeberg* makes clear, the purpose of § 455(a) is to promote public confidence by avoiding even the appearance of impropriety. 486 U.S. at 865. Thus, even assuming the Court had no personal involvement in the 2006 transaction and has no present recollection of it, a reasonable observer could still question impartiality where the Court is asked to construe and assign potentially dispositive significance to an agreement handled by the Court's former firm during the Court's tenure there.

That appearance concern is stronger here than in many former-firm cases because this is not simply prior representation of a litigant in an unrelated matter. It is prior representation by a relatively small former firm in the very corporate transaction whose interpretation, consequences, and assignment effects may affect a live claim in this case, and the former firm represented the very company that the current plaintiff later acquired and now owns.[9]

The concern is heightened further because the case is being tried to the Court instead of a jury. In a bench trial, the Court serves as the sole finder of fact and the sole arbiter of law. In that posture, any disputed factual or credibility determination relating to the 2006 APA, and to Quattlebaum,

---

[8] Canon 2A provides that a judge should avoid impropriety and the appearance of impropriety in all activities, and Canon 3C tracks § 455 in requiring disqualification where impartiality might reasonably be questioned or where the judge or a former colleague served as a lawyer concerning the matter in controversy. The Committee on Codes of Conduct has likewise advised that recusal is appropriate when a case is so closely related to a matter handled by the judge's former firm while the judge was there that it should be treated as the same matter in controversy, focusing on commonality of parties, overlap of factual issues, and whether the court's decision will have preclusive or other direct legal effect. *See Philip Morris*, 156 F. Supp. 3d at 46 (citing and discussing the Judiciary's Committee on Codes of Conduct *Compendium of Selected Opinions*).

[9] Courts evaluating § 455(b)(2) and related Canon 3C(1)(b) issues look not only to the subject matter of the prior representation but also to the practical realities of the judge's former practice, including firm size, recognizing that the likelihood of a lawyer's involvement in and exposure to a matter is greater in a smaller firm than in a large one. *See, e.g., Philip Morris*, 156 F. Supp. 3d at 42–43, 46–48 (noting that the judge had previously practiced at a litigation boutique with fewer than 100 lawyers and relying on that context in analyzing "matter in controversy"); *Oriental Fin. Grp., Inc. v. Fed. Ins. Co.*, 450 F. Supp. 2d 169, 171 (D.P.R. 2006) (recusal appropriate where the judge, in a closely integrated division of his former firm, had broad exposure to the prior litigation even without formal involvement).

Grooms's work on that transaction, will be made by a judge whose former firm participated in structuring the transaction now embedded in the merits of Mr. Tyner's defenses to Alleguard's claims. Under Section 455(a) and Canon 2A, the question is whether "reasonable minds, with knowledge of all the relevant circumstances," would perceive a risk that impartiality is compromised or that the proceedings present an appearance of impropriety. *See* Commentary on Canon 2A, Code of Conduct. Where the Court alone will interpret and weigh its former firm's transactional work in a bench trial, a reasonable observer could question the appearance of neutrality. Section 455(a), together with Canon 2A, therefore independently counsel recusal to safeguard public confidence in the administration of justice.

**Requested Relief**

For these reasons, Alleguard respectfully submits that recusal is required under 28 U.S.C. § 455(a) and (b)(2) and Canons 2A and 3C of the Code of Conduct for United States Judges. Alleguard therefore respectfully requests the Court's guidance as to how to proceed on this recusal issue, whether through formal motion practice or some other process the Court prefers.

Respectfully submitted,

John T. Stembridge
*Admitted pro hac vice*
Georgia Bar No. 678605
john@stembridgetaylor.com
Lisa D. Taylor
*Admitted pro hac vice*
Georgia Bar No. 235529
lisa@stembridgetaylor.com
**Stembridge Taylor LLC**
4840 Roswell Road, Suite E300
Atlanta, GA 30342
678-362-6567

*Counsel for Plaintiff Foam Holdings Inc. d/b/a Alleguard*

cc. All Counsel of Record

H|B|S HALL BOOTH SMITH, P.C.
ATTORNEYS AT LAW

Abtin Mehdizadegan
Phone: 501.503.4445
abtin@hallboothsmith.com

200 River Market Avenue
Suite 500
Little Rock, AR 72201

Office: 501.214.3499
Fax: 501.604.5566
www.hallboothsmith.com

July 26, 2026

**VIA E-MAIL TO CHAMBERS**

Hon. Kristine G. Baker
Chief United States District Judge
United States District Court, Eastern District of Arkansas
600 West Capitol Avenue
Little Rock, Arkansas 72201

**Re:** ***Foam Holdings Inc. d/b/a Alleguard v. Creative Foam Products LLC, et al.*, No. 4:23-cv-320-KGB—Response to Plaintiff's July 24, 2026 Letter Suggesting Recusal**

Dear Judge Baker:

Defendants Creative Foam Products, LLC and Charles Tyner respond to the letter Alleguard's counsel transmitted to chambers at approximately 4:00 p.m. on July 24, 2026, suggesting recusal under 28 U.S.C. § 455.

At the outset, Defendants recognize that whether recusal is warranted is a matter for this Court's judgment, and Defendants do not intend to offer judgment for the Court. But Defendants feel compelled to respond to Alleguard's letter because it is extraordinary.

Three years into a case, after countless rulings and three days of trial, Alleguard informs the Court that recusal is both mandatory under § 455(b)(2) and required under § 455(a) because of "newly" discovered facts in Alleguard's own corporate documents.[1] In doing so, Alleguard asks this Court to abandon the bench trial scheduled to resume in fifteen days and hand the matter to one of the Court's colleagues, who would face a monumental task of determining (1) which, if any, of this Court's prior rulings would need to be vacated because the Court's former law partner, according to Alleguard, "served . . . as a lawyer concerning the matter;" (2) how to handle the testimony already taken; (3) and how and when to proceed. Alleguard asks this of the Court because its former law partner may have represented one of Alleguard's supposed predecessors-in-title in the purchase of the assets of two other of Alleguard's predecessors-in-title.

---

[1] Importantly, the allegations regarding the discovery of Mr. Groom's "involvement" in the "matter" are all unsworn, and to the extent that this Court considers Alleguard's request at all, Alleguard should be required to submit a formal motion supported by sworn statements.

SUPPLYJUSTICE.CC
Court's
Exhibit
B

But the most extraordinary part of Alleguard's letter is its suggestion that recusal, though supposedly mandatory under § 455(b)(2), is only *conditionally* so: if Mr. Tyner would agree to withdraw one of his affirmative defenses, then the Court's former partner would no longer have served as a lawyer concerning this matter. Not only would the supposedly mandatory recusal under § 455(b)(2) be waivable, according to Alleguard, but this Court's impartiality would no longer be in question if Mr. Tyner simply agrees that Alleguard has standing to enforce the 2001 Confidentiality Agreement. By making this offer, Alleguard concedes that recusal is neither mandatory nor required. And if Defendants' counsel accepted such an offer, they would hope this Court would report them to the office of professional conduct for violating the fiduciary duties they owe Mr. Tyner.

To be clear, Defendants oppose recusal, refuse to waive Mr. Tyner's standing defense, and respectfully submit that the trial should continue as scheduled. And the three paragraphs above alone demonstrate why Alleguard's request is meritless; for completeness, Defendants address Alleguard's arguments below.

## I. <u>THE FACTS</u>

The facts Alleguard now cites as grounds for recusal have been in its hands the entire time. The 2006 Asset Purchase Agreement, according to Alleguard's theory of the case and litigation posture from its complaint forward, is Alleguard's own document. As Alleguard tells it, this Court's former partner represented Drew Foam Companies, Inc. (Delaware) "when it purchased Drew Foam Companies, Inc. (an Arkansas corporation) and Drew Foam of Tennessee, Inc. (a Tennessee corporation)." Letter, at 1. And Alleguard later acquired Drew Foam Companies, Inc. (Delaware) through a series of subsequent transactions. Alleguard states that it located "**its copy** of the 2006 APA" within days of Mr. Tyner filing his motion for partial summary judgment. Dkt. No. 259, at 9. And by having the document the whole time, Alleguard had knowledge of QGT's involvement in the 2006 transaction well before suit was filed.

And if for some reason Alleguard cannot be charged with the knowledge in its own corporate records, Alleguard knew of QGT's involvement no later than January 20, 2026, when it attached the 2006 APA as an exhibit to its response to Mr. Tyner's motion for partial summary judgment. Dkt. No. 199-2. Page 31 of Alleguard's own filing identifies "Timothy W. Grooms, Quattlebaum, Grooms, Tull & Burrow PLLC" as a notice recipient for the purchaser.

Likewise, this Court's professional history is no secret. The Court's tenure at QGT is documented in the record of her confirmation proceedings, *see Confirmation Hearings on Federal Appointments Before the S. Comm. on the Judiciary*, 112th Cong. (2011), and the first financial disclosure report filed after she took the bench lists, on its first line, her position as a partner of "Quattlebaum, Grooms, Tull & Burrow PLLC," and her resignation from the partnership effective May 21, 2012. Financial Disclosure Report for Calendar Year 2012 (attached as **<u>Exhibit 1</u>**). Any lawyer who wished to know whether Judge Baker

had practiced at QGT could have learned it from public filings at any point in the last fourteen years.

Fourth, Alleguard's local counsel did not need to look it up. The letter attributes the discovery to "happenstance," made "through the historical knowledge of its local counsel." Letter, at 2 n.4. That historical knowledge is well documented.

Ms. Madison has appeared before this Court in twenty-eight other cases since May 17, 2012,[2] beginning with *Battles v. Thompson Hospitality Services LLC*, No. 5:10-cv-00269-KGB, where she was counsel of record both when the case was transferred to this Court, *Battles*, Dkt. No. 57 (May 17, 2012) (attached as **Exhibit 2**), and when this Court entered a scheduling order directing counsel to "promptly check the Court's list of financial interests on file in the U.S. District Court Clerk's Office" and to bring any resulting conflict to the Court's attention "immediately." *Battles*, Dkt. No. 65, ¶ 14 (Oct. 11, 2012) (attached as **Exhibit 3**). This Court's scheduling order in this case contains the

---

[2] In addition to this case, Eva C. Madison has appeared in 28 other cases before this Court since May 17, 2012: *Battles v. Thompson Hospitality Servs. LLC*, 5:10-cv-00269-KGB (E.D. Ark. filed Sept. 9, 2010) (reassigned May 17, 2012); *Rowland v. Crothall Healthcare Inc.*, 4:10-cv-01998-KGB (E.D. Ark. filed Dec. 8, 2010) (reassigned); *Mathews v. Marnitz*, 4:11-cv-00767-KGB (E.D. Ark. filed Oct. 21, 2011) (reassigned); *Tippy v. NAES Corp.*, 3:12-cv-00196-KGB (E.D. Ark. filed Aug. 8, 2012); *Settle v. TJX Cos.*, 4:12-cv-00558-KGB (E.D. Ark. filed Sept. 4, 2012); *Howard v. Gunther Hewlitt Corp.*, 4:13-cv-00065-KGB (E.D. Ark. filed Feb. 12, 2013); *Watts v. Luxottica Retail N. Am. Inc.*, 4:13-cv-00092-KGB (E.D. Ark. filed Feb. 25, 2013); *Cherepski v. Apple Inc.*, 4:13-cv-00433-KGB (E.D. Ark. filed July 26, 2013); *Buck v. Lindsey Mgmt. Co.*, 4:13-cv-00676-KGB (E.D. Ark. filed Nov. 26, 2013); *Reese v. Correct Care Solutions LLC*, 2:16-cv-00046-KGB (E.D. Ark. filed Mar. 28, 2016); *Kaye v. Allstate Ins. Co.*, 4:17-cv-00117-KGB (E.D. Ark. filed Feb. 28, 2017); *Esry v. BJ's Restaurants Inc.*, 4:18-cv-00157-KGB (E.D. Ark. filed Feb. 23, 2018); *Reese v. Correct Care Solutions LLC*, 2:19-cv-00007-KGB (E.D. Ark. filed Jan. 18, 2019); *McCastle v. Ledic Realty Co.*, 4:20-cv-00029-KGB (E.D. Ark. filed Jan. 8, 2020); *Collinsworth v. Office Depot Inc.*, 4:20-cv-00093-KGB (E.D. Ark. filed Jan. 27, 2020); *Harris v. Ratner Steel Supply Co.*, 3:20-cv-00112-KGB (E.D. Ark. filed Apr. 8, 2020); *Ponder v. HD Clinic Ltd.*, 4:20-cv-00542-KGB (E.D. Ark. filed May 20, 2020); *Green v. Hall Mfg. LLC*, 4:20-cv-01260-KGB (E.D. Ark. filed Oct. 21, 2020); *Daniel v. ABM Industries Inc.*, 4:21-cv-00269-KGB (E.D. Ark. filed Apr. 7, 2021); *Thomas v. Broadpath LLC*, 4:21-cv-00410-KGB (E.D. Ark. filed May 14, 2021); *Wallace v. Evergreen Packaging LLC*, 4:22-cv-00337-KGB (E.D. Ark. filed Apr. 12, 2022); *Hill v. CNO Financial Group*, 4:22-cv-00451-KGB (E.D. Ark. filed May 13, 2022); *Roseburrow v. NA Security Inc.*, 4:23-cv-00059-KGB (E.D. Ark. filed Jan. 27, 2023); *Stephens v. AAA Cooper Transp. Inc.*, 4:25-cv-00069-KGB (E.D. Ark. filed Jan. 27, 2025).

Ms. Madison was also counsel of record in *Beauford v. ActionLink LLC*, 4:12-cv-00139-JLH (E.D. Ark. filed Mar. 2, 2012), in which the defendant transferred its representation to QGT on May 8, 2015 (Dkt. No. 161). Ms. Madison's professional history with and knowledge of QGT accordingly extends back at least eleven years.

same directive. Dkt. No. 72, at 6 (Aug. 5, 2024).[3] The "historical knowledge" that produced this letter in July 2026, after three days of trial, was available to the same lawyer in April 2023, when the complaint was filed, and at every point since—just like the 2006 APA.

The timeline is not merely context; under settled law, it is dispositive. There is no good faith basis to "request" recusal now, especially given these attenuated circumstances.

## II. ALLEGUARD'S "REQUEST" IS UNTIMELY AND FORFEITED

To the extent that Alleguard's letter is a "a claim for judicial recusal under section 455," such requests must be made "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim" and "will not be considered unless timely made." *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003) (internal quotations omitted). Prompt action is required because "motions to recuse should not be viewed as an additional arrow in the quiver of advocates in the face of [anticipated] adverse rulings." *In re Kansas Pub. Emps. Retirement Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996) (internal quotations omitted and alteration in original).

The cases are relentless on the point. *White v. National Football League* held untimely a recusal challenge pressed only after adverse rulings: "[a] motion to recuse should not be withheld as a fallback position to be asserted only after an adverse ruling." 585 F.3d 1129, 1140–41 (8th Cir. 2009). *In re Steward*, the court held that a motion filed immediately after an adverse ruling shows the movant was holding the issue "as an option in the event the trial court rules against it." 828 F.3d 672, 682 (8th Cir. 2016). *Neal v. Wilson* "disapprove[d]" of a litigant's "decision to wait until after [the judge] had issued an unfavorable ruling before moving for recusal." 112 F.3d 351, 357 n.6 (8th Cir. 1997).

This district follows the same rule. *United States v. Fiske*, 968 F. Supp. 433, 435–36 (E.D. Ark. 1997). And so does this Court. In *Burton v. Arkansas Secretary of State*, this Court denied as untimely a recusal motion filed after adverse rulings, describing such filings as "a device interposed for suspect tactical and strategic reasons following the district court's adverse rulings" whose grant "would have serious adverse effects on the efficient use of judicial resources and the administration of justice." No. 4:11-cv-00710-KGB, 2015 WL 11090414, at *4 (E.D. Ark. Feb. 26, 2015) (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1209 (8th Cir. 2010)). And this Court has twice reminded litigants that "[a]dverse rulings, standing alone, do not establish judicial bias or prejudice, nor create a reasonable question of judicial impartiality." *Coley v. Floyd*, No. 2:12-cv-00160-KGB, 2015 WL 1457196, at *1 (E.D. Ark. Mar. 30, 2015) (quoting *United States v. Oaks*, 606 F.3d 530, 537 (8th Cir. 2010)); *accord*

---

[3] The provision is expressly conditioned on the Court holding a financial interest in a party or an affiliate of a party. Dkt. No. 72, at 6. Defendants do not contend it reaches former-firm transactional work. They invoke it for the principle it establishes: this Court told counsel at the outset of the case to run the recusal question and to raise any conflict promptly.

*Winnett v. Bray*, No. 2:16-cv-13-KGB-BD, 2018 WL 770177, at *1 (E.D. Ark. Feb. 7, 2018). Alleguard asks this Court to become the first exception to its own rule.

As discussed above, here the request was not filed at the earliest possible moment. Alleguard has had knowledge of QGT's representation in its corporate records for years. At the very latest, it knew on January 20, 2026, when it filed its response to Mr. Tyner's motion. But regardless, the statements in Alleguard's letter are unsworn and are, for these purposes, entitled to no weight. Even ignoring the record of this case, this Court has nothing on which to determine whether Alleguard has made its "request" at the earliest possible opportunity. Because the request is untimely, it cannot be considered, and this Court need not recuse.

## III. QGT'S REPRESENTATION IN THE 2006 APA DOES NOT CONCERN THIS MATTER

The matter in controversy here is whether Mr. Tyner misappropriated Alleguard's purported trade secrets, whether Creative Foam is using those purported trade secrets, and whether, if the 2001 Confidentiality Agreement can be enforced against Mr. Tyner, he breached it. No lawyer at QGT ever performed legal work concerning the 2001 agreement, Mr. Tyner, his obligations, or any event of 2023, and any argument to the contrary is highly attenuated at best and entirely speculative at worst. QGT offered transactional representation, undertaken before either Alleguard or this dispute existed, for an entity that is not a party, on a deal whose own papers are, in Alleguard's own words, entirely not necessary to Alleguard's case, Dkt. No. 259, at 2, 10–11, and "at least ambiguous on the assignment of Tyner's [2001] Confidentiality Agreement." Dkt. No. 236, at 3–4. Because QGT's representation never touched the substance of the matter in controversy here, no person at QGT served "as a lawyer concerning the matter." 28 U.S.C. § 455(b)(2).

Defendants want to be clear: QGT's client is not at issue. Drew Foam Companies, Inc. (Delaware) is not a party here, nor could it be affected by the outcome of this litigation. The 2006 transaction is relevant here because Alleguard seeks to enforce an agreement that predates the 2006 transaction against Mr. Tyner. But QGT's prior representation has no bearing on that question. The Court is merely being asked to determine what rights QGT's then client bargained for in 2006. This Court can make no ruling that is beneficial or harmful to QGT's client, and the Court's prior association with QGT can have no impact on its determination.[4] Interpretation of the 2006 APA on its face is all that is required.

To highlight their point, Defendants offer this analogy: If this case were about real property rights, no reasonable person would come to the Court and argue that it must recuse because someone at the Court's prior firm represented a party who purchased and later sold the real property. The prior representation would have no effect on determining

[4] At least Defendants cannot see how one could argue that the Court's association with QGT could affect is determination of what rights were acquired in 2006. If Alleguard believes that the Court could be influenced by QGT's 2006 representation, it should say so, **directly**.

the rights to the real property now, even if conveyance documents were relevant to the inquiry. But that is exactly what Alleguard's argument would require.

Alleguard says the 2006 agreement is central here because of this Court's remarks at trial: the Court, it reports, "expressed during trial that it may make a negative inference against Alleguard's position as to its successor rights if the document is not put into evidence." Letter, at 4 n.7 (citing Tr. Vol. 3, at 654–55). The transcript reads differently. The Court observed that "[i]f documents exist and they're not brought into the courtroom, you can read the inference with respect to credibility as well as I can, as well as any juror can with respect to it. And that goes both ways." Tr. Vol. 3, 654:21–24. An even-handed observation about credibility, expressly applicable to both sides, appears in the letter as a threatened adverse inference against Alleguard alone. The Court presided over that colloquy and can compare the letter's account with its own words.

Alleguard further overstates the authorities on which it relies. For instance, Alleguard presents *Little Rock School District v. Armstrong*, 359 F.3d 957 (8th Cir. 2004), as "strongly suggest[ing]" recusal. But the court there affirmed the denial of the recusal request in circumstances far closer than these: the then-current judge had represented the prior judge himself in mandamus proceedings within the very desegregation litigation over which he presided. The Eighth Circuit looked "to the substance of the issues argued and decided in the two proceedings" and held that because the prior representation "did not touch upon the merits," it was not the same matter. *Id.* at 960–61. If a judge's own prior appearance in the same case does not necessarily trigger § 455(b)(2), a former partner's work on a nonparty's corporate acquisition seventeen years before this lawsuit does not either.

Likewise, *In re Rodgers*, 537 F.2d 1196 (4th Cir. 1976) does not support Alleguard. There, the judge was presiding over a criminal trial in which the judge's former partner and that partner's client were called by the defendant to testify *regarding their own conduct* in the partner's client's attempt to purchase a racetrack. *Id.* at 1198. The defendant argued that its conduct was not criminal because everyone who tried to purchase the racetrack did what the defendant did too. In other words, the defendant was offering the conduct of the judge's former partner and that partner's client as a reason why the defendant was not guilty of the charged crimes. None of those facts exist here, and the Fourth Circuit has since confined *Rodgers* to that posture, holding recusal unnecessary where the former firm's client is a nonparty who will not testify about the events the firm handled. *United States v. DeTemple*, 162 F.3d 279, 285–86 (4th Cir. 1998).

Alleguard also, somehow, treats *Preston v. United States*, 923 F.2d 731, 734–36 (9th Cir. 1991), as helpful. That case involved a former firm that had appeared in the federal litigation itself, and a client whose indemnity exposure turned directly on the judgment. QGT has never appeared in this case, represents no party, holds no stake in the outcome, and will supply no witness. And finally, *Philip Morris USA Inc. v. FDA*, 156 F. Supp. 3d 36 (D.D.C. 2016), from which the letter draws its multi-factor gloss, denied recusal on attenuation grounds; every factor it lists resolves against Alleguard on this record.

The letter's remaining suggestion, that QGT's size makes the Court's exposure to the 2006 transaction more likely, has no footing in the statute. Section 455(b)(2) asks whether a lawyer "served during such association as a lawyer concerning the matter," not how many lawyers practiced down the hall. The letter itself assumes the Court had no involvement in the engagement. Letter, at 3 n.6. Firm size, therefore, cannot supply the statutory element the letter concedes is missing.

There is no mandatory basis for recusal under § 455(b).

## IV. NO REASONABLE OBSERVER WOULD QUESTION THIS COURT'S IMPARTIALITY

Alleguard suggests that even if recusal is not mandatory, it is required because QGT's prior representation could cause a reasonable observer to question the Court's impartiality. Alleguard argues that the appearance of impropriety is greater here than most former-firm cases because, in Alleguard's view, the Court's former firm in Alleguard's view was small and because the Court sits as the factfinder here.

First, all of the authorities on which Alleguard relies regarding QGT's size are analyses under § 455(b)(2), not § 455(a). Second, Alleguard does not explain how those factors would call the Court's impartiality into question here.

Section 455(a) turns on an objective question: whether a reasonable observer, knowing all the relevant circumstances, would question the Court's impartiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859–61 (1988). The observer the law posits is fully informed. This one would know everything Alleguard's letter leaves out: that the whole of the asserted connection is a former partner's name in the notice provision on page 31 of a twenty-year-old agreement; that the movant possessed that agreement all along, never produced it in discovery, filed it on this docket in January, and now represents that it need not introduce it at all; that the Court's association with the firm ended in May 2012 and was publicly disclosed; that the movant's local counsel has practiced before this Court for fourteen years; and that the recusal suggestion arrived mid-trial, hours after an exhibit-list motion, while a sanctions request continues under advisement. A reasonable observer who knew those circumstances would not question the Court's impartiality. A reasonable observer would question the letter and its underlying attempt to pressure Mr. Tyner into conceding a central defense to Alleguard's breach-of-contract claim.

Alleguard relies on *Oriental Fin. Grp., Inc. v. Fed. Ins. Co., Inc.*, but there the court noted that recusing because the judge used to work at a firm "would simply have a preposterous effect on the Court as a whole" observing that "[j]udges of this Court who have been partners at law firms regularly preside over cases in which the former firm is counsel to a party." 450 F. Supp. 2d 169, 170 (D.P.R. 2006). QGT is not merely absent as counsel here—it never represented a party at all; it only once purportedly represented Alleguard's predecessor-in-interest. If Alleguard truly believes that this Court's

impartiality could be affected by that relationship, it should say so and specifically explain how.

The Court sitting as factfinder here, if anything, should dissuade impartiality concerns. Lay people are much more likely to be swayed by a tenuous relationship than an Article III judge who has held the bench for nearly fifteen years. A federal judge is a professional factfinder; the premise of every bench trial is that a judge can impartially weigh evidence, even touching matters her former firm, clients, or colleagues handled somewhere over a long career. The objective observer § 455(a) posits is sophisticated, not suspicious; she understands what it means that a transactional partner at a judge's former firm once papered an acquisition for a company that is not a party to this lawsuit. And the bench posture cuts against recusal on cost as well. Judges "have an obligation to litigants and their colleagues not to remove themselves needlessly," because "a change of umpire in mid-contest may" prejudice parties, waste resources, and "facilitate judge-shopping." *Sw. Bell Tel. Co. v. FCC*, 153 F.3d 520, 523 (8th Cir. 1998); *see Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 578 F. Supp. 3d 1011, 1022 (E.D. Ark. 2022) ("[R]ecusal in situations where it is not required incentivizes and facilitates the unfair and unseemly tactic of judge shopping.").

Here the change would come not merely mid-contest but mid-trial, in a case where the umpire is the factfinder. Three days of testimony have been taken. This Court has watched the first witness answer. A successor judge could not inherit those credibility assessments; the alternatives would be to decide a trade secrets case on a cold transcript, or to try the case again from the beginning, and either way to hand the sanctions question this Court reserved for itself, Dkt. No. 239, at 5, to a judge who never saw the conduct. Section 455 does not compel that result where its terms are not met, and its terms are not met here.

*Liljeberg*, Alleguard's lead authority, involved a judge who sat as trustee of a university holding a direct financial interest in the litigation while it was pending before him. 486 U.S. at 850. Nothing in it suggests that a former partner's role in a nonparty's decades-old acquisition creates an appearance problem, and even *Liljeberg* cautioned that "there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance." 486 U.S. at 862.

There is no disqualifying circumstance in this case, and Alleguard has failed to manufacture one.

## V. <u>ALLEGUARD'S OFFER IS UNETHICAL</u>

In footnote 5, Alleguard gives away the game. But even if Defendants were tempted by their offer, the statute forbids it, and it would be unethical. Alleguard argues that "recusal could be avoided" if Mr. Tyner will "abandon his chain-of-title defense based on the 2006 APA, concede that Alleguard is the successor in interest to Drew Foam who has the right to enforce the 2001 Confidentiality Agreement, and waive any objections to this Court continuing to serve in this case." Letter, at 3 n.5.

Alleguard's offer reveals that its true concern is Mr. Tyner's defense, not QGT's prior representation By Alleguard's own logic, recusal would not be required—even though QGT once represented a party to the 2006 APA—if Mr. Tyner would simply abandon that defense. But any circumstance requiring recusal would have to stem from the Court's prior firm, not from Mr. Tyner's litigation position. If QGT's prior representation truly concerned this matter, nothing Mr. Tyner could or could not do would change whether recusal is required. Alleguard is using the mere possibility of recusal as leverage to pressure Mr. Tyner into abandoning his defense.

But recusal under § 455(b)(2) cannot be waived, and it is not conditional. Section 455(e) provides that no judge "shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated in subsection (b)." In other words, if the letter's § 455(b)(2) theory were sound, no concession by Mr. Tyner could cure it, and Alleguard's proposal would violate the very statute it alleges requires recusal. Where a ground "arises only under subsection (a)," § 455(e) permits waiver, but only by "the parties," and only where "preceded by a full disclosure on the record of the basis for disqualification."

Alleguard's offer satisfies neither condition. It is extortion: Mr. Tyner is told he may pay for this Court's continued service by waiving his defense, or else Alleguard will use QGT's tenuous connection to this litigation to try to derail the case fifteen days before trial resumes. Mr. Tyner will not waive his defenses. It would be unethical for undersigned counsel to even suggest to him that he do so, and it would be equally improper for this Court to entertain such a proposal from counsel.

## VI. ALLEGUARD'S OWN ACCOUNT DEMONSTRATES THAT A SERIOUS PRE-SUIT INVESTIGATION NEVER OCCURRED

As with all representations to the Court, Rule 11, including subsection (c)(3), applies to Alleguard's letter. The Rule's certifications attach to any "pleading, written motion, or other paper" presented to the court, "whether by signing, filing, submitting, or later advocating it," and they include certifications that the paper "is not being presented for any improper purpose," that its legal contentions are warranted, and that its factual contentions have evidentiary support, each "formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b). The letter was signed by counsel, submitted to the Court, and asks for significant, extraordinary relief. Its certifications are in force. They matter here because the letter's timeliness narrative and Rule 11's inquiry requirement cannot both be satisfied.

Rule 11 obligated Alleguard's counsel, before signing the 2023 complaint, to conduct a reasonable inquiry into Alleguard's right to enforce the 2001 Confidentiality Agreement, the contract on which its breach claim depends. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'"); *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 550–51 (1991) (the standard of inquiry is objective).

In this Circuit, "Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing," and the "prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003). Discovery is not a substitute: "It is not permissible to file a suit and use discovery as the sole means of finding out whether you have a case. . . . Rule 11 requires independent inquiry." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987); *accord Muraoka v. Am. Osteopathic Ass'n*, 117 F.R.D. 616, 618–19 (N.D. Ill. 1987). Courts impose sanctions where a plaintiff's files shows that it had no standing to bring, because such filings exemplify "the 'sue now, inquire later mentality' Rule 11 was designed to prevent." *Storage Tech. Partners II v. Storage Tech. Corp.*, 117 F.R.D. 675, 682 (D. Colo. 1987) (quoting *Foster v. Michelin Tire Corp.*, 108 F.R.D. 412, 415 (C.D. Ill. 1985)). Sanctions for a violation are mandatory. *Storage Tech.*, 117 F.R.D. at 680. This Court has made both points from the bench: "You have an affirmative duty to establish standing at every point in the case, right? Including when the complaint was filed." Tr. Vol. 3, 650:1–3. And, earlier that same day: "This is kind of testing some Rule 11 basis of filing a verified complaint, Mr. Stembridge." *Id.* at 526:24–25.

For a breach-of-contract claim asserted by a claimed successor four transactions removed from the original counterparty, a reasonable pre-suit inquiry runs through the transaction documents in the client's own files: the 2006 2012, 2018, and 2020 agreements. Two accounts of that inquiry are possible, and the letter must be read against both. If counsel performed it, then counsel has known of the 2006 APA, and of QGT's name on its face, since before this case was filed, and the recusal ground now pressed mid-trial was held in reserve through summary judgment, through the pretrial conference, and through three days of testimony. That is forfeiture, and it is the tactical use of § 455 the Eighth Circuit has condemned.

If counsel did not perform it, then the contract claim was filed, certified, and litigated for three years without anyone examining the documents on which Alleguard's right to sue depends, and the letter's own words supply the admission: the connection surfaced "only by happenstance" in July 2026. Letter, at 2 n.4. The trial record points the same direction. Alleguard's corporate representative, who verified the complaint, was asked what he did to connect the entity named in the 2001 agreement to Foam Holdings before verifying; he answered that he "verified it with our HR department as it was in his employee record" and "cannot speak to the exact process after that." Tr. Vol. 3, 638:19–21. His understanding of the 2006 transaction, the asset purchase the letter now describes as central, was that "it was a stock deal." *Id.* at 639:22–23. One account forfeits the recusal issue. The other concedes that the certification behind the complaint was never true. There is no third account.

The improper-purpose certification is measured against the same record: a suggestion of mandatory disqualification transmitted mid-trial, hours after a motion seeking relief from the movant's own discovery failures, while sanctions against Alleguard and its counsel are under advisement, closing with an offer to withdraw the disqualification in exchange for the surrender of a defense.

Defendants do not ask the Court to resolve any of this now. They ask the Court to require what Rule 11 and the seriousness of the accusation both demand: a sworn record.

## VII. REQUESTED COURSE

Defendants respectfully request that the Court direct that:

(1) if Alleguard elects to seek recusal, it be required to file a formal motion, and that the Court issue a briefing schedule for doing so;

(2) any such motion be supported by sworn declarations from Alleguard and from each of its counsel of record, including local counsel, stating when each learned:

(a) that the Court practiced at QGT;

(b) that Mr. Grooms appears in the notice provision of the 2006 APA; and

(c) the date Alleguard obtained possession, custody, or control of the 2006 APA, together with the dates and substance of counsel's communications with Mr. Bryan and Mr. Grooms;

(3) the declarations describe the pre-suit inquiry counsel conducted into Alleguard's right to enforce the 2001 Confidentiality Agreement before the complaint was certified under Rule 11; and

(4) trial proceedings continue in the interim.

Defendants reserve all rights with respect to fees and sanctions, including in connection with the matters this Court holds under advisement. Dkt. No. 239, at 5. Mr. Tyner will not be abandoning his defenses.

Respectfully submitted,

A. Mehdizadegan

Abtin Mehdizadegan (2013136)
Baxter D. Drennon (2010147)
Joseph C. Stepina (2020124)
Allison T. Scott (2020205)
Julie Hill (2023194)
Jacob Oneal Sutter (2023040)
Chris Stevens (2012289)
**HALL BOOTH SMITH, P.C.**
200 River Market Avenue, Suite 500
Little Rock, Arkansas 72201
Telephone: (501) 371-0808
Facsimile: (501) 604-5566
abtin@hallboothsmith.com
bdrennon@hallboothsmith.com
jstepina@hallboothsmith.com
allisonscott@hallboothsmith.com
jhill@hallboothsmith.com
jsutter@hallboothsmith.com
cstevens@hallboothsmith.com

*Attorneys for Defendants Charles Tyner and Creative Foam Products, LLC*

cc: All Counsel of Record

AO 10
Rev. 1/2013

# FINANCIAL DISCLOSURE REPORT
# FOR CALENDAR YEAR 2012

*Report Required by the Ethics in Government Act of 1978 (5 U.S.C. app. §§ 101-111)*

| | | |
|---|---|---|
| 1. Person Reporting (last name, first, middle initial)<br>Baker, Kristine G. | 2. Court or Organization<br>Eastern District of Arkansas | 3. Date of Report<br>08/24/2013 |
| 4. Title (Article III judges indicate active or senior status; magistrate judges indicate full- or part-time)<br>Active Article III Judge | 5a. Report Type (check appropriate type)<br>☐ Nomination Date<br>☐ Initial ☑ Annual ☐ Final<br>5b. ☑ Amended Report | 6. Reporting Period<br>01/01/2012<br>to<br>12/31/2012 |
| 7. Chambers or Office Address<br>United States District Court - Eastern District of Arkansas<br>500 West Capitol Avenue, Room D444<br>Little Rock, Arkansas 72201 | | |

***IMPORTANT NOTES:*** *The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information.*

## I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| | POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|---|
| 1. | Partner | Quattlebaum, Grooms, Tull & Burrow PLLC ("QGTB") |
| 2. | Member | Arbor Enterprises, LLC |
| 3. | Member | Wasserliebend, LLC |
| 4. | Board Member | Presbyterian Village, Inc. |
| 5. | Board Member | Arkansas Bar Foundation |

## II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☐ NONE *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. 7/19/2004 | Equity partners of QGTB; governs agreed amount to be paid to a departing partner; resigned as partner 5/21/2012 |
| 2. 2012 | QGTB PLLC 401(k) Plan; plan participants in firm-sponsored 401(k) plan; self-directed account with investments disclosed on Part VII |
| 3. | |

| FINANCIAL DISCLOSURE REPORT<br>Page 2 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|
| 1. 5/21/2012 | QGTB Ordinary business income | $135,134.00 |
| 2. | | |
| 3. | | |
| 4. | | |

### B. Spouse's Non-Investment Income - *If you were married during any portion of the reporting year, complete this section.*

*(Dollar amount not required except for honoraria.)*

☐ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. 12/31/2012 | MWSGW Ordinary business income |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS – *transportation, lodging, food, entertainment.*

*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☑ NONE *(No reportable reimbursements.)*

| SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 3 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑ NONE *(No reportable gifts.)*

| | SOURCE | DESCRIPTION | VALUE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☐ NONE *(No reportable liabilities.)*

| | CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|---|
| 1. | Chase #1 | Credit card | J |
| 2. | Chase #2 | Credit card | J |
| 3. | Am. Express | Credit card | J |
| 4. | | | |
| 5. | | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 4 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets)<br>Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period<br>(1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period<br>(1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period<br>(1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 1. Brokerage Acct. #1: | | | | | | | | | |
| 2. Am. Funds Int'l Growth & Income Fund | A | Dividend | L | T | Buy (add'l) | 12/26/12 | J | | |
| 3. Am. Funds Europac. Fund | A | Dividend | K | T | Buy (add'l) | 12/28/12 | J | | |
| 4. Am. Funds Growth Fund of Am. | A | Dividend | K | T | Buy (add'l) | 08/08/12 | J | | |
| 5. | | | | | Buy (add'l) | 10/15/12 | J | | |
| 6. | | | | | Buy (add'l) | 11/12/12 | J | | |
| 7. | | | | | Buy (add'l) | 12/10/12 | J | | |
| 8. | | | | | Buy (add'l) | 12/21/12 | J | | |
| 9. Am. Funds New World Fund | B | Dividend | M | T | Buy (add'l) | 12/28/12 | J | | |
| 10. Am. Funds Smallcap Wrld. Fund | A | Dividend | K | T | Buy (add'l) | 12/28/12 | J | | |
| 11. Am. Funds Washington Mut. Fund | B | Dividend | L | T | Buy (add'l) | 9/25/12 | J | | |
| 12. | | | | | Buy (add'l) | 12/26/12 | J | | |
| 13. Am. Funds Global Balanced Fund | B | Dividend | L | T | Buy (add'l) | 4/13/12 | K | | |
| 14. | | | | | Buy (add'l) | 6/11/12 | K | | |
| 15. | | | | | Buy (add'l) | 7/10/12 | J | | |
| 16. | | | | | Buy (add'l) | 10/1/12 | J | | |
| 17. | | | | | Buy (add'l) | 12/31/12 | J | | |

| | | | | | |
|---|---|---|---|---|---|
| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

| FINANCIAL DISCLOSURE REPORT<br>Page 5 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets)<br>Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period<br>(1) Amount Code 1 (A-H) | B. (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period<br>(1) Value Code 2 (J-P) | C. (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period<br>(1) Type (e.g., buy, sell, redemption) | D. (2) Date mm/dd/yy | D. (3) Value Code 2 (J-P) | D. (4) Gain Code 1 (A-H) | D. (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 18. Brokerage Acct. #2: | | | | | | | | | |
| 19. Am. Funds Int'l. Growth & Income Fund | A | Dividend | K | T | Buy (add'l) | 1/12/12 | J | | |
| 20. | | | | | Buy (add'l) | 2/13/12 | J | | |
| 21. | | | | | Buy (add'l) | 3/16/12 | J | | |
| 22. | | | | | Buy (add'l) | 3/20/12 | J | | |
| 23. | | | | | Buy (add'l) | 4/13/12 | J | | |
| 24. | | | | | Buy (add'l) | 5/11/12 | J | | |
| 25. | | | | | Buy (add'l) | 6/14/12 | J | | |
| 26. | | | | | Buy (add'l) | 9/13/12 | J | | |
| 27. | | | | | Buy (add'l) | 12/26/12 | J | | |
| 28. Am. Funds Europac. Fund | B | Dividend | L | T | Buy (add'l) | 12/28/12 | J | | |
| 29. Am. Funds Growth Fund of Am. | A | Dividend | L | T | Buy (add'l) | 6/4/12 | J | | |
| 30. | | | | | Buy (add'l) | 12/21/12 | J | | |
| 31. Am. Funds Smallcap Wrld. Fund | A | Dividend | K | T | Buy (add'l) | 1/12/12 | J | | |
| 32. | | | | | Buy (add'l) | 2/13/12 | J | | |
| 33. | | | | | Buy (add'l) | 3/16/12 | J | | |
| 34. | | | | | Buy (add'l) | 4/13/12 | J | | |

1. Income Gain Codes: (See Columns B1 and D4) A =$1,000 or less; B =$1,001 - $2,500; C =$2,501 - $5,000; D =$5,001 - $15,000; E =$15,001 - $50,000; F =$50,001 - $100,000; G =$100,001 - $1,000,000; H1 =$1,000,001 - $5,000,000; H2 =More than $5,000,000
2. Value Codes (See Columns C1 and D3) J =$15,000 or less; K =$15,001 - $50,000; L =$50,001 - $100,000; M =$100,001 - $250,000; N =$250,001 - $500,000; O =$500,001 - $1,000,000; P1 =$1,000,001 - $5,000,000; P2 =$5,000,001 - $25,000,000; P3 =$25,000,001 - $50,000,000; P4 =More than $50,000,000
3. Value Method Codes (See Column C2) Q =Appraisal; R =Cost (Real Estate Only); S =Assessment; T =Cash Market; U =Book Value; V =Other; W =Estimated

| FINANCIAL DISCLOSURE REPORT<br>Page 6 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets)<br>Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 35. | | | | | Buy (add'l) | 5/11/12 | J | | |
| 36. | | | | | Buy (add'l) | 6/4/12 | J | | |
| 37. | | | | | Buy (add'l) | 12/28/12 | J | | |
| 38. Am. Funds Washington Mut. Fund | B | Dividend | L | T | Buy (add'l) | 3/27/12 | J | | |
| 39. | | | | | Buy (add'l) | 6/19/12 | J | | |
| 40. | | | | | Buy (add'l) | 9/25/12 | J | | |
| 41. | | | | | Buy (add'l) | 12/26/12 | J | | |
| 42. Brokerage Acct. #3: | | | | | | | | | |
| 43. Fed Ex Corp | | None | | | Sold | 8/7/12 | J | A | |
| 44. Am. Funds Fundamental Investors Fund | A | Dividend | K | T | Buy (add'l) | 12/21/12 | J | | |
| 45. Am. Funds Growth Fund of Am. | A | Dividend | J | T | Buy (add'l) | 12/21/12 | J | | |
| 46. Am. Funds Int'l. Growth & Income Fund | A | Dividend | J | T | Buy (add'l) | 12/24/12 | J | | |
| 47. Invesco Constellation Fund | | None | K | T | | | | | |
| 48. Am. Funds Europac. Fund | A | Dividend | J | T | Buy (add'l) | 12/28/12 | J | | |
| 49. Brokerage Acct. #4: | | | | | | | | | |
| 50. Am. Funds Int'l. Growth & Income Fund | A | Dividend | J | T | Buy (add'l) | 3/20/12 | J | | |
| 51. | | | | | Buy (add'l) | 6/14/12 | J | | |

| | | | | | |
|---|---|---|---|---|---|
| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

| FINANCIAL DISCLOSURE REPORT<br>Page 7 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br>Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period<br>(1) Amount Code 1 (A-H) | B. (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period<br>(1) Value Code 2 (J-P) | C. (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period<br>(1) Type (e.g., buy, sell, redemption) | D. (2) Date mm/dd/yy | D. (3) Value Code 2 (J-P) | D. (4) Gain Code 1 (A-H) | D. (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 52. | | | | | Buy (add'l) | 9/13/12 | J | | |
| 53. | | | | | Buy (add'l) | 12/26/12 | J | | |
| 54. Am. Funds Europac. Fund | A | Dividend | J | T | Buy (add'l) | 12/28/12 | J | | |
| 55. Am. Funds Fundamental Investors Fund | A | Dividend | J | T | Buy (add'l) | 3/20/12 | J | | |
| 56. | | | | | Buy (add'l) | 6/15/12 | J | | |
| 57. | | | | | Buy (add'l) | 9/14/12 | J | | |
| 58. | | | | | Buy (add'l) | 12/21/12 | J | | |
| 59. Am. Funds Growth Fund of Am. | A | Dividend | J | T | Buy (add'l) | 12/21/12 | J | | |
| 60. Am. Funds Global Balanced Fund | A | Dividend | J | T | Buy (add'l) | 4/2/12 | J | | |
| 61. | | | | | Buy (add'l) | 7/2/12 | J | | |
| 62. | | | | | Buy (add'l) | 10/1/12 | J | | |
| 63. | | | | | Buy (add'l) | 12/31/12 | J | | |
| 64. Brokerage Acct. #5: | | | | | | | | | |
| 65. Am. Funds Global Balanced Fund | A | Dividend | J | T | Buy (add'l) | 12/31/12 | J | | |
| 66. Am. Funds Europac. Fund | A | Dividend | J | T | Buy | 02/07/12 | J | | |
| 67. | | | | | Buy (add'l) | 12/28/12 | J | | |
| 68. Brokerage Acct. #6: | | | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 1. Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2. Value Codes<br>(See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes<br>(See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

| FINANCIAL DISCLOSURE REPORT Page 8 of 14 | Name of Person Reporting Baker, Kristine G. | Date of Report 08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 69. Am. Funds Global Balanced Fund | A | Dividend | J | T | Buy (add'l) | 12/31/12 | J | | |
| 70. Am. Funds Europac. Fund | A | Dividend | J | T | Buy | 12/28/12 | J | | |
| 71. | | | | | Buy (add'l) | 12/28/12 | J | | |
| 72. Brokerage Acct. #7: | | | | | | | | | |
| 73. Vanguard Age-Based Aggressive Growth | | None | M | T | Buy (add'l) | 5/15/12 | J | | |
| 74. | | | | | Buy (add'l) | 9/13/12 | J | | |
| 75. | | | | | Buy (add'l) | 11/21/12 | J | | |
| 76. Brokerage Acct. #8: | | | | | | | | | |
| 77. Am. Funds Int'l Growth & Income Fund | A | Dividend | | | Sold | 10/4/12 | K | A | |
| 78. Am. Funds Capital World & Income Fund | A | Dividend | | | Sold | 10/4/12 | K | A | |
| 79. Am. Funds Europac. Fund | | None | | | Sold | 10/4/12 | J | A | |
| 80. Am. Funds Growth Fund of America | | None | | | Sold | 10/4/12 | J | A | |
| 81. Am. Funds New World Fund | | None | | | Sold | 10/4/12 | J | A | |
| 82. Am. Funds Smallcap World Fund | | None | | | Sold | 10/4/12 | J | A | |
| 83. Am. Funds Washington Mutual Fund | A | Dividend | | | Sold | 10/4/12 | J | A | |
| 84. Am. Funds Global Balanced Fund | A | Dividend | | | Sold | 10/4/12 | J | A | |
| 85. American Funds 2024 Fund | A | Dividend | M | T | Buy | 10/4/12 | M | | |

| | | | | | |
|---|---|---|---|---|---|
| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT<br>Page 9 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets)<br>Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | B. (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | C. (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | D. (2) Date mm/dd/yy | D. (3) Value Code 2 (J-P) | D. (4) Gain Code 1 (A-H) | D. (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 86. Brokerage Acct. #9: | | | | | | | | | |
| 87. Vanguard Age-Based Aggressive Growth | | None | M | T | Buy (add'l) | 5/15/12 | J | | |
| 88. | | | | | Buy (add'l) | 9/13/12 | J | | |
| 89. | | | | | Buy (add'l) | 11/21/12 | J | | |
| 90. Brokerage Acct. #10: | | | | | | | | | |
| 91. Am. Funds Growth Fund of Am. | | None | | | Buy (add'l) | 5/10/12 | J | | |
| 92. | | | | | Buy (add'l) | 9/12/12 | J | | |
| 93. | | | | | Sold | 10/8/12 | K | A | |
| 94. Am. Funds New World Fund | | None | | | Buy (add'l) | 5/10/12 | J | | |
| 95. | | | | | Buy (add'l) | 9/12/12 | J | | |
| 96. | | | | | Sold | 10/8/12 | K | A | |
| 97. Am. Funds Capital World Growth & Income | A | Dividend | | | Buy (add'l) | 5/10/12 | J | | |
| 98. | | | | | Buy (add'l) | 9/12/12 | J | | |
| 99. | | | | | Sold | 10/8/12 | K | A | |
| 100. American Funds 2024 Fund | A | Dividend | L | T | Buy | 10/8/12 | L | | |
| 101. Centennial Bank (ckg. acct.) | A | Interest | L | T | | | | | |
| 102. Delta Trust & Bank (ckg. acct.) | A | Interest | M | T | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

| FINANCIAL DISCLOSURE REPORT<br>Page 10 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br>Place "(X)" after each asset exempt from prior disclosure | B.<br>Income during reporting period<br>(1)<br>Amount Code 1 (A-H) | (2)<br>Type (e.g., div., rent, or int.) | C.<br>Gross value at end of reporting period<br>(1)<br>Value Code 2 (J-P) | (2)<br>Value Method Code 3 (Q-W) | D.<br>Transactions during reporting period<br>(1)<br>Type (e.g., buy, sell, redemption) | (2)<br>Date mm/dd/yy | (3)<br>Value Code 2 (J-P) | (4)<br>Gain Code 1 (A-H) | (5)<br>Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 103. Iberia Bank (svgs. acct.) | A | Interest | J | T | | | | | |
| 104. Membership interest in Arbor Enterprises, LLC: | | | | | | | | | |
| 105. Delta Bank & Trust | A | Interest | L | T | | | | | |
| 106. American Funds Int'l, Growth & Income Fund** | A | Dividend | K | T | Buy (add'l) | 3/20/12 | J | | |
| 107. | | | | | Buy (add'l) | 6/14/12 | J | | |
| 108. | | | | | Buy (add'l) | 9/13/12 | J | | |
| 109. | | | | | Buy (add'l) | 12/26/12 | J | | |
| 110. American Funds Capital World Fund** | A | Dividend | K | T | Buy (add'l) | 3/20/12 | J | | |
| 111. | | | | | Buy (add'l) | 6/19/12 | J | | |
| 112. | | | | | Buy (add'l) | 9/25/12 | J | | |
| 113. | | | | | Buy (add'l) | 11/12/12 | J | | |
| 114. | | | | | Buy (add'l) | 12/18/12 | J | | |
| 115. American Funds Europacific Fund** | A | Dividend | K | T | Buy | 2/14/12 | J | | |
| 116. | | | | | Buy | 12/18/12 | J | | |
| 117. | | | | | Buy | 12/28/12 | J | | |
| 118. American Funds Growth Fund of Am.** | A | Dividend | K | T | Buy (add'l) | 11/12/12 | J | | |
| 119. | | | | | Buy (add'l) | 12/21/12 | J | | |

| | | | | | |
|---|---|---|---|---|---|
| 1. Income Gain Codes:<br>(See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2. Value Codes<br>(See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes<br>(See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

| FINANCIAL DISCLOSURE REPORT<br>Page 11 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets)<br>Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | B. (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | C. (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | D. (2) Date mm/dd/yy | D. (3) Value Code 2 (J-P) | D. (4) Gain Code 1 (A-H) | D. (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 120. American Funds New World Fund** | A | Dividend | K | T | Buy (add'l) | 12/28/12 | J | | |
| 121. American Funds Smallcap World Fund** | A | Dividend | K | T | Buy (add'l) | 12/28/12 | J | | |
| 122. American Funds Washington Mutual Fund** | A | Dividend | K | T | Buy (add'l) | 3/27/12 | J | | |
| 123. | | | | | Buy (add'l) | 6/19/12 | J | | |
| 124. | | | | | Buy (add'l) | 9/25/12 | J | | |
| 125. | | | | | Buy (add'l) | 12/26/12 | J | | |
| 126. Munder Growth Opportunities Fund** | | None | | | Sold | 12/17/12 | J | | |
| 127. Windstream Corp.* | A | Dividend | | | Sold | 8/2/12 | J | | |
| 128. American Funds Fundamental Investors Fund* | A | Dividend | K | T | Buy (add'l) | 11/9/12 | J | | |
| 129. American Funds Growth Fund of Am.* | A | Dividend | L | T | Buy (add'l) | 11/9/12 | J | | |
| 130. | | | | | Buy (add'l) | 12/21/12 | J | | |
| 131. American Beacon Stephens Mid Cap Growth Fund* | A | Dividend | K | T | Buy (add'l) | 12/31/12 | J | | |
| 132. American Beacon Stephens Small Cap Growth Fund* | B | Dividend | K | T | Buy (add'l) | 12/31/12 | J | | |
| 133. American Funds Europacific Fund* | A | Dividend | J | T | Buy | 2/13/12 | J | | |
| 134. | | | | | Buy (add'l) | 11/9/12 | J | | |
| 135. | | | | | Buy (add'l) | 12/31/12 | J | | |
| 136. Membership interest in Wasserliebend, LLC: | | | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

| FINANCIAL DISCLOSURE REPORT<br>Page 12 of 14 | Name of Person Reporting<br>Baker, Kristine G. | Date of Report<br>08/24/2013 |
|---|---|---|

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br>Place "(X)" after each asset exempt from prior disclosure | B.<br>Income during reporting period<br>(1)<br>Amount Code 1 (A-H) | (2)<br>Type (e.g., div., rent, or int.) | C.<br>Gross value at end of reporting period<br>(1)<br>Value Code 2 (J-P) | (2)<br>Value Method Code 3 (Q-W) | D.<br>Transactions during reporting period<br>(1)<br>Type (e.g., buy, sell, redemption) | (2)<br>Date mm/dd/yy | (3)<br>Value Code 2 (J-P) | (4)<br>Gain Code 1 (A-H) | (5)<br>Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 137. Developed parcel [redacted] | | None | M | W | | | | | |
| 138. Undeveloped parcel [redacted] | | None | J | W | | | | | |
| 139. Undeveloped parcel [redacted] | | None | J | W | | | | | |
| 140. Undeveloped parcel [redacted] | | None | J | W | Buy | 3/23/12 | J | | James and Carol Stewart |
| 141. Simmons First National Bank (ckg. acct.) | | None | J | T | | | | | |
| 142. Membership interest in Quattlebaum, Grooms, Tull & Burrow | A | Interest | | | Sold | 5/21/12 | M | | QGTB |
| 143. Membership interest in Mitchell Williams | A | Int./Div. | L | U | | | | | |
| 144. New York Life: whole life policy 1 | | None | K | T | | | | | |
| 145. New York Life: whole life policy 2 | | None | K | T | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less<br>F =$50,001 - $100,000 | B =$1,001 - $2,500<br>G =$100,001 - $1,000,000 | C =$2,501 - $5,000<br>H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000<br>H2 =More than $5,000,000 | E =$15,001 - $50,000 |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less<br>N =$250,001 - $500,000<br>P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000<br>O =$500,001 - $1,000,000 | L =$50,001 - $100,000<br>P1 =$1,000,001 - $5,000,000<br>P4 =More than $50,000,000 | M =$100,001 - $250,000<br>P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal<br>U =Book Value | R =Cost (Real Estate Only)<br>V =Other | S =Assessment<br>W =Estimated | T =Cash Market | |

| Name of Person Reporting | Date of Report |
|---|---|
| Baker, Kristine G. | 08/24/2013 |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

Upon review of the instructions, I have determined I may be required to report the specific assets at Lines 105-135 and 137-141.

## IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: s/ Kristine G. Baker

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
MAY 17 2012
JAMES W. McCORMACK, CLERK
By: [signature]
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

IN RE CASES TO BE TRANSFERRED TO THE CALENDAR OF THE HONORABLE KRISTINE G. BAKER )

ORDER TRANSFERRING CASES

The following civil cases are transferred from the docket of the Honorable Brian S. Miller to the docket of the Honorable Kristine G. Baker. Accordingly, the case numbers have been modified to reflect the initials of Judge Baker. The new case number should appear on all future filings to ensure that all documents are properly forwarded to Judge Baker. The Magistrate Judge assigned to the case will remain the same. Unless the parties are notified by separate order, all scheduling orders for each of the following cases shall remain in place.

| | |
|---|---|
| 1:10-cv-00093 KGB | Doris v. TXD Services LP |
| 1:12-cv 00037 KGB-JTK | Jones v. Bishop et al. |
| 2:11-cv 00071 KGB | Moody v. Fisher et al. |
| 2:11-cv 00101 KGB | McLane et al v. Rich Transport Inc et al. |
| 2:11-cv 00174 KGB-JTK | Trevino v. Outlaw |
| 2:11-cv 00211 KGB-JTR | Bennett v. Social Security Administration |
| 2:12-cv 00012 KGB-JTR | Norton v. Social Security Administration |
| 2:12-cv 00041 KGB-HDY | Norris v. May et al. |
| 2:12-cv 00074 KGB-HDY | Murray v. Etherly et al. |
| 3:10-cv 00218 KGB | Stoner v. Arkansas Department of Correction et al. |
| 3:11-cv 00125 KGB | Young v. West Memphis Utilities |
| 3:11-cv 00195 KGB | Langston et al. v. Coppage Farm Service Company et al. |
| 3:12-cv 00054 KGB | Lung et al. v. Allstate Property and Casualty Insurance Company |
| 4:10-cv 01461 KGB | Canulla v. Arkansas Department of Human Services et al. |
| 4:11-cv 00135 KGB-JTK | Clark v. Ellis et al. |
| 4:11-cv 00517 KGB | Hiser v. XTO Energy Inc. |
| 4:11-cv 00669 KGB | Withers v. Johnson et al. |
| 4:11-cv-00689 KGB | Parker v. BHC Pinnacle Point Hospital Inc. et al. |
| 4:11-cv 00710 KGB | Burton v. Martin et al. |
| 4:11-cv 00767 KGB | Mathews v. Marnitz et al. |
| 4:11-cv 00866 KGB | Williams v. Arkansas Children's Hospital, et al. |
| 4:11-cv 00913 KGB | Palermo v. Arkansas Homecare of Hot Springs LLC et al. |
| 4:12-cv-00024 KGM | Taylor v. Arkansas Department of Finance & Administration |
| 4:12-cv 00032 KGB | Williams v. ITT Educational Services Inc et al. |
| 4:12-cv 00133 KGB | Rothrock v. Velte |

| | |
|---|---|
| 4:12-cv 00191 KGB | Denton v. Conveyor Technology et al. |
| 4:12-cv 00219 KGB-JTK | Smith v. Emerson et al. |
| 4:12-cv 00249 KGB | Cook v. Triple Transport Inc. |
| 5:10-cv 00269 KGB | Battles v. Thompson Hospitality Services LLC |
| 5:11-cv 00174 KGB | Avery et al. v. Brown et al. |
| 5:11-cv 00273 KGB-JTR | Dickerson v. Hobbs |
| 5-11-cv 00306 KGB-JTK | Marks v. Hobbs |
| 5-11-cv 00332 KGB-BD | Cooper v. Social Security Administration |
| 5-12-cv 00040 KGB-JTK | Willis v Hobbs |
| 5:12-cv 00058 KGB | St. Christopher v. Union Pacific Railroad Company |
| 5:12-cv 00152 KGB-JTR | Nichols v. Hobbs |

IT IS SO ORDERED.
Dated this 17th day of May, 2012.

AT THE DIRECTION OF THE COURT

James W. McCormack

JAMES W. McCORMACK, CLERK

cc: Honorable Brian S. Miller
Honorable Kristine G. Baker
Counsel of Record

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**PEGGY BATTLES** **PLAINTIFF**

**v.** **Case No. 5:10-CV-00269-KGB**

**THOMPSON HOSPITALITY SERVICES LLC** **DEFENDANT**

**SECOND AMENDED FINAL SCHEDULING ORDER**

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, IT IS HEREBY ORDERED:

**1. TRIAL DATE**

This case is scheduled for a **JURY** trial before United States District Judge Kristine G. Baker commencing at 9:00 a.m. sometime during the week of **April 22, 2013** in The George Howard Jr. Federal Building & U.S. Courthouse, Courtroom #3602, 100 East 8th Street, Pine Bluff, Arkansas 71601.

Any trial conflicts indicated by the parties in their Rule 26(f) Report will be addressed closer to this trial date, if the conflict has not been resolved.

**2. ADDITION OF PARTIES/AMENDMENT OF PLEADINGS**

The deadline for leave to add parties or amend pleadings was August 24, 2012 (Dkt. No. 54).

**3. DISCOVERY**

Discovery should be completed no later than **February 6, 2013**. The parties may conduct discovery beyond this date, if all parties are in agreement to do so. The Court, however, will not resolve any disputes in the course of this extended discovery. All discovery requests and motions must be filed sufficiently in advance of the discovery deadline set forth in this Order to allow for a timely response. Witnesses and exhibits not identified in response to appropriate discovery may not be used at trial except in extraordinary circumstances.

A discovery motion must not be filed until counsel has made a good faith effort to resolve the discovery dispute, in compliance with Local Rule 7.2. When a discovery motion is filed, a response should be filed promptly. A conference call will be scheduled to resolve such matters, if the Court deems it necessary.

## 4. EXPERT DISCLOSURES AND REPORTS

Case-in-chief expert disclosures, including reports, must be made by **November 26, 2012**.

Rebuttal expert disclosures, including reports, must be made by **December 26, 2012**.

These disclosures must be in writing, signed, and served. They are not filed in the Clerk's Office.

## 5. STATUS REPORT

A status report must be filed with the Clerk's office on or before **February 21, 2013**. The report must include the date and results of any settlement conference, the settlement prospects, and an estimate of the length of trial.

## 6. MOTION DEADLINE

All motions, except motions *in limine*, must be filed on or before **February 21, 2013**. Motions for summary judgment must comply with Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.2 and 56.1. Motions *in limine* must be filed on or before **April 8, 2013**, and responses must be filed seven (7) days thereafter. Motions submitted after the deadline may be denied solely on that ground.

Local Rule 7.2(b) requires that, within fourteen (14) days from the date copies of a motion and supporting papers have been served, any party opposing a motion serve and file with the Clerk a concise statement in opposition to the motion with supporting authorities. Any reply to a response to a motion must be filed within seven (7) days of service of the response. The Court may or may not wait on the filing of a reply before ruling on the motion.

## 7. SETTLEMENT CONFERENCE REQUEST

All requests for a settlement conference must be made on or before **March 8, 2013**.

## 8. PRETRIAL DISCLOSURE SHEET

Pretrial disclosure sheets must be filed simultaneously by the parties according to the outline contained in Local Rule 26.2 no later than **April 1, 2013**. That witnesses and exhibits must be listed on the pretrial disclosure sheet does not relieve a party of the obligation to provide the names of witnesses and exhibits in response to the discovery requests.

Objections to opposing parties' pretrial disclosure sheets will be due on **April 8, 2013**.

## 9. TRIAL BRIEFS

All trial briefs must be filed no later than **April 1, 2013**. Responding trial briefs must be filed no later than **April 8, 2013**.

## 10. DEPOSITIONS TO BE USED AT TRIAL OTHER THAN FOR IMPEACHMENT

The proffering party must designate the pertinent portions of a deposition to be used as evidence at trial by **April 1, 2013**. Counter-designations must be made by **April 8, 2013**. These designations need not be filed with the Court but should be exchanged by the parties.

Objections to any deposition or videotapes that will be used at trial must be made by written motion indicating the specific objection and its legal basis by **April 12, 2013**, with the response due **April 17, 2013**. Depositions to be read at trial must be marked as exhibits.

## 11. JURY INSTRUCTIONS AND STATEMENT OF CASE OR PROPOSED FINDINGS AND CONCLUSIONS

For jury trials, the parties must confer regarding the proposed instructions and a verdict form in an attempt to narrow areas of disagreement. The parties must submit an agreed set of instructions on specific issues in the case to the Court on or before **April 15, 2013**. Standard instructions from AMI, Eighth Circuit, or Federal Jury Practice Instructions (5th Edition), as applicable, should be used whenever possible, and the source of authority for the instruction should be noted at the end of each instruction.

A party requesting an instruction that cannot be agreed upon must submit that instruction to the Court and opposing counsel, setting out the disagreement. Note the source of authority on the bottom of each proposed instruction. Instructions must be electronically submitted in Word or WordPerfect format to kgbchambers@ared.uscourts.gov.

Each party must submit to the Court on or before **April 15, 2013** a concise statement of the case, no more than one page in length, that it proposes would be proper to read to the panel of venire persons during voir dire and also any proposed voir dire questions it wishes the Court to pose to the panel.

For bench trials, each party must submit to the Court on or before **April 15, 2013** proposed findings and conclusions.

**12. STIPULATIONS**

The parties should stipulate in writing to the facts not in controversy on or before **April 15, 2013.**

**13. INTRODUCTION OF EXHIBITS**

Exhibits must be made available to all parties and reviewed by counsel prior to the trial date. Each party will provide to the Court three (3) copies of all exhibits, and each exhibit will be numbered for identification purposes. All exhibits must be listed in numerical sequence on the form available through the Court's website (See Court Forms - Civil Forms AO-187 Exhibit and Witness List). The lists must be submitted to the Courtroom Deputy thirty (30) minutes before the beginning of trial, with notations made on the Court's copy of the list noting exhibits to which there is an objection. The Court will receive all stipulated exhibits at the beginning of the trial.

If you anticipate using electronic equipment during trial, you must notify the Courtroom Deputy prior to your trial date. If you wish to bring electronic devices to the courthouse for any proceeding, please note Amended General Order No. 54.

**14. CONFLICTS OF INTEREST**

Counsel must promptly check the Court's list of financial interests on file in the U.S. District Court Clerk's Office to determine whether there is any conflict that might require recusal. If any party is a subsidiary or affiliate of any company in which the Court has a financial interest, bring that fact to the Court's attention immediately.

Please communicate with Debbie Craft at 501-604-5424 to ascertain your position on the calendar as the trial date approaches. In the event of settlement, advise Ms. Craft immediately. The case will not be removed from the trial docket until an order of dismissal has been entered.

**Dated: October 11, 2012**

**AT THE DIRECTION OF THE COURT**
**JAMES W. McCORMACK, CLERK**

By /s/ Debbie Craft
Courtroom Deputy

**Debra Williams**

| | |
|---|---|
| **From:** | Abtin Mehdizadegan <abtin@hallboothsmith.com> |
| **Sent:** | Tuesday, July 28, 2026 9:27 AM |
| **To:** | Joseph Stepina; Bria Delane; Debra Williams |
| **Cc:** | Tracy Washington; John Stembridge; Lisa Taylor; hpierson_piersonlawllc.com; Donald W. Myers; Madison, Eva; Kyle Kennedy; Allison Scott; Baxter Drennon; Chris Stevens; Danny Crabtree; Julie Hill; Jacob Sutter |
| **Subject:** | RE: Foam Holdings Inc. d/b/a Alleguard v. Creative Foam Products LLC, et al., Case No. 4:23-cv-320-KGB [HBS-DMS.FID1947408] |
| **Attachments:** | Financial Interest and Recusal List - KGB.pdf |

**CAUTION - EXTERNAL:**

Ms. Williams,

I am writing to supplement our exhibits to the response to Alleguard's recusal letter with the Court's Financial Interests and Recusal List, current as of July 28, 2026, which we note has included John E. Tull and Steven W. Quattlebaum since May 17, 2012. We believe this information further demonstrates the untimely nature of the request for recusal given the Court's scheduling order; and this additional exhibit supports Defendants' arguments found at Pages 3-4 of the response to Alleguard's recusal letter. ("This Court's scheduling order in this case contains the same directive. Dkt. No. 72, at 6 (Aug. 5, 2024).").

Thank you for your consideration.

Best,

Abtin

**Abtin Mehdizadegan**
Attorney at Law | Hall Booth Smith, P.C.

O: 501.214.3499
D: 501.503.4445

200 River Market Avenue, Suite 500
Little Rock, AR 72201
hallboothsmith.com

CONFIDENTIALITY NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy the original message and any copies.

**From:** Joseph Stepina <JStepina@hallboothsmith.com>
**Sent:** Monday, July 27, 2026 7:18 AM
**To:** Bria Delane <bria@stembridgetaylor.com>; Debra_Williams@ared.uscourts.gov

Court's Exhibit C
SUPPLYJUSTICE.COM

Bria Delane
Legal Administrative Specialist | Paralegal
Stembridge Taylor LLC
4840 Roswell Road, Suite E300 | Atlanta, Georgia 30342
Direct 678-270-5458
www.stembridgetaylorlaw.com

STEMBRIDGE TAYLOR LLC
EMPLOYMENT LAW | BUSINESS LAW

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

# Financial Interests and Recusal List for Judge Kristine G. Baker

## U.S. District Court -- Eastern District of Arkansas

Current as of 07/28/2026 09:13:26

| Name | Start Date |
|---|---|
| Apple, Inc. | 12/17/2021 |
| Lachlan Athanasiou | 08/16/2024 |
| Bank of America Corp | 04/28/2025 |
| Jeremy Brumbelow | 05/17/2012 |
| Cathedral of Saint Andrew | 05/17/2012 |
| Catholic Diocese of Little Rock | 05/17/2012 |
| Cava | 10/30/2025 |
| E. B. Chip Chiles | 05/17/2012 |
| Coca Cola | 10/30/2025 |
| Elijah Conley | 09/05/2025 |
| CoreWeave Inc. | 10/30/2025 |
| D-Wave Quantum Inc. | 10/30/2025 |
| M. Sidney Dassinger | 01/30/2025 |
| Matthew DeLuca | 09/17/2013 |
| Houston Downes | 08/29/2024 |
| Bob Edwards | 05/17/2012 |
| Energy Transfer LP | 10/30/2025 |
| Evergy Metro Inc. | 10/30/2025 |
| Joseph Falasco | 08/11/2015 |
| Lyle Foster | 05/17/2012 |
| Terral Gammill | 05/17/2012 |
| Lucien Gillham | 02/10/2023 |
| Brian Heil | 09/17/2013 |
| Elizabeth A. Hodges | 02/10/2023 |
| Hyden Miron & Foster | 05/17/2012 |
| IBM Corp. | 10/30/2025 |
| IONQ Inc. | 10/30/2025 |
| JP Morgan Chase Bank NA | 10/30/2025 |
| JPMorgan Chase & Co | 04/28/2025 |
| Kinder Morgan Inc | 04/28/2025 |
| Little Rock School District | 05/17/2012 |
| James A. Metrailer | 09/17/2013 |
| Mitchell Williams Selig Gates & Woodyard PLLC | 05/17/2012 |
| Morgan Stanley Finance LLC | 04/28/2025 |

| | |
|---|---|
| National Rural Utilities Cooperative Finance Corp | 04/28/2025 |
| Eric Nelson | 09/17/2013 |
| Nvidia Corp. | 10/30/2025 |
| Oglethorpe Power Corp. | 10/30/2025 |
| Ohio Power Company | 04/28/2025 |
| Our Lady of the Holy Souls Catholic Church | 05/17/2012 |
| Pacificorp | 10/30/2025 |
| Piedmont Natural Gas Company Inc | 04/28/2025 |
| Quantum Computing Inc. | 10/30/2025 |
| Steven W. Quattlebaum | 05/17/2012 |
| Gordon S. Rather, Jr. | 09/17/2013 |
| Rigetti Computing Inc. | 10/30/2025 |
| SAS Moet Hennessy | 10/30/2025 |
| Martin Silverfield | 05/17/2012 |
| Southern California Gas Co | 04/28/2025 |
| Stephens, Inc. | 05/17/2012 |
| Luther Sutter | 02/10/2023 |
| John (Jack) P Talbot | 04/28/2025 |
| Anthony B. Taylor | 06/12/2013 |
| Tesla, Inc. | 10/30/2025 |
| Tree Streets, Inc. | 05/17/2012 |
| John E. Tull | 05/17/2012 |
| Timothy Waters | 01/30/2025 |
| Vito Whitmore | 09/12/2025 |
| Chris Yates | 06/09/2026 |

STEMBRIDGE
TAYLOR LLC
EMPLOYMENT LAW | BUSINESS LAW

July 28, 2026

**Via E-Mail to Chambers**

Hon. Kristine G. Baker
Chief United States District Judge
United States District Court
Eastern District of Arkansas
600 West Capitol Avenue
Little Rock, Arkansas 72201

**Re:** *Foam Holdings Inc. d/b/a Alleguard v. Creative Foam Products LLC, et al.*, No. 4:23-cv-320-KGB — Plaintiff's Reply In Response to Defendants' July 27, 2026, Letter

Dear Judge Baker:

Plaintiff Foam Holdings Inc. d/b/a Alleguard ("Alleguard") respectfully submits this letter to explain why the contentions Defendants[1] offer in their July 27, 2026, letter concerning the recusal issue Alleguard raised on July 24 do not dispel the conflict but rather confirm it. Their letter reaffirms two key premises underlying the concerns Alleguard raised in its letter: (1) that the legal nature and effect of the 2006 Drew Foam Asset Purchase Agreement ("2006 APA") are central to whether Alleguard may enforce the 2001 Confidentiality Agreement against Mr. Tyner, and (2) that the Court is being asked to determine the significance of a transaction in which Quattlebaum, Grooms & Tull PLLC ("Quattlebaum, Grooms") represented Drew Foam Companies, Inc., a Delaware corporation ("Drew Foam Delaware"), while the Court was a partner there.

Those two premises are the source of the problem under 28 U.S.C. § 455(b)(2) and also create an independent appearance issue under Section 455(a).[2] Defendants attempt to avoid that conclusion principally by arguing timeliness and by characterizing the 2006 APA as mere historical background. But Alleguard timely raised these issues under the actual facts and circumstances here, and Defendants' belatedly-disclosed defense theory, their own July 27 letter, and the Court's comments during trial establish that the 2006 APA is not merely background: it is a live merits document because Defendants have made it one.[3]

---

[1]As noted in Alleguard's July 24 letter, this recusal issue relates only to the breach-of-contract claim against Defendant Tyner, not to any claim against Defendant Creative Foam. Because Defendants' July 27 response purports to come from both Defendants, however, Alleguard addresses the two Defendants collectively.

[2]28 U.S.C. § 455(a), (b)(2), (e).

[3]In their July 27 letter alone, Defendants repeatedly concede and reaffirm the centrality of the 2006 transaction and 2006 APA to their defense. They expressly state: "The 2006 agreement is relevant here..." Defendants' July 27 Letter at 5. They also argue that "*[t]he Court is merely being asked to determine what rights QGT's then client bargained for in 2006.*" *Id.* (emphasis added). On the same page, Defendants freely admit that "*[i]nterpretation of the 2006 APA on its face is all that is required.*" *Id.* (emphasis added). They further admit that the Court must determine in this case "*what*

4840 R… …ANTA, GA 30342
JOH… (678) 362-6567

SUPPLYJUSTICE.COM
Court's Exhibit
D

Defendants' response is also notable for what it does not offer. It identifies no authority holding that a former firm's transactional representation falls outside Section 455(b)(2) where a party's live merits defense turns on the legal effect of that very transaction. Instead, Defendants largely attack the cases Alleguard cited while offering no competing body of authority that meaningfully supports their position.[4]

Finally, Defendants ask that the case continue while the recusal issue is being decided. Although Alleguard shares Defendants' desire that this case advance toward final disposition as expeditiously as possible, their request to move forward with this issue lingering is contrary to prevailing authority and practice. Once a substantial recusal issue is raised, further substantive action ordinarily must await its resolution.[5] As one court has explained, a recusal motion "must be considered before any further action can be taken by th[e] [c]ourt."[6]

The Code of Conduct for United States Judges reinforces the same practice: the Commentary to Canon 3C treats recusal as a threshold inquiry to be resolved before further substantive proceedings and directs that doubts be resolved in favor of recusal to protect the appearance of impartiality.[7] The purpose behind this practice is straightforward: to protect the integrity and appearance of the judicial process that Section 455 is designed to safeguard. Continuing to enter substantive rulings while an appearance issue under Section 455(a) or a nonwaivable Section

---

*rights were acquired in 2006*," *id.* at 5 n.4, that Mr. Tyner's defense based on the 2006 APA is "a central defense to Alleguard's breach-of-contract claim," *id.* at 7, and repeatedly refer to their 2006 APA-based argument as "Mr. Tyner's defense" that they will not abandon, *id.* at 8–9.

[4]Defendants separately complain that Alleguard's July 24 submission was not supported by sworn evidence, but their concern is misplaced. The purpose of the July 24 letter was to bring the potential Section 455 issue to the Court's attention promptly and to seek the Court's guidance on how to proceed. A letter seeking direction from the Court on a matter of judicial disqualification is the appropriate vehicle for that purpose, and it does not require sworn evidence to perform its function. In any event, *"[r]ecusal under Section 455 is self-executing; a party need not file affidavits in support of recusal*[.]" *Taylor*, 888 F.2d at 1200 (emphasis added). And here, the relevant facts are straightforward and objective: the 2006 APA identifies Tim Grooms of Quattlebaum, Grooms as notice contact for Drew Foam Delaware; Alleguard confirmed through co-counsel John Bryan that Quattlebaum, Grooms represented Drew Foam Delaware in the transaction; and Defendants themselves continue to assert, even in their July 27 Letter, that the Court must determine what rights were acquired in that transaction. As stated in its letter, if the Court believes a formal motion is appropriate, Alleguard stands ready to proceed in that form.

[5]*Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1161 (5th Cir. 1982) (noting approvingly that the district court "suspended all further proceedings in the case pending resolution of the disqualification motion").

[6]*In re Sanders*, 535 B.R. 896, 899 (Bankr. S.D. Fla. 2015) (recusal motion "must be considered before any further action can be taken by th[e] Court" because § 455(a) requires disqualification whenever a judge's impartiality might reasonably be questioned).

[7]Code of Conduct for United States Judges, Canon 2A & cmt. (a judge should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary; the test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired); Canon 3C (a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned). The Commentary to Canon 3C reinforces that recusal is a threshold inquiry, addressed before further substantive rulings, and that doubts should be resolved in favor of recusal to protect the appearance of impartiality — which in turn supports suspension of further proceedings pending resolution of the recusal question.

455(b)(2) issue remains unresolved compounds the very concerns the statute exists to prevent. Suspension also conserves the judicial and party resources that would be wasted if merits proceedings had to be redone by a successor judge.

## I. Section 455 Imposes A Shared Responsibility to Identify Conflicts Requiring Recusal, and Alleguard's July 24 Letter Timely Discharged Its Duty to Raise Such Matters Promptly.

Defendants first contend that the Court need not take up the issues raised in Alleguard's July 24 letter because they were not timely raised. This contention is belied by both the law and the facts.[8] Alleguard agrees with the general proposition that recusal issues should be raised promptly once their factual basis is known, and Defendants' cited authorities stand for that unremarkable proposition. On the actual facts of this case, however, the record is clear that Alleguard *did exactly that*: It raised the matter promptly as soon as the relevant, non-obvious dots could be connected through reasonable diligence. Alleguard is not engaged in gamesmanship or tactical recusal efforts here. As detailed in its July 24 Letter, once Alleguard was able to put together the relevant facts and verify what they meant, it promptly brought the matter to the Court's attention.[9] These truths are evidenced by at least four separate facts, discussed below.

First, the conflict was not obvious on the face of the 2006 APA. The Notice paragraph of the agreement identifies Tim Grooms of Quattlebaum, Grooms as a notice contact for Drew Foam Delaware, but it does not identify the Court by name and does not on its face establish that Quattlebaum, Grooms had in fact served as transaction counsel for Drew Foam Delaware in a way sufficient to trigger Section 455(b)(2). Alleguard's July 24 letter explained that Alleguard only recently confirmed, through attorney John Bryan, that Quattlebaum, Grooms and Mr. Grooms actually represented Drew Foam Delaware in the 2006 transaction, rather than merely appearing in the agreement as a notice contact. *See* July 24 Letter at 2 and at 2, n.4.

Second, as Alleguard has established, the 2006 APA was not required to be, and was not, part of Alleguard's affirmative proof of privity; it only became an issue when Mr. Tyner belatedly raised it as a defense in support of his summary judgment motion --a central point that Defendants

---

[8]*See* 28 U.S.C. § 455(a), (b)(2), (e).

[9] For this reason, Defendants' accusation that Alleguard had the relevant information "in its hands the entire time" is an incorrect mischaracterization of the record and of the actual basis for recusal here. As explained in the July 24 Letter and herein, Alleguard was never put on notice that the 2006 transaction itself was at issue or that Mr. Tyner would center his defense to his breach of contract around it and the 2006 APA. Because Alleguard does not need the 2006 APA to establish its legal right to enforce Mr. Tyner's 2001 Confidentiality Agreement, it had no reason to go looking for that agreement until January 2026. Even then, for Defendants to suggest that Alleguard should have put all of these pieces together and connected the dots sooner is unrealistic under the facts and equally an accusation against the Court and themselves for also failing to do the same. Even Defendants admit that the sole reference to Mr. Grooms and Quattlebaum, Grooms was buried in the Notice paragraph of the 2006 APA, which in and of itself did not establish definitively that Quattlebaum Grooms represented a party in that transaction. In reality, the dots could not have been connected sooner by Alleguard or the Court, and Alleguard's raising of the issue is prompt under the relevant circumstances.

do not address. *See id.* at 1–2 and 2, n.2.[10] Alleguard's position has consistently been that, under governing successor and assignment principles, it does not need to rely on the 2006 APA (or the other Transaction Documents) to establish its right to enforce the 2001 Confidentiality Agreement. The 2006 transaction emerged as a merits issue only because Mr. Tyner first argued in summary judgment that the 2006 sale extinguished the 2001 Confidentiality Agreement. In response, and even though Mr. Tyner had neither raised this defense theory previously nor requested any documents related to it,[11] Alleguard located its copy of the 2006 APA and produced it to both Defendants and the Court. *Id.* at 2. Even then, it was not until the last day of the initial trial, when Defendants presented the 2006 APA in Court, that its centrality to Mr. Tyner's defense and to the Court's assessment of the case as trier of fact was established. *Id.* at 4, n.7. At that time, no one, including Defendants and the Court, had made the connection between the mention of Mr. Grooms in the Notice paragraph of the 2006 APA, this Court, and this case.

Third, and relatedly, Alleguard was not and could not possibly have been "on notice" of these grounds for recusal from the time the Court entered its order directing the Parties to check for conflicts *in August 2024* or even from the time it produced the 2006 APA to the Court and Defendants in January 2026, as Defendants attempt to suggest. As explained in detail in Alleguard's July 24 Letter, the 2006 APA was never *mentioned* in this case until Mr. Tyner raised it in his summary judgment motion in January 2026. Defendants neither refute nor even acknowledge these plain facts. Even after Mr. Tyner's late injection of this issue into the case on summary judgment, Alleguard did not and could not have known until trial that the document would become central to Mr. Tyner's defense and affect this Court's credibility determinations as to the successor issue relevant to enforcement of the Confidentiality Agreement. And even when that fact became obvious at trial, the Court's potential conflict still was not; as noted, the reference to Quattlebaum, Grooms is buried in the middle of a Notice paragraph in the 2006 APA itself, and that reference does not mention the Court by name or even directly confirm that Quattlebaum, Grooms represented Drew Foam Delaware in that transaction. Alleguard had to investigate that matter to gather the relevant facts found nowhere in the document. Just like the Court and Defendants, Alleguard was not on prior notice of the relevant facts requiring recusal; if it had been, it would have raised them.

Fourth, and critically, Defendants and the Court have had the 2006 APA as a document relative to this case for approximately the same amount of time as Alleguard's counsel, and the Court's duty under Section 455 is self-executing, self-enforcing, and ongoing.[12] Defendants'

---

[10] For this reason and others, Defendants' entire argument regarding pre-suit investigation in Section VI of their letter is both incorrect and inapposite here. The 2006 APA became relevant only when Mr. Tyner raised his defense premised upon it, negating Defendants' Rule-11-based accusation of failure to conduct a sufficient pre-suit investigation.

[11] Defendants do not even address Mr. Tyner's failure to timely raise his defense based on the 2006 APA during discovery.

[12] The Supreme Court has explained that Section 455 is designed to promote public confidence in the judiciary and to prevent even the appearance of impropriety. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859–61 (1988) (Section 455(a) directed at preserving public confidence in the impartiality of the judiciary and preventing even the appearance of impropriety). The duty to raise it therefore rests independently on the Court once the relevant facts are known. *See, e.g., Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524–25 (11th Cir. 1988) (judge should stay informed of circumstances that may raise the appearance of impartiality or impropriety and that the judge or his/her law clerk should have raised the issue once the relevant circumstances existed); *Aronson v. Brown*, 14 F.3d 1578, 1581–82 (Fed.

position that the document's production in January 2026 made the Section 455 issue plain enough that Alleguard's failure to raise it earlier makes it untimely necessarily carries a rebuke of the Court and themselves for not having recognized the same issue from the same document. Their timeliness argument attacks not only Alleguard's diligence, but also, by necessary implication, the Court's failure to identify the same issue under its independent, self-executing duty to do so, and Defendants' own failure to bring the issue forward. Because recusal under Section 455(b) is not waivable,[13] Defendants' silence is difficult to reconcile with their present insistence that Alleguard should have known and acted too late. As *Parker* (*see supra* n. 12) recognizes, staying alert to circumstances that may raise the appearance of impropriety is a shared responsibility, not one that rests exclusively on the party first to connect the dots.[14]

As Alleguard has established, under the facts of this case, neither Alleguard nor the Court were derelict in that duty — this issue arose late after the close of discovery, and the pieces necessary to put it together were not obvious or all in one place until very recently. Indeed, but for the sharpness of Ms. Madison[15] in noticing that Quattlebaum, Grooms was mentioned in the Notice paragraph of the 2006 APA, which then caused Alleguard's counsel to engage in the necessary additional investigation into this matter, this basis for recusal might have been missed entirely by all parties involved. It is difficult to imagine how Alleguard can be faulted for not immediately

---

Cir. 1994) (describing § 455 as "self-enforcing" and "self-executing") (quoting *Taylor v. O'Grady*, 888 F.2d 1189, 1200 (7th Cir. 1989) ("[r]ecusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse herself *sua sponte* under the stated circumstances")); *In re Manoa Fin. Co.*, 781 F.2d 1370, 1373 (9th Cir. 1986) (describing § 455 as "stated in terms of a self-enforcing obligation upon the judge" that also may be invoked by a party).

[13]28 U.S.C. § 455(a), (b)(2), (e).

[14]The Eleventh Circuit's decision in *Parker*, 855 F.2d at 1524–25, is instructive on this point. Alleguard raises this authority on the self-executing nature of the duty not to suggest, as Defendants implicitly have, that the Court was remiss in its duty; indeed, quite the opposite. Alleguard's point is that neither the Court nor Alleguard could have or did have the operative facts necessary to raise these grounds for recusal until very recently, and the suggestion that Alleguard should have connected the dots earlier is unfounded, just as Defendants' same implicit accusation that the Court should have noticed the facts requiring recusal is. This issue could not have been – and was not – identified by any of the relevant actors sooner.

[15]Defendants' contention that Ms. Madison's prior appearances in this Court somehow put her on notice of the facts underlying the necessary recusal here is difficult to understand. The fact that Ms. Madison has apparently appeared before this Court in prior matters, including matters in which Quattlebaum, Grooms served as opposing counsel (which we could not independently verify with Ms. Madison prior to submitting this letter because she was attending her father's funeral on July 27, the day it was prepared), is of no moment. No one is arguing that this Court has a general conflict in sitting in matters where Quattlebaum, Grooms is counsel; that is certainly not what Section 455 says. But when a Court's former firm represented a predecessor entity to the plaintiff and there is a live merits question in the case that turns on the legal effect of that transaction — which was handled by the Court's former firm while the Court was a partner there — Section 455(a) and (b)(2) require recusal. If anything, the fact that Ms. Madison appropriately refrained from raising recusal in those other matters underscores the legitimacy of raising it here; she raises recusal as to this Court's participation only when the specific facts and circumstances demand it, not merely because Quattlebaum, Grooms has appeared before this Court, which no one contends is, on its own, a basis for recusal under Section 455(a) or (b)(2).

grasping the relevance of all of these disparate pieces and putting them together sooner when neither Defendants nor the Court apparently made these same connections either.[16]

For those reasons, Defendants' timeliness argument is correct as to the general governing legal framework but inapplicable on these facts. Had Alleguard possessed the necessary information to connect these dots earlier, it would have raised the matter earlier. Notably, despite Defendants' protestations to the contrary, the combination of these pieces was not put together earlier by anyone else either-- not by Defendants, and not by the Court. The facts giving rise to a Section 455(b)(2) issue were not obvious, and only later developments after discovery and during trial revealed the conflict.

Defendants complain about the inconvenience and difficulties that will ensue when this Court recuses itself in this case, especially given the current timing. Alleguard acknowledges the burdens that both parties and any new judge will face because of recusal here. But the provisions of Section 455(b)(2) are mandatory, not waivable, and their application is ongoing, not statically limited to the facts known or discoverable at the beginning stages of the case. Appellate courts have consistently enforced Section 455's requirements even when disqualifying circumstances have been raised after substantial proceedings or even after entry of judgment. *See, e.g.*, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65 (1988) (vacating a fully tried and adjudicated judgment under § 455(a) based on post-trial discovery of disqualifying circumstances and underscoring the need to protect public confidence in the judiciary); *Preston v. United States*, 923 F.2d 731, 734–36 (9th Cir. 1991) (vacating and remanding after trial when the district judge's failure to disqualify himself under §§ 455(a) and (b)(2), stemming from his former firm's representation in a related matter, came to light only later); *Clemmons v. Wolfe*, 377 F.3d 322, 329–30 (3d Cir. 2004) (vacating a habeas judgment and ordering reassignment on remand because the judge did not sua sponte recuse under § 455 despite disqualifying circumstances discovered after substantial proceedings). As such, despite the unfortunate timing and disruption, the mandatory recusal provisions of Section 455(b)(2) must nonetheless be given effect.

## II. Defendants' July 27 Letter Repeatedly Reaffirms That the 2006 APA Is Part of, and Central to, the Matter in Controversy.

Defendants offer nothing to refute that the 2006 APA is central to the "matter in controversy" and instead confirm that it is. In an attempt to avoid this issue, they narrowly define the "matter in controversy" as merely whether Mr. Tyner misappropriated trade secrets and, if the 2001 Confidentiality Agreement is enforceable, whether he breached it. But Defendants' own July 27 letter significantly undercuts that effort. Their concessions that the Court is "*merely being asked to determine what rights QGT's then client bargained for in 2006*" and that "*[i]nterpretation of the*

[16] Additionally, Alleguard's 2020 outside deal counsel confirmed that the 2006 APA had not been part of the due diligence in the 2020 transaction, and that ordinary diligence in such a later stock purchase would not typically require locating or reviewing transactional documents from so far back. That fact strongly undercuts Defendants' suggestion that Alleguard had long been sitting on an obviously dispositive document and simply failed to review its own files with appropriate care. It also confirms that no one was treating the 2006 APA as a central operative document; as soon as Mr. Tyner advanced, after the close of discovery and at summary judgment, the theory that the 2006 transaction extinguished or failed to transfer the 2001 Confidentiality Agreement, Alleguard immediately retrieved and produced the 2006 APA to Defendants and the Court. That document did not, however, on its face and on its own, alert either Alleguard or the Court to all of the facts needed to invoke Section 455.

*2006 APA on its face is all that is required*" are dispositive here.[17] They remove any doubt that Defendants are explicitly asking the Court to interpret the 2006 APA, determine the legal consequences of the 2006 transaction, and decide whether rights under the 2001 Confidentiality Agreement continued through the 2006 deal. Defendants cannot credibly argue simultaneously that the Court must decide what rights Quattlebaum, Grooms's client acquired in 2006 and also insist that Quattlebaum, Grooms's work on that very transaction has nothing to do with the "matter in controversy."

That inquiry is far from collateral or historical background. By Defendants' own admission, it is at the heart of Mr. Tyner's defense to the breach-of-contract action and is the very issue that creates the conflict. If the Court must determine what rights Quattlebaum, Grooms's client acquired in 2006, what the 2006 APA meant, whether the 2006 transaction interrupted or preserved continuity, and/or whether the same Drew Foam enterprise continued through the 2012, 2018, and 2020 transactions, then the Court is by definition deciding the significance of the very transaction in which its former firm acted as counsel.[18]

Defendants also attempt to argue that Drew Foam Delaware is not a current party and cannot be directly affected by the outcome. That premise is factually wrong and of no legal import in any event. The 2020 Stock Purchase Agreement by which Alleguard acquired the Drew Foam business identifies on its face the same Drew Foam Delaware entity that Quattlebaum, Grooms represented in the 2006 APA — *i.e.*, Drew Foam Companies, Inc., a Delaware corporation — as the entity whose stock was purchased. *See* Alleguard Motion to Amend Exhibit List (Doc. 259, Ex. C at FOAM311087). Alleguard is therefore the current owner of the stock of that same entity, and its interests in this case are directly aligned with the entity Quattlebaum, Grooms formerly represented.

In any event, whether the entity represented by Quattlebaum, Grooms in the 2006 transaction is the precise same entity Alleguard now owns (it is) is *not* the required inquiry under Section 455: the statute asks whether the prior representation concerned the "matter in controversy," not whether the former client remains a named party on the present caption. The cases construing that phrase look to practical overlap in issues, legal consequences, and the likelihood that the work from the prior representation itself will become relevant in the present proceeding.[19] Here, Defendants have not only conceded this point, they have repeatedly emphasized it, stating again and again that the

---

[17] As noted above, Defendants make similar admissions about the importance and centrality of the 2006 APA to Mr. Tyner's defense throughout their July 27 letter. *See supra* note 3.

[18] Defendants also attempt to argue by analogy that Alleguard's position would compel recusal anytime a judge's former firm once "touched" property in a chain of title, even where that prior work has no real bearing on the rights now in dispute. Their analogy is a straw man that depends on a key assumption not present here: that the earlier transaction in which the former firm represented a prior owner is *not* itself at issue in the hypothetical title litigation. Under Section 455(b)(2), if a property dispute turned on the legal effect of a prior sale and the judge's former firm had represented a predecessor in that transaction, recusal would be required because the earlier deal is directly related and material to the current "matter in controversy." "Matter in controversy" includes prior transactions whose legal effect is now being adjudicated—not just the parties or caption in the present case.

[19] *Little Rock Sch. Dist. v. Armstrong*, 359 F.3d 957, 960 (8th Cir. 2004) (per curiam) (construing "matter in controversy" under § 455(b)(2) by reference to the substance of the issues, not merely the caption).

2006 transaction and 2006 APA are not only relevant, but central, to Mr. Tyner's defense. Under Section 455(b)(2), that is certainly sufficient to make it part of the "matter in controversy."

Indeed, Defendants' insistence that Alleguard is *not* the same successor entity as the Drew Foam entity represented by Quattlebaum, Grooms does not make the conflict disappear; it heightens it. Alleguard's role as a successor to Drew Foam is one of the precise merits issues that Mr. Tyner has injected and that the Court must now resolve. The 2006, 2012, 2018, and 2020 Transaction Documents, together with the anticipated testimony concerning substantial continuity, all bear directly on whether the same Drew Foam entity and business was transferred forward through those transactions. In other words, the question whether Alleguard stands in continuity with the entity Quattlebaum, Grooms represented in 2006 — including under settled law regarding substantial continuity of business identity — is itself part of the issue the Court must now decide. Defendants' argument therefore does not eliminate but instead amplifies the overlap between the former representation and the current matter.

### III. The Governing Authorities Require Recusal So Long As the APA-Based Defense Is in the Case.

Defendants' efforts to avoid the controlling authorities also fall flat. As set forth in Alleguard's July 24 Letter, Section 455(b)(2) requires disqualification where, during the judge's former association with a law firm, a lawyer at that firm "served during such association as a lawyer concerning the matter."[20] As Alleguard previously explained, *Little Rock School District v. Armstrong* instructs that the inquiry turns on substance, not labels.[21] *In re Rodgers* recognizes that the "actual case before the court" includes the defense asserted by the accused, and recusal is required where that defense relies on matters in which the judge's former partner acted as counsel.[22] *Preston v. United States* confirms that the inquiry is not confined to identical party alignment where the prior representation bears directly on legal consequences presently being adjudicated.[23] And *Philip Morris USA Inc. v. FDA* explains that the inquiry turns on overlap in legal and factual issues and on whether the transaction that was the subject of the former firm's representation is itself directly relevant in the present case.[24] Defendants attempt, without success, to distinguish these authorities while citing none that rebut their substantive teachings.

---

[20] 28 U.S.C. § 455(a), (b)(2), (e).

[21] *Little Rock Sch. Dist. v. Armstrong*, 359 F.3d 957, 960 (8th Cir. 2004) (per curiam) (construing "matter in controversy" under § 455(b)(2) by reference to the substance of the issues, not merely the caption).

[22] *In re Rodgers*, 537 F.2d 1196, 1197–98 (4th Cir. 1976) (recusal required under § 455(b)(2) where the "actual case before the court" included a defense turning on matters in which the judge's former partner had acted as counsel).

[23] *Preston v. United States*, 923 F.2d 731, 734–35 (9th Cir. 1991) (former firm's prior representation bore directly on legal consequences being adjudicated in the current matter; recusal required).

[24] *Philip Morris USA Inc. v. FDA*, 156 F. Supp. 3d 36, 46–48 (D.D.C. 2016) ("matter in controversy" inquiry turns on overlap in legal and factual issues and whether the former firm's transaction is itself likely to become directly relevant in the present matter).

Section 455(a) points in the same direction. As Alleguard previously explained,[25] the question is what a reasonable, fully informed observer would conclude about the appearance of impartiality when the Court is being asked to determine the legal effect of a transaction handled by its former firm while the Court was a partner there. A reasonable observer could question impartiality here even if the Court had no personal recollection of or involvement in the 2006 matter. That appearance concern is sharpened in a bench trial because the Court alone will resolve both factual and legal disputes bearing on the transaction's significance. Canon 2A of the Code of Conduct for United States Judges reflects the same principle.[26]

Defendants' suggestion that this recusal request is an accusation of actual bias by this Court ignores Section 455(a); under this provision, the test for recusal is an *objective* one — it does not require actual bias on the part of the Court.[27] As the Supreme Court in *Liljeberg* made clear, the statute protects not only against actual bias, but also against circumstances that would lead a reasonable observer to question impartiality. Defendants' attempt to characterize this recusal request as an accusation of actual bias against the Court is therefore misplaced and should not distract from the objective statutory inquiry the Court must undertake.

## IV. The Conflict Requiring Recusal Could Perhaps Be Eliminated (Not Waived) if Mr. Tyner Removes the 2006 APA From the Matter in Controversy.

Defendants' contentions about unidentified "ethical" concerns arising from Alleguard's suggestion that the conflict would go away if Mr. Tyner chose not to pursue his defense premised on the 2006 APA are unfounded. To begin with, Alleguard is not suggesting that a Section 455(b)(2) conflict may be waived. It may not. The statute expressly forbids waiver of subsection (b) grounds.[28]

Alleguard's point was different. The present conflict exists because Mr. Tyner has chosen to assert a chain-of-title defense that turns on the legal effect of the 2006 transaction and the 2006 APA. If Mr. Tyner were to decide to withdraw that defense, stipulate that Alleguard is the successor in interest entitled to enforce the 2001 Confidentiality Agreement, and agree not to rely on the 2006 APA or Quattlebaum, Grooms's work on that transaction in support of any defense, then, in Alleguard's view at least, the 2006 transaction would likely cease to be part of the "matter in controversy" in the relevant Section 455(b)(2) sense. In that circumstance, the issue would not be

---

[25] Letter from Stembridge Taylor to Hon. Kristine G. Baker, at 2–4 (July 24, 2026).

[26] Code of Conduct for United States Judges, Canon 2A (public confidence in the integrity and impartiality of the judiciary); Canon 3C (disqualification whenever impartiality might reasonably be questioned).

[27] *See Liljeberg*, 486 U.S. at 859–60 (Section 455(a) requires recusal whenever the judge's impartiality "might reasonably be questioned" by a fully informed observer, without regard to actual bias); *see also United States v. Cerceda*, 172 F.3d 806, 812–13 (11th Cir. 1999) (en banc) (appearance-of-impartiality standard is objective and does not require actual bias).

[28] 28 U.S.C. § 455(a), (b)(2), (e).

*waived*; it would potentially be *removed* because the conflict-producing issue would no longer be before the Court.[29]

For now, however, that issue need not distract. Mr. Tyner explicitly declines to abandon the chain of title defense and doubles down on the proposition that the Court must determine what rights were acquired in 2006 and construe the 2006 APA.[30] Fair enough; that is certainly Mr. Tyner's right. But so long as Mr. Tyner maintains that position, the statutory problem remains, and recusal is required.

## V. The Better Practice Is to Suspend Further Proceedings Until the Recusal Issue Is Resolved.

Defendants' request that the case continue while the recusal issue remains unresolved is inconsistent with prevailing authority and sound practice. In *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, the Fifth Circuit noted approvingly that the district judge "suspended all further proceedings in the case pending resolution of the disqualification motion."[31] Another court stated directly that a recusal motion "must be considered before any further action can be taken by th[e] [c]ourt," because Section 455(a) requires recusal whenever impartiality might reasonably be questioned.[32]

That practice accords with the Code of Conduct for United States Judges. Canon 3C's Commentary treats recusal as a threshold inquiry to be addressed before further substantive rulings. The Commentary further directs that doubts be resolved in favor of recusal in order to protect the appearance of impartiality — which likewise supports suspension of further merits proceedings while the question is pending.[33] These authorities recognize that suspension also conserves judicial

[29] For its part and for what it is worth, Alleguard sees no ethical prohibition to Mr. Tyner making such a choice, so long as it was knowingly and voluntarily made. And Defendants, despite their dramatic invocation of ethical obligations, point to no specific rule that would be violated by them proposing or him making such a choice. But candidly, that is not Alleguard's business or its concern – that is a matter for Mr. Tyner to address with his counsel and for this Court to determine if such a choice can solve the recusal issues here *if* such a position were adopted by Mr. Tyner, an event that currently appears unlikely.

[30] Alleguard only noted this potential alternative to recusal in passing, and it would, of course, be for this Court, not Alleguard, to determine whether the current grounds for recusal could or would be eliminated under both Section 455(a) and (b)(2) if Mr. Tyner opted to forgo the chain-of-title defense. It is entirely possible that Defendants are correct that there is no way, absent recusal, to cure the problem on this record.

[31] *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1161 (5th Cir. 1982) (noting approvingly that the district court "suspended all further proceedings in the case pending resolution of the disqualification motion").

[32] *In re Sanders*, 535 B.R. 896, 899 (Bankr. S.D. Fla. 2015) (recusal motion "must be considered before any further action can be taken by th[e] [c]ourt" because § 455(a) requires disqualification whenever a judge's impartiality might reasonably be questioned).

[33] Code of Conduct for United States Judges, Canon 2A & cmt. (a judge should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary; the test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired); Canon 3C (a judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned). The Commentary to Canon 3C reinforces that recusal is a threshold inquiry, addressed before further substantive rulings, and that doubts should be resolved in

and party resources that would be wasted if merits proceedings had to be redone by a successor judge.

Accordingly, Alleguard respectfully requests that the Court suspend any further proceedings until the recusal question has been resolved.

## VI. Conclusion.

Defendants' July 27 response confirms rather than defeats the basis for recusal. Their letter reaffirms the centrality of the 2006 APA, offers no affirmative authority taking this case outside Section 455(b)(2), and advances an unrealistic and inaccurate timeliness argument that, on these facts, would necessarily but wrongly indict not only Alleguard but also Defendants and the Court itself in failing to recognize from the face of the 2006 APA what Defendants now insist should have been obvious. So long as Mr. Tyner continues to place the legal effect of the 2006 transaction before the Court, Alleguard respectfully submits that recusal is required under 28 U.S.C. § 455(a) and (b)(2) and Canons 2A and 3C, and that further proceedings should be suspended unless and until that issue is resolved.

Alleguard again respectfully requests the Court's guidance on how it wishes to proceed, including whether the Court would prefer that Alleguard convert this submission into a formal motion or address the issue through some other hearing or process.

Respectfully submitted,

John T. Stembridge
*Admitted pro hac vice*
Georgia Bar No. 678605
john@stembridgetaylor.com
Lisa D. Taylor
*Admitted pro hac vice*
Georgia Bar No. 235529
lisa@stembridgetaylor.com
**Stembridge Taylor LLC**
4840 Roswell Road, Suite E300
Atlanta, GA 30342
678-362-6567

*Counsel for Plaintiff Foam Holdings Inc. d/b/a Alleguard*

cc: All counsel of record

---

favor of recusal to protect the appearance of impartiality — which in turn supports suspension of further proceedings pending resolution of the recusal question.