**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**FOAM HOLDINGS, INC.**
**d/b/a Alleguard** **PLAINTIFF**

**v.** **Case No. 4:23-cv-00320-KGB**

**CREATIVE FOAM PRODUCTS, LLC, *et al.*** **DEFENDANTS**

**ORDER**
**(REDACTED)**

Before the Court is plaintiff Foam Holdings, Inc. d/b/a Alleguard's ("Alleguard") brief on production of Alleguard underlying electronic data ("brief on electronic data") (Dkt. No. 245); defendants Creative Foam Products, LLC and Charles Tyner's (collectively "Defendants") response in opposition to Alleguard's brief on electronic data (Dkt. No. 246); Alleguard's brief on discovery issues raised during the first three days of trial ("brief on discovery issues") (Dkt. No. 252); Defendants' response to Alleguard's brief on discovery issues (Dkt. No. 255); and Alleguard's reply in support of its brief on discovery issues (Dkt. No. 258). After considering the record before the Court and the parties' briefing, the Court makes the following rulings on the issues raised by the parties.[1]

[1] The Court writes to be very clear. This is a bench trial, tried to the Court. When preparing findings of fact and conclusions of law in this case, the Court will rely only on properly admitted testimony and evidence before the Court. *See* Fed. R. Evid. Evidence should be admitted through witness testimony on the stand and exhibits properly admitted, on the record during trial, with a fair opportunity for all parties to raise objections, respond to those objections, and obtain a ruling from the Court. To the extent any party seeks as a discovery sanction the exclusion of testimony or evidence, in other words moves to strike from the Court's consideration that testimony or evidence, the party should raise that objection during trial, with a fair opportunity for all parties to raise objections, respond to those objections, and obtain a ruling from the Court, with the understanding that the Court may reserve its rulings, including its rulings on the issue of sanctions, until the conclusion of the case.

## I. Background

The Court held a pre-trial conference in this case. During that conference, the Court stated:

> And then there's been a lot of back and forth with respect to discovery. Here's what I'm going to say about this:
>
> I'm not going to entertain any motions to produce any more discovery. Discovery is closed. But documents that got produced after the discovery deadline can't be used as exhibits at trial. . . .
>
> The rules go both ways. So if everybody wants to run in documents, then everybody can run in documents. If nobody wants to run in documents, then nobody should run in documents. If you object that the other side has produced a document late, don't turn around and produce a document late that you think you should be able to use and get in. Right?
>
> The rules are going to apply equally to both sides. If there is an objection made that an exhibit used at trial *or something that's talked about by a witness* was requested in discovery and not produced by the deadline, *I will look to the producing party or the party who has the witness on the stand and ask them to clearly identify for me when it was produced, the date it was produced, the Bates number it was produced under.*
>
> And if it was a discovery request that went unanswered and objected to and you think you can put a witness on the stand to run in an answer for it, I am going to ask for the same things. The objecting party can raise for me the discovery request that asked for the information and the deficient response. That will aid me in ruling on objections to evidence that's coming in at trial. *I'm going to require that all the way through the trial, so be prepared.* You have from now until Wednesday morning to get your ducks in a row and to be able to answer to me when you produced things in discovery that were called for or when you asked for things that were never produced and are trying to be run in at the trial of the matter.

(Dkt. No. 253, at 13–14 (emphasis added)).

Despite the Court's discussion with the parties during the pre-trial conference and after multiple discovery hearings with United States Magistrate Judge J. Thomas Ray,[2] to whom discovery matters were referred and who held numerous hearings on discovery matters with

---

[2] Judge Ray held hearings on discovery matters with the parties on the following dates: February 11, 2025 (Dkt. Nos. 99; 107), February 26, 2025 (Dkt. No. 106), April 3, 2025 (Dkt. Nos. 111; 260), May 12, 2025 (Dkt. Nos. 115; 126), and November 24, 2025 (Dkt. Nos. 137; 140).

counsel and the parties during which he ruled on many of the parties' discovery disputes, the parties did argue discovery matters during the first three days of trial in an effort to preserve trial objections as to testimony and evidence consistent with the Court's pronouncement regarding Federal Rule of Civil Procedure 37 (Trial Tr., at Volumes I-III).

Alleguard's brief on discovery issues recounts the parties' lengthy background with respect to the parties' discovery disputes (Dkt. No. 252, at 6–10). The Court will not recount the entire history of the parties' discovery disputes here. The Court only adds a few key points.

First, the Court notes that, to the extent a ruling remains necessary, the Court has now ruled on Alleguard's objections to Judge Ray's February 11, 2025, and April 3, 2025, Orders (Dkt. No. 110) and has overruled Alleguard's objections (Dkt. No. 274).

Second, in overruling Alleguard's objections to Judge Ray's February 11, 2025, and April 3, 2025, Orders, the Court agrees that Alleguard was required to turn over in discovery all non-privileged documents relevant to its trade secret and breach of contract claims and to its defenses. Alleguard was also required to respond to requests for production that Judge Ray ordered Alleguard to respond to during his February 11, 2025, discovery hearing (*Id.*). At the May 12, 2025, hearing Judge Ray made it clear on the record that Alleguard could and should consistent with the Federal Rules supplement its responses to its requests for production (*Id.*). Counsel for Alleguard voiced on the record its understanding of Judge Ray's clarification of his April 3, 2025, Order (*Id.*). The Court overrules Alleguard's objections to Judge Ray's April 3, 2025, Orders, in part, because Judge Ray's Orders are not clearly erroneous or contrary to law and, in part, because Alleguard's objections are moot based on Judge Ray's clarifications on the record on May 12, 2025, and Alleguard's acknowledgement of those clarifications on the record at that hearing (Dkt. No. 110).

Third, Alleguard references a discovery hearing that Judge Ray held on November 24, 2025, after the close of discovery.[3] During that discovery hearing, Judge Ray ordered Alleguard to supplement its responses to Interrogatory Nos. 10, 11, 12, 13, and 14 and to Requests for Production Nos. 12 and 13, as well as 16, 34, and redrafted Request for Production No. 50, specifically as to certain of those requests information and documents pertaining to an IT security monitoring program (Dkt. No. 140, at 18–26, 33–36, 39, 41–42, 47, 57–58, 61, 64). As to the other requests raised by Defendants, Judge Ray ruled that no further supplementation was required by Alleguard at that time for one of three reasons: either Alleguard had already "adequately and properly answered," the request was "so ambiguous and hard to decipher that we're not gonna take it up and nail jelly to the wall," or the information sought was "not central to the case, they're not particularly relevant, and I'm satisfied it's the kind of thing lawyers have already handled in depositions." (*Id.*, at 8:4–11:6).

The bench trial in this matter commenced on April 27, 2026, and continued on April 28, 2026, and April 30, 2026. The Court heard testimony from Alleguard's Vice President of Block and Fabrication, Dusty McNab, during the first three days of trial (Trial Tr., Vols I-III).[4] During the direct and cross of McNab, Defendants made several objections to documents being introduced or discussed by McNab at trial that Defendants contend Alleguard had not produced in discovery. At the end of the second day of testimony, Defendants requested the underlying data that supported

---

[3] The discovery deadline in this case was November 12, 2025 (Dkt. No. 120). This Court ruled that certain matters raised before that deadline would be addressed by the Court (*see* Dkt. No. 136, at 15–16). However, the Court declined to grant the final request made by Alleguard for an extension of the discovery deadline (*Id.*). Judge Ray's conducting a discovery hearing on November 24, 2025, is consistent with this Court's ruling.

[4] During the pretrial conference held on the first day of trial, Alleguard estimated that it needed two to two and a half days to present its case, and Defendants estimated it would need about a day and half to two days to present its case (Trial Tr., Vol. I, at 10).

the emails and spreadsheets for materials gathered by McNab for Alleguard's damages expert, Dan Branch (Trial Tr., Vol. II, at 447:18–448:1; 448:16–449:1). A discussion was held between counsel and the Court about whether the underlying data had or should be produced (Trial Tr. Vol. II, at 449:24–459:3). Counsel for Alleguard requested an opportunity to brief the issue, and the Court set a briefing schedule (Trial Tr. Vol. II, at 449:24–459:3).

After Defendants raised many objections during trial that Alleguard had not produced materials in discovery that Alleguard was now attempting to obtain trial testimony regarding, the Court—consistent with its pre-trial instruction—offered Alleguard the opportunity to provide the Court and counsel for Defendants with Bates numbers where the documents had been produced (*see, e.g.,* Trial Tr., Vol. I, at 63–71, 103, 130–143; Vol. II, at 447–455; Vol. III, at 646–648, 681–686; *see also* Dkt. No. 253, at 13–14). At the Court's request following the conclusion of the third day of trial, Defendants' counsel sent by electronic mail a list to counsel for Alleguard of a description of the documents for which Defendants believed Alleguard was required to produce the Bates number ranges to demonstrate when, if at all, those documents had been produced during discovery based on testimony Alleguard sought to obtain from McNab during the first three days of trial (*see* Dkt. No. 252-3). It is from this list of 14 items that Alleguard prepared its brief (Dkt. No. 252). The Court will discuss each item from Defendants' list.

## II. Legal Standard

Federal Rules of Civil Procedure 26, 33, 34, and 37 govern the issues raised by the parties. Federal Rule of Civil Procedure 37 states that a party who fails to provide information as required by Rule 26(a) or 26(e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"Rule 37 does not provide for mandatory sanctions," and the district court may find that a party's failure to include disclosures was substantially justified or harmless. *Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir. 2004) (citations omitted). When a party fails to provide information in compliance with Rule 26(e), the district court has wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case. *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008) (internal citations omitted); *see also Tomlinson v. J.B. Hunt Transp., Inc.*, 989 F. Supp. 2d 766, 775–76 (D. Minn. 2013). "The district court may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Id*. "When fashioning a remedy, the district court should consider, *inter alia*, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony." *Wegener*, 527 F.3d at 692 (citations omitted).

**III. Production Of Alleguard Electronic Data (Dkt. Nos. 245; 246)**

At trial, McNab testified that he, with the help of Alleguard employees in the finance department, created spreadsheets with information that Alleguard's damages expert Branch requested (hereinafter "Spreadsheets"). Data for certain of the Spreadsheets was created from electronic data obtained from Alleguard's computerized financial systems (Trial Tr., Vol. 2, at 328). The underlying data has not been produced in the case, and Defendants maintain it should have been produced by Alleguard in discovery. Defendants contend that the Spreadsheets created by McNab and others at Alleguard and produced to Branch are not business records because they were generated for use in litigation (*Id.*). Alleguard argues that this contention fails, and Defendants' request for the underlying data should be denied (Dkt. No. 245, at 1).

Defendants respond that the non-Styropek Spreadsheets were compilations of the total calculations of several data points contained in Alleguard's company-level profit and loss statement and general ledger, which were compilations of source documents including invoices, receipts, and other similar financial documents (Dkt. No. 246, at 1). According to Defendants, the Spreadsheets were an attempt by McNab to answer data requests for Branch and that Branch had a chance to review the profit and loss statement and general ledger to select totals that he wanted for his analysis, including certain drilled down materials as admitted to by McNab during his trial testimony, and then Branch reviewed the same reports again with McNab to verify his totals (*Id.*, at 1, 6–7).

Based on McNab's testimony, there was a back-and-forth with Branch regarding the Alleguard data Branch wanted and a back-and-forth between McNab and others, some at Alleguard and some not, to provide such data to McNab who ultimately passed it to Branch. As the Court understands it, those communications and work performed pursuant to those communications resulted in the Spreadsheets. The Court understands that none of the underlying data or communications in the form of emails, or witness disclosures with those who actually did the work for McNab, were disclosed to Defendants during discovery (*Id.*, at 5 (discussing McNab's testimony that McNab did not create most of the Spreadsheets referenced in Branch's report), 6-7 (discussing McNab and Branch's communications during which Defendants contend Branch reviewed underlying data at a granular level and selected Alleguard information he wanted provided to him)).

Defendants argue that Federal Rule of Evidence 803(6) is irrelevant to the question of whether Alleguard ever produced the underlying data in discovery. Defendants argue that "Rules 26, 33, and 34 of the Federal Rules of Civil Procedure required disclosure long before now so that

the opposing party can test the evidence—not so that a party can substitute undisclosed data with litigation-created summaries at trial." (Dkt. No. 246, at 3). Defendants argue that without the evidence it sought throughout discovery and continues to seek now Defendants have been unable to verify the accuracy of Alleguard's damages calculations, challenge the assumptions embedded in the analysis, or meaningfully cross-examine the expert (*Id.*).

The issue raised by Defendants is whether Alleguard produced the underlying data (*see* Trial Tr., Vol. II, at 448:16–21: "Mr. McNab testified at length about that all of these spreadsheets had totals, the totals came from documents within Alleguard's financial system. So we're asking for the Bates numbers for where the underlying data for those documents came from because, without that underlying data, we cannot check the math so to speak."). The Court agrees with Defendants that the evidentiary issue under Federal Rule of Evidence 803(6) is secondary to whether the underlying data was produced in discovery.

Alleguard contends that McNab testified that that the underlying data was not provided to Branch in any form (Trial Tr, Vol. II, at 344:4–7). Defendants argue, however, that McNab testified that on his two video calls with Branch, he walked through the profit and loss statement and general ledger with Branch, and Branch asked questions about particular line items (Trial Tr., Vol. II, 333:1–344:7). During this conversation, McNab provided examples of the types of entries reflected in the profit and loss statement and general ledger (Trial Tr., Vol. II, 333:1–344:7).

For now, the Court holds under advisement the issue of whether Alleguard was required to produce the underlying data that McNab went over with Branch during the two video conference calls with Branch, including Alleguard's profit and loss statement, portions of its general ledger, and source data relevant to its claims and whether sanctions, if any, are appropriate for a failure to produce. Fed. R. Civ. P. 26; Fed. R. Civ. P. 37. The record is clear that Alleguard did not produce

the profit and loss statement and portions of its general ledger, or underlying source data, McNab testified on the record at trial McNab reviewed with Branch during the two video calls (Trial Tr., Vol. II, 333:1–344:7).[5]

To the extent any party attempts to frame this as a discovery issue, the discovery deadline in this case was November 12, 2025 (Dkt. No. 120). Trial has begun. The Court will not reopen discovery and require or permit Alleguard to produce additional documents.

The Court reiterates what it conveyed to the parties prior to trial which is that a party who fails to provide information or documents properly and timely during the discovery period will be precluded from using that information or those documents to supply evidence at trial. The Court will entertain contemporaneous objections to evidence or the testimony of any witness who testifies regarding evidence not properly and timely disclosed during discovery before the discovery deadline (*See* Fed. R. Civ. P. 37). If the offering party wishes to argue that the failure was substantially justified or harmless, the offering party may do so (*Id.*). Therefore, to the extent Defendants raise these issues in the context of a motion to strike McNab's testimony offered by Alleguard on the Spreadsheets, the Court holds the motion to strike McNab's testimony offered by Alleguard on the Spreadsheets under advisement at this time and directs Defendants to supplement their motion to strike with line and page number of McNab's trial testimony Defendants seek to strike.

[5] The Court addresses the specific discovery history with respect to interrogatories and requests for production that obligated Alleguard to produce McNab's collection of emails and the underlying financial system data in this Order when addressing specifically "McNabb Internal Emails And Underlying Financial Source Data Provided To Branch (Dkt. No. 252-3, Items 1 And 2)."

To the extent Defendants raise these issues in the context of a motion to strike the Spreadsheets from evidence in this case, the Court does not understand any party to have moved to introduce the Spreadsheets into evidence yet (Trial Tr., Vol. III, 493:1–499:22).

Federal Rule of Civil Procedure 803(6) does not govern a party's discovery obligations or sanctions for failure to comply properly and timely with a party's discovery obligations. It is unclear why Alleguard cites it with respect to these issues. Regardless, at this time, no party has moved to admit the Spreadsheets prepared by McNab (Trial Tr., Vol. III, 493:1–499:22). The Court will withhold ruling on whether the Spreadsheets fall within the business records exception to the hearsay rule under Federal Rule of Civil Procedure 803(6) until after a party moves to admit the spreadsheets or any other compilation of data as an exhibit at trial.

The Court also continues to hold under advisement certain matters addressed in the Court's Order on Defendants' motion *in limine* to exclude Branch's expert report and testimony pursuant to Federal Rules of Civil Procedure 26 and 37 (Dkt. No. 235).

## IV. Discovery Issues Raised During The First Three Days Of Trial

### A. McNabb Internal Emails And Underlying Financial Source Data Provided To Branch (Dkt. No. 252-3, Items 1 And 2)

At trial, Defendants requested Bates number ranges for information related to financial information McNab assembled for Alleguard's damages expert Branch. McNab testified that he "worked with the finance group to ensure that what was provided aligned with how they would pull that information" (Trial Tr., Vol. II, at 323:14–16), that the Spreadsheets given to Branch were "[c]reated and . . . verified by finance" (Trial Tr., Vol. II, at 329:4), and that 2020, 2021, and 2022 numbers "were provided to me from finance. They filled out this exact form. . . . I gave them the three fields that we needed completed" (Trial Tr., Vol. II, at 382:4–8). McNab further testified at trial that "all of my requests went to Bob Mahoney for financial if I didn't have the information"

(Trial Tr., Vol. II, at 382:17–18); that he could not recall whether the response "got to me" by walk-down or other means (Trial Tr., Vol. II, at 383:5–7); and on recross McNab testified that the corporate controller, "Tony Van Gundy" verified his work (Trial Tr., Vol. III, at 690:5–10). Based on McNab's testimony, Defendants specifically seek Bates numbers for:

> (a) all emails between McNab and Alleguard finance personnel—including without limitation Tony Van Gundy, Stan Rankin, Parker Phillips, Eric Penne, and any member of Robert Mahoney's group—requesting, transmitting, verifying, or returning the figures, GL detail, P&L, commission percentages, freight, labor, EBITDA, variable-margin, or material-as-percentage-of-sales data ultimately shown or sent to Branch;
>
> (b) [redacted] He likewise testified that the resin price-trend chart "was provided to me from our procurement team," specifically "Bobby Cole or someone on his team" (Trial Tr., Vol. 2, at 381:1–4); and
>
> (c) any written verifications received back from finance.

(Dkt. No. 252-3, Item 1).

Defendants also seek underlying financial source data for the summaries and totals provided to Branch (Dkt. No. 252-3, Item 2).[6] This category includes Alleguard's profit and loss statement, its general ledger, the general ledger drill-downs, Sage 100 invoice-level detail, raw-material/resin invoices, and revenue reports (Dkt. No. 252-3, Item 2).

[6] This is discussed, in part, in the prior section of the Order regarding McNab's creating, with the help of Alleguard employees in the finance department, spreadsheets with information that Alleguard's damages expert Branch requested.

Alleguard responds that it "has no additional Bates numbers to provide for Items . . . on Defendants' May 13 list." (Dkt. No. 252, at 19). Alleguard argues that it was not required to disclose this information because it was not requested in discovery (Dkt. No. 252, at 12–19).

Alleguard first contends that it is not required to disclose the emails and financial data as part of Branch's expert disclosure data under Federal Rule 26(a)(2)(b)(ii) (Dkt. No. 252, at 12). According to Allegaurd, it is only obligated to produce "facts or data considered by" Branch (*Id.*). Alleguard maintains the following:

> Branch testified, and will further clarify in his trial testimony, he did not use, receive, review, or consider any internal emails Mr. McNab may have exchanged (if any) while gathering the requested information. Nor did Branch receive, review, or consider Alleguard's underlying financial system data—including but not limited to the now infamous [profit and loss statement] or the General Ledger data that Mr. McNab testified he clicked through to on the screen from the [profit and loss statement]—from which the requested information was pulled.

(Dkt. No. 252, at 13 (citing Trial Tr., Vol. II, at 77:9–23; Vol. III at 595:2–598:10)).

Defendants respond that Alleguard is required by Federal Rules of Civil Procedure 26(a)(1)(A)(iii), and (2)(B)(iii) to provide "a computation of each category of [its] damages" and "make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered" and "any exhibits that will be used to summarize or support" their expert's opinions (Dkt. No. 255, at 6 (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)).

**1. Underlying Data McNab Went Over With Branch**

The Court addressed this request, in part, in Section III of this Order. To the extent Defendants' current request seeks a broader category of documents to include Alleguard's profit and loss statement, its general ledger, and the general ledger drill-downs, along with Sage 100

invoice-level detail, raw-material/resin invoices, and revenue reports (Dkt. No. 252-3, Item 2), the Court's ruling on this request is consistent and the same as the Court's ruling articulated in Section III of this Order.

**2. Collection Emails**

Next, Alleguard argues that no discovery request obligated it to produce McNab's collection emails or the underlying financial system data (Dkt. No. 252, at 13). Based on McNab's trial testimony, there was a back-and-forth with Branch regarding the Alleguard data Branch wanted and a back-and-forth between McNab and others, some at Alleguard and some not, to provide such data to McNab who ultimately passed it to Branch. As explained, Court understands that none of the underlying data or communications in the form of emails, or witness disclosures with those who actually did the work for McNab, were disclosed to Defendants during discovery (Dkt. No. 246, at 5 (discussing McNab's testimony that McNab did not create most of the Spreadsheets referenced in Branch's report), 6–7 (discussing McNab and Branch's communications during which Defendants contend Branch reviewed underlying data at a granular level and selected Alleguard information he wanted provided to him)).

Contrary to Alleguard's assertion that no discovery request obligated it to produce McNab's collection emails or the underlying financial system data, Defendants point out in their response that this is not the case (Dkt. No. 255, at 6–10).

On June 28, 2024, Defendants served Alleguard with its First Set of Interrogatories and Requests for Production. Included within that set of discovery were the following:

> INTERROGATORY NO. 2: Identify each person, other than your attorney, who has knowledge concerning or information regarding the facts and circumstances surrounding the allegations in your Complaint or this lawsuit. For each person identified, please provide his or her address(es), telephone number(s), employer(s), title or positions with said employer(s), a brief summary of what is known by that

> person, including which facts and circumstances that person has knowledge concerning.
>
> INTERROGATORY NO. 16: Please state the basis by which you calculated that Alleguard has lost $300,000 in revenue relating to data allegedly stolen by Defendant Tyner and the basis of all damages you allege to have suffered as a result of Defendants' actions, including your claim for punitive damages, and identify any individuals who you contend will support your claim for such damages, as well as the precise itemized basis and methodology for calculating the amount of such damages. In your answer, provide a current figure for revenue that you allege Alleguard has lost because of data stolen by Defendant Tyner and the basis for that updated calculation.
>
> REQUEST FOR PRODUCTION NO. 20: Produce documents, correspondence, records, or other material that supports, tends to support, relates to, or pertains to each of the damages or expenses referred to in your answer to [Interrogatory No. 16].

In answering Interrogatory No. 16, Alleguard described a method for calculating damages based on identifying customers whose purchases had declined after Tyner's resignation and comparing pre-and post-departure sales (Dkt. No. 255-1, at 21–23).

At his discovery hearing on February 11, 2025, Judge Ray specifically ordered Alleguard to respond in full to Interrogatory No. 2. Specifically, Judge Ray stated:

> Interrogatory number 2. A plaintiff must supplement its answer by providing a brief summary of what each person identified in that response knows about the facts and circumstances supporting allegation made by Plaintiff in the complaint. That was asked for and ignored by the plaintiff in response to interrogatory number 2. That must be provided.

(Dkt. No. 107, at 24). Judge Ray also ordered Alleguard to provide a full response to Interrogatory No. 16 and Request for Production No. 20. Specifically, he stated:

> Request for production number 20 and 21. Plaintiff objects to this request for production—Plaintiff's objection to this request for production was previously overruled by me in denying Plaintiff's objection to interrogatories number 16 and 17. Accordingly, Plaintiff must produce all the documents responsive to request for production numbers 20 and 21.

(*Id.*, at 47).

Alleguard supplemented its response to Interrogatory No. 16 as follows:

> Plaintiff continues to object that this interrogatory contains multiple subparts and exceeds the permissible number but nevertheless provides the information below in an effort to resolve a dispute between the parties regarding these responses. Plaintiff calculated the $300,000 of lost revenue stated in the Complaint by identifying customers whose purchases had decreased in the period following Mr. Tyner's resignation and subtracting the sales after his departure from the sales in a comparable period prior to his departure. Plaintiff is still determining its total losses attributable to the unlawful conduct by Defendants as set forth in the Complaint but is generally calculating its lost revenues in the same way described above and currently estimates those damages to exceed $15 million. Dusty McNab can testify to these losses, and Plaintiff may identify others who can testify to its damages as discovery progresses. Plaintiff may also retain an expert to assist with the process of calculating its damages and testifying as to same at trial.
>
> In addition or alternatively, Alleguard also seeks damages for loss of goodwill due to the unlawful conduct engaged in by Defendants, and/or for the profits to Defendants or the extent of their unjust enrichment due to the misappropriation, all in an amount to be determined at trial. Alleguard will supplement its response to this interrogatory as more information becomes available that allows a more detailed calculation.
>
> Alleguard seeks punitive and/or exemplary damages for ongoing willful misappropriation by Defendants, in an amount to be determined in the enlightened conscience of the jury.
>
> Alleguard seeks recovery of its attorney's fees and costs, which are estimated to approach or exceed $400,000 through trial.
>
> Alleguard seeks all other available remedies, in amounts to be determined as discovery progresses or at trial.
>
> **SECOND SUPPLEMENTAL RESPONSE**: Per the Court's instructions during the February 11, 2025 discovery hearing, Plaintiff withdraws its objections based on subparts and refers to the answer previously provided prior to the hearing in the Supplemental Response above.

(Dkt. No. 255-3, at 25–26)

In its supplemental response to Request for Production No. 20, Alleguard referred Defendants to all of the documents it has previously produced, "FOAM00001-12098," but also stated that it would timely supplement to produce all non-privileged documents in its possession that are relevant to Interrogatory No. 16 (Dkt. No. 255-2, at 12). Likewise, with respect to Defendants' Interrogatory No. 12 and Request for Production No. 14, Alleguard stated that it

would supplement its response "with any non-privileged and relevant documents in its possession that are responsive to this request." (Dkt. Nos. 255-1, at 19–20, 255-2, at 9). Alleguard did not supplement its responses.

Alleguard was required to produce the information and documents requested in discovery and ordered by Judge Ray. There is no evidence in the record before the Court that Alleguard did so.

However, to the extent any party attempts to frame this as a discovery issue, the discovery deadline in this case was November 12, 2025 (Dkt. No. 120). Trial has begun. The Court will not reopen discovery and require or permit Alleguard to produce additional documents.

The Court reiterates what it conveyed to the parties prior to trial which is that a party who fails to provide information or documents properly and timely during the discovery period will be precluded from using that information or those documents to supply evidence at trial. The Court will entertain contemporaneous objections to evidence or the testimony of any witness who testifies regarding evidence not properly and timely disclosed during discovery before the discovery deadline. If the offering party wishes to argue that the failure was substantially justified or harmless, the offering party may do so. Therefore, to the extent Defendants raise these issues in the context of a motion to strike McNab's testimony offered by Alleguard on these matters or on the Spreadsheets, the Court holds the motion to strike McNab's testimony offered by Alleguard on these matters or on the Spreadsheets under advisement at this time and directs Defendants to supplement their motion to strike with line and page number of McNab's trial testimony Defendants seek to strike.

To the extent Defendants raise these issues in the context of a motion to strike the Spreadsheets from evidence in this case, the Court does not understand any party to have moved

to introduce the Spreadsheets into evidence yet (Trial Tr., Vol. III, 493:1–499:22). To the extent Defendants seek to strike some other evidence from the record in this case, the Court directs Defendants to supplement their motion to strike.

The Court also continues to hold under advisement certain matters addressed in the Court's Order on Defendants' motion *in limine* to exclude Branch's expert report and testimony pursuant to Federal Rules of Civil Procedure 26 and 37 (Dkt. No. 235).

**3. Alleguard Financial Materials And Styropek Pricing**

Alleguard also argues that it was not required to produce certain financial materials or the Styropek pricing information because they are business records and neither Federal Rule of Civil Procedure 26 nor Federal Rule of Evidence 803(6) impose such an obligation. Federal Rule of Civil Procedure 803(6) does not govern a party's discovery obligations or sanctions for failure to comply properly and timely with a party's discovery obligations. It is unclear why Alleguard cites it with respect to these issues. Regardless, at this time, no party has moved to admit the financial materials or the Styropek pricing information obtained by McNab. The Court will withhold ruling on whether these materials fall within the business records exception to the hearsay rule under Federal Rule of Civil Procedure 803(6) until after a party moves to admit the spreadsheets or any other compilation of data as an exhibit at trial.

The Court determines that Alleguard was required to produce the financial materials and Styropek pricing information because it was requested in discovery and ordered by Judge Ray. The record before the Court indicates that Alleguard did not produce it.

However, to the extent any party attempts to frame this as a discovery issue, the discovery deadline in this case was November 12, 2025 (Dkt. No. 120). Trial has begun. The Court will not reopen discovery and require or permit Alleguard to produce additional documents.

The Court reiterates what it conveyed to the parties prior to trial which is that a party who fails to provide information or documents properly and timely during the discovery period will be precluded from using that information or those documents to supply evidence at trial. The Court will entertain contemporaneous objections to evidence or the testimony of any witness who testifies regarding evidence not properly and timely disclosed during discovery before the discovery deadline. If the offering party wishes to argue that the failure was substantially justified or harmless, the offering party may do so. Therefore, to the extent Defendants raise these issues in the context of a motion to strike McNab's testimony offered by Alleguard on these matters or on the Spreadsheets, the Court holds the motion to strike McNab's testimony offered by Alleguard on these matters or on the Spreadsheets under advisement at this time and directs Defendants to supplement their motion to strike with line and page number of McNab's trial testimony Defendants seek to strike.

To the extent Defendants raise these issues in the context of a motion to strike the Spreadsheets from evidence in this case, the Court does not understand any party to have moved to introduce the Spreadsheets into evidence yet (Trial Tr., Vol. III, 493:1–499:22). To the extent Defendants seek to strike some other evidence from the record in this case, the Court directs Defendants to supplement their motion to strike.

The Court also continues to hold under advisement certain matters addressed in the Court's Order on Defendants' motion *in limine* to exclude Branch's expert report and testimony pursuant to Federal Rules of Civil Procedure 26 and 37 (Dkt. No. 235).

### B. Transaction Documents In The Chain From The 2001 Confidentiality Agreement To Foam Holdings (Dkt. No. 252-3, Item 3)

Defendants request Bates number ranges for each corporate sale, purchase, or assignment in the chain from the 2001 Confidentiality Agreement to Foam Holdings (Dkt. No. 252-3, Item 3).

McNab testified his only verification of the 2001 Confidentiality Agreement's enforceability ran through "my HR business partner . . . in that person's file" (Trial Tr., Vol. III, at 643:6–7); that he "rel[ied] on . . . subject matter experts" including HR for "an employee record such as the confidentiality agreement" (Trial Tr., Vol. III, at 644:14–18). After that exchange between counsel for Defendants and McNab, the Court asked for the Bates numbers for all those deals and all those contracts (Trial Tr., Vol. III, 646: 11–14; renewed at 647:8–10, 15–16).

Alleguard responded at trial as follows:

> We did not produce the—Plaintiff did not produce the 2012, 2018, and 2020 documents because we do not intend to rely on those documents to prove our claims in the case, so we did not need to affirmatively provide them, and they also were not requested in discovery.

(Trial Tr., Vol. III, 647:18-23).

Alleguard states in its briefing that the 2006 APA was produced to Defendants shortly after it was discovered and filed on the docket on the same date, January 20, 2026, in response to Tyner's motion for partial summary judgment (Dkt. No. 199-2). Alleguard states that it was not Bates labeled (Dkt. No. 252, at 20). Alleguard states that Tyner produced the 2012 Stock Purchase Agreement on the last day of discovery at TYNER 078001–078016, and it is also filed as Exhibit 10 to Tyner's partial motion for summary judgment (Dkt. No. 252, at 21 (citing Dkt. No. 160, at 80–96)). Alleguard maintains that it "intends to rely on the testimony of witnesses with personal knowledge, including at least Mr. Tyner, Mr. Bobby Cole, and Mr. William Givens, to establish the only fact about these transactions that is relevant to this case—that they were all stock purchases." (*Id.*). In sum, Alleguard argues that it was "not required to produce all documents reflecting every corporate transaction from 2001 through 2020, and it therefore has no further Bates ranges to provide." (*Id.*).

Defendants respond that the 2001 Confidentiality Agreement is not a "late-arising" issue. (Dkt. No. 255, at 10). The Court agrees; this is not a late arising issue in this litigation. Defendants raised Alleguard's lack of standing from the outset including in their response to Alleguard's motion for temporary restraining order and in their answer (Dkt. Nos. 17, at 8–9; 37, at 15).

Defendants point to the following requests for production as relevant to the transactional documents:

> REQUEST FOR PRODUCTION NO. 17: Produce all documents, correspondence, records, or other material related to any analysis, assessment, or investigation related to the discovery, enforcement, or violation of Alleguard's confidentiality policies, procedures, or agreements.
>
> REQUEST FOR PRODUCTION NO. 19: Produce all documents, correspondence, records, or other material that relates to your allegations that Defendants have violated any applicable contract, agreement, statute, or duty that has harmed Alleguard or caused it to incur damages.

(Dkt. No. 255-2, at 10–11). Defendants assert that documents related to the chain of title from the 2001 Confidentiality Agreement are encompassed by both requests, and that Judge Ray recognized at the February 11, 2025, hearing that Alleguard agreed to produce documents responsive to Request for Production No. 17 (Dkt. Nos. 107, at 46:22–47:8; 255, at 10–11). Additionally, Request for Production No. 6 seeks "documents or documentation . . . that supports, tends to support, or in any way relates to the factual allegations you made or claims you asserted against Defendants in your Complaint." (Dkt. No. 255-2, at 4). Defendants argue that Alleguard specifically pleaded in its complaint that Tyner signed the 2001 Confidentiality Agreement and that it was enforceable against him, and therefore the documents related to chain of title are relevant to the request (Dkt. No. 255, at 11). As relief for Alleguard's failure to produce the documents, Defendants ask that Alleguard "not be permitted to prove the enforceability of the

2001 agreement through testimony untethered to the underlying chain-of-title documents." (Dkt. No. 255, at 12).

In its reply in support of its brief, Alleguard argues that Defendants should have raised an objection to Alleguard's responses to Requests for Production 6 and 19 (Dkt. No. 258, at 21), but Alleguard does not address Request for Production No. 17. Additionally, Alleguard attempts to argue that Defendants had an affirmative duty to disclose what Alleguard refers to as Defendants' "chain-of-title defense," to describe the factual basis for the affirmative defense, and "to produce documents supporting" the defense (*Id.*). Alleguard's reply shows a fundamental lack of understanding of Article III standing. *Alleguard*, not Defendants, has the burden of proof on standing. It is not up to Defendants to produce documents related to standing. That burden is Alleguard's alone. "Constitutional standing (as opposed to statutory standing) is a threshold question that determines whether a federal court has jurisdiction over a plaintiff's claims." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017) (affirming dismissal for lack of subject matter jurisdiction on grounds that appellant lacked standing in case seeking declaratory judgment based on written agreement); *see also Farm Bureau Ins. Co. of Arkansas v. Running M Farms, Inc.*, 237 S.W.3d 32, 36 (Ark. 2006) (other citation omitted) ("[i]t is fundamental in American jurisprudence that in order to bring a lawsuit against an opposing party, one must have standing to do so. Without standing, a party is not properly before the court to advance a cause of action.); *Roggasch v. Sims*, 481 S.W.3d 440, 444 (Ark. Ct. App. 2016) (finding no standing on breach of contract claim because Sims was not a party to the written contract) (citing *City of Dover v. City of Russellville,* 100 S.W.3d 689 (Ark. 2003)). A plaintiff who brings suit in federal court has the burden of establishing standing. *Agred Found. v. U.S. Army Corp. of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021).

The Court agrees that Alleguard failed to produce the chain of title documents in discovery despite requests for production of documents propounded to Alleguard seeking such documents (*see* Requests for Production 6, 17 and 19). As such, Alleguard is not permitted to introduce the documents at trial as set forth in the Court's Order denying Alleguard's motion to amend its trial exhibit list (Dkt. No. 259). The Court holds under advisement the other relief requested by Defendants.

The Court reiterates what it conveyed to the parties prior to trial which is that a party who fails to provide information or documents properly and timely during the discovery period will be precluded from using that information or those documents to supply evidence at trial. The Court will entertain contemporaneous objections to evidence or the testimony of any witness who testifies regarding evidence not properly and timely disclosed during discovery before the discovery deadline. If the offering party wishes to argue that the failure was substantially justified or harmless, the offering party may do so.

**C. Text Messages McNab Testified To Having Reviewed, Sent, Or Received And That Informed His Verification Of The Complaint Or Concerns Regarding Tyner (Dkt. No. 252-3, Item 4)**

Defendants request Bates number ranges for the text messages McNab testified to having reviewed, sent, or received and that informed his verification of the complaint or his concerns regarding Tyner. McNab testified that, in addition to emails, "there [were] multiple text message exchanges that were . . . available to us and, you know, sharing leads, things like that" (Trial Tr., Vol. III, at 677:12–14). On recross, McNab clarified that he became aware of "text messages by Charlie [Tyner] with Creative Foam employees" (Trial Tr., Vol. III, at 692:1) "[w]hile he was employed at Alleguard, Drew Foam" (Trial Tr., Vol. III, at 692:5), and that there were also "text messages of confirmation that Charlie [Tyner] was looking to leave Creative Foam by the end of

December or January" (Trial Tr., Vol. III, at 693:17–19). McNab conceded that those text messages "in no way support an allegation that Charlie Tyner used information taken from Alleguard when he went to work at Creative Foam" (Trial Tr., Vol. III, at 694:1–4). The Court accordingly directed Alleguard to "produce Bates numbers of text messages that you think he had" and "the Bates range of any text messages that you believe were turned over that . . . involved Mr. McNab either sending, receiving, or reviewing" (Trial Tr., Vol. III, at 684:3–18).

In its brief, Alleguard states that when counsel for Defendants asked McNab on re-cross about the text messages he referenced on direct, McNab clarified his earlier statement. McNab stated, "[t]o clarify my earlier statement, I was speaking on behalf of my deposition. Mr. Stembridge asked me after that if it was regarding the complaint, and I think that's when the conversation started. The way I answered that was speaking to specifically my deposition, and I was aware of that information at the time of my deposition, not the complaint." (Trial Tr., Vol. III, at 691:7–20). McNab testified that the text messages to which he was referring were between Tyner and a Creative Foam employee, sharing leads, while Tyner remained employed by Alleguard (Trial Tr., Vol. III, at 691:23–692:25). Alleguard contends that those text messages were produced to all parties as part of the results of the joint forensic review conducted by iDS (Dkt. No. 252, at 23 (citing FOAM 2264)). Defendants' response does not address McNab's clarification (Dkt. No. 255, at 12–13). The Court determines that Alleguard has come forward with a Bates number for a relevant document given McNab's clarification.

**D. Emails Alleguard Contends Show Tyner's "Use" Of Alleguard Information At Creative Foam (Dkt. No. 252-3, Item 5)**

Defendants request Bates number ranges for emails that Alleguard contends show Tyner's "use" of Alleguard information at Creative Foam. McNab testified that he had seen such emails—and identified the source as "the forensic review." Specifically, McNab stated, "[w]hen I've seen

them, during when we did the forensic review, that there was a series of emails from his @creativefoam to customers, just initiating—initial reach-outs, referencing we can be—I mentioned this earlier, that, you know, we can be very competitive. . . . [T]here was a specific email that references a part description or the type of product." (Trial Tr., Vol. III, at 702:1–9). The "forensic review" was undertaken "as part of the TRO" by a third-party vendor—"Maybe it was Relativity or something of that nature" (Trial Tr., Vol. III, at 703:17–22). McNab admitted on recross that the only such "use" email actually shown to him at trial was the Crown Packaging email, and that "[n]o[ne] have been put in front of [him] by . . . counsel" (Trial Tr., Vol. III, at 694:5–15). The Court directed Alleguard to identify those emails by exhibit and Bates number (Trial Tr., Vol. III, at 698:1–8; *see also* Trial Tr., Vol. III, at 699:7–14, 700:1–24).

Alleguard contends that the Court did not order it to identify, by exhibit and Bates number, all documents that "show Mr. Tyner's 'use' of Alleguard information at Creative Foam." Instead, Alleguard contends that the Court asked Alleguard to provide Bates number ranges for emails that had been *tendered into evidence* that show Tyner took Alleguard information prior to resigning (Trial Tr., Vol. III, at 697:18- 698:17, 699:7-11).

Defendants argue that the Court asked for Bates number ranges and exhibit numbers for the emails and underlying attachments about which McNab was testifying as to his knowledge of use by Tyner (Dkt. No. 255, at 13).

The Court stated:

> If you will, because I'm not tracking, I am going to need the exhibit numbers of what you're talking about. It's critical. This vague answer doesn't move the needle for me. Some emails, not helpful, singularly unhelpful and a waste of my time.
>
> So let's go by exhibit number. You tell me the exhibit number, and I will even throw this one in for free today and the Bates number of what the exhibit is.

(Trial Tr., Vol. II, at 698).

Alleguard provides the Court with exhibit numbers for the emails that show Tyner sending information to himself. Alleguard references Plaintiff's Exhibits ("PTX") 17-18, 20-21, 23-26, 128-129, 173-183. Alleguard states that other of Plaintiff's Exhibits "relate to Mr. Tyner's theft and use of Alleguard's confidential information and trade secrets but have not yet been entered into evidence" and include the following exhibits: Plaintiff's Exhibits 9, 19, 22, 27, 30-31, 85, 99, 110-113, 116-131, 154-155, 190-191, 200, 202-211, 275-289 (Dkt. No. 252, at 25). Alleguard did not provide Bates numbers, but the Court determines that Alleguard has complied with the Court's request at trial.

**E. Documents Reflecting Each Of The Three Categories Of Reviews Or Searches Of Tyner's Alleguard Computer, Devices And Emails (Dkt. No. 252-3, Item 6)**

Defendants request Bates number ranges for each of the three categories of reviews or searches of Tyner's Alleguard computer, devices, and emails. McNab testified that in his role at Alleguard he "would be . . . notified" of any extraction following an employee's departure and that he "wasn't notified of anything" with respect to Tyner's scan (Trial Tr., Vol. I, at 183:1–6). At the start of Day 2 of trial, the Court—having heard McNab's Day 1 testimony and Stembridge's representations—directed Alleguard to address production separately as to: "(1) the scan done by Alleguard" "internally by Alleguard . . . where you claim nothing was found"; "(2) . . . the jointly undertaken . . . by counsel" forensic review; and "(3) . . . the separate investigation of Tyner's emails that he forwarded to himself" (Trial Tr., Vol. II, at 272:13–273:21). The Court emphasized that "Interrogatory No. 14 seems particularly pertinent" and that any document responsive to that interrogatory must be identified by Bates number (Trial Tr., Vol. II, at 294:17–25). This includes all reports, emails, attachments, custodial collections, and chain-of-custody documentation for each of the three.

Alleguard basically asserts that this is much ado about nothing (Dkt. No. 252, at 25–28). Alleguard contends that "Defendants are and have been fully aware of two of these scans/reviews since they were performed and, with regard to the third, since at least the time that depositions were taken." (Dkt. No. 252, at 25). Furthermore, Alleguard maintains that "there are no non-privileged documents pertaining to any search or review that are responsive to any discovery request or voluntary production obligation and have not been produced." (*Id.*).

Defendants contend that "Alleguard *never disclosed the first scan at all* in any of its responses to Interrogatory Nos. 7 and 14," but this is contradicted by McNab's testimony that Tyner was copied on correspondence related to the initial scan (Dkt. No. 255, at 13). Alleguard has not come forward with any Bates numbers for documents or materials related to the first scan, and Alleguard has openly conceded that during the first scan of Tyner's computer "nothing was found." (Trial Tr., Vol II, at 270:17–271:11; 276:23–277:9; 286:9–19).

The Court will not reopen discovery in the middle of trial related to the reviews or searches by Alleguard of Tyner's computer and devices. Should Alleguard seek to introduce evidence or testimony at trial related to its first scan of Tyner's computers and devices, then the Court will entertain a contemporaneous objection to the evidence or testimony being offered.

The Court recognizes that, by not properly and timely producing information and documents on the first scan, Alleguard has limited Defendants' ability to defend against Alleguard's claims in this case, especially given Alleguard's open concession that during the first scan of Tyner's computer "nothing was found." (Trial Tr., Vol II, at 270:17–271:11; 276:23–277:9; 286:9–19). The Court has under advisement Defendants' motion for sanctions related to this issue (Trial Tr. Vol II, at 298:7).

### F. Documents Identifying Alleguard's Claimed "Product Specifications" As Trade Secrets In Its Written Discovery Responses (Dkt. No. 252-3, Item 7)

Defendants request Bates number ranges for materials identifying Alleguard's claimed "product specifications" as trade secrets in its written discovery responses (Dkt. No. 252-3, Item 7). McNab's testimony as to what constitutes a "product specification" emerged in response to the Court's direct questioning. McNab testified that "product specification would be the item description. It could be the part number—I'm sorry, the item description, the code which is how we would manufacture it, and also the density and the grade. . . . It's a combination of all those things that make that up." (Trial Tr., Vol. I, at 73:10–17). Defendants request any Bates numbered discovery response, supplement, or interrogatory answer in which Alleguard identified specific "product specifications" (dimensions, tolerances, SKU-level details, density, grade, item descriptions, codes, or part numbers) as trade secrets, distinct from the 13,000-page Bates list.

Alleguard disputes Defendants' description of what the Court requested. According to Alleguard, the Court asked Alleguard to identify deposition testimony in which product specifications were disclosed and discussed (Trial Tr., Vol., I, at 77:20-78:12). In its brief, Alleguard cites to various portions of McNab's deposition testimony where McNab discusses skew history, product details, product dimensions, pricing, customer lists and other details (Dkt. No. 252, at 29–30). Alleguard also references FOAM 3065-3299, FOAM 3647-3683, FOAM 4635-4640, FOAM 6050-6205, FOAM 6269-6284, FOAM 6632-6668, FOAM 6674-7545, FOAM 7629-7728, FOAM 302223-305207, FOAM 310198-310428.

The Court is satisfied by the documents Alleguard provides with respect to this Bates number request. The Court will not reopen discovery on the "product specification" issue.

### G. Market Reports McNab Testified He Reviewed Post-Resignation (Dkt. No. 252-3, Item 8)

Defendants request Bates number ranges for market reports McNab testified he reviewed post-resignation. McNab testified: "we had market reports that were done in that territory. I wanted to understand from the new sales reps what the ongoing activity was in that territory." (Trial Tr., Vol. I, at 183:19–21). Counsel for Defendants objected and asked for market reports done as part of an investigation related to Tyner (Trial Tr., Vol. I, at 183:22–184:1). Stembridge stated that he believed McNab testified to a pre-existing report (Trial Tr., Vol. I, at 184:14–23). The Court then ruled, "I need to know if you produced it. You have to give me the Bates number if you produced it because that is the objection that is here." (Trial Tr., Vol. I, at 185:10–12). Alleguard states in its brief that there is "nothing to be produced, and Plaintiff has no additional Bates ranges to identify as to this item."

The Court will not reopen discovery on McNab's post-resignation investigation of Tyner by a review of market reports done in that territory.

The Court reiterates what it conveyed to the parties prior to trial which is that a party who fails to provide information or documents properly and timely during the discovery period will be precluded from using that information or those documents to supply evidence at trial. The Court will entertain contemporaneous objections to evidence or the testimony of any witness who testifies regarding evidence not properly and timely disclosed during discovery before the discovery deadline. If the offering party wishes to argue that the failure was substantially justified or harmless, the offering party may do so.

### H. Asset-Valuation Documentation Listing Alleged Confidential Information As An Asset With Assigned Economic Value (Dkt. No. 252-3, Item 9)

Defendants request Bates number ranges for asset-valuation documentation listing the alleged confidential information as an asset with assigned economic value. McNab testified on direct that, in his role, Alleguard's financial records "enable you to calculate the value of the business and of customer sales" and that he could do so using "just my knowledge and experience" (Trial Tr., Vol. II, at 303:13–21). Defendants objected that no such valuation, and no asset disclosure listing the alleged confidential information as an asset, had ever been produced (Trial Tr., Vol. I at 94:5–11; Vol. II, at 304:1–25). As the Court noted at trial, Alleguard has not produced a profit and loss statement, financials, or an asset valuation to Defendants in discovery (Trial Tr., Vol. I, at 95:1–8). That is a choice about how Alleguard is trying its case (*Id.*). The Court will not reopen discovery in the middle of trial to permit investigation into asset valuation documentation.

The Court reiterates what it conveyed to the parties prior to trial which is that a party who fails to provide information or documents properly and timely during the discovery period will be precluded from using that information or those documents to supply evidence at trial. The Court will entertain contemporaneous objections to evidence or the testimony of any witness who testifies regarding evidence not properly and timely disclosed during discovery before the discovery deadline. If the offering party wishes to argue that the failure was substantially justified or harmless, the offering party may do so.

### I. The Power BI Screen-Grab Data And Underlying Sales-Reporting (Dkt. No. 252-3, Item 10)

Defendants request Bates number ranges for the Power BI screen-grab data and the underlying sales-reporting exports McNab testified he provided to Alleguard's damages expert

Branch, corresponding to Defendants' Exhibit 24. Neither Defendants nor the Court requested Bates number ranges for this category of material during trial (*see* Trial Tr., Vol. IIA, at 32:17–21; 33:7–9; 34:5–14; 38:13–19). Accordingly, the Court will not make a ruling on Defendants' request.

**J. Customer Attrition And Retention Analysis Generated For Portland And Monticello Plants, 2023–25 (Dkt. No. 252-3, Item 11)**

Defendants request Bates number ranges for a customer-attrition and retention analyses generated for the Portland and Monticello plants, 2023–2025. Neither Defendants nor the Court requested Bates number ranges for this category of material during trial (*see* Trial Tr., Vol. IIA, at 29:13–14; 35:11). Accordingly, the Court will not make a ruling on Defendants' request.

**K. Post-Employment Sales Reports For Tyner's Former Territory (February 2023 To Present) (Dkt. No. 252-3, Item 12)**

Defendants request Bates numbers for post-employment sales reports for Tyner's former territory (February 2023 to present) (Dkt. No. 252-3, Item 12). The Court addressed Defendants' objection to Alleguard's failure to produce post-employment sales reports (Trial Tr., Vol. II, at 319), but the Court stopped short of requiring Alleguard to produce Bates number ranges for this category of material at trial (*See* Trial Tr., Vol. II, at 320:23–321:8). Instead, the Court allowed Alleguard's counsel to continue with questioning. Accordingly, the Court will not make a ruling on Defendants' request.

**L. Product Price-Trend Data For EPS Finished Goods, As Distinct From Resin Price-Trend Data (Dkt. No. 252-3, Item 13)**

Defendants request Bates number ranges for product price-trend data (revenue versus volume) for EPS finished goods, as distinct from resin price-trend data. Neither Defendants nor the Court requested Bates number ranges for this category of material during trial (Trial Tr., Vol. II, at 379:22-380:10). Accordingly, the Court will not make a ruling on Defendants' request.

### M. Documentation Of Sage 100 Role-Based Access Controls (Dkt. No. 252-3, Item 14)

Defendants request Bates number ranges for documentation of Sage 100 role-based access controls allegedly restricting Tyner from territories or accounts other than his own. Neither Defendants nor the Court requested Bates number ranges for this category of material during trial (Trial Tr., Vol. III, at 534:1–4, 13–20). Accordingly, the Court will not make a ruling on Defendants' request.

## V. Sanctions

In Alleguard's filings on these issues, Alleguard suggests that it is "problematic" for the Court to consider sanctions in a case where Rule 72 objections to certain of Judge Ray's discovery rulings remain unresolved (Dkt. No. 252, at 37 (citing Dkt. No. 110)). According to Alleguard, the "Court should restore orderly procedure going forward." (*Id.*). Alleguard requests that any further allegation of discovery misconduct "be addressed outside the witness's presence and only after Defendants make a request-specific, order-specific, and rule-specific proffer." (*Id.*). Alleguard asks that, before the Court considers sanctions, the Court resolve the Rule 72 motion and that the Court give Alleguard an opportunity to be heard fully on the matter, including briefing and a hearing outside of trial (*Id.*).

Defendants seek attorneys' fees for the time spent on these issues and additional sanctions the Court deems appropriate (Dkt. No. 255, at 2).

The Court has ruled on Alleguard's objections to Judge Ray's February 11, 2025, and April 4, 2025, discovery rulings (Dkt. No. 274). Discovery in this case closed long ago.

At this time, to the extent additional sanctions are sought, in addition to the striking of testimony or evidence, the Court has such requests for additional sanctions under advisement. The

Court also takes under advisement Alleguard's request for briefing and a hearing on any motion for sanctions and Defendants' request for attorneys' fees and additional sanctions.

## VI. Conclusion

For the reasons set forth in this Order, the Court declines to reopen discovery in this matter and will not require further production of information or documents. The Court rules on the Defendants' requests for Bates number ranges as set forth in this Order. To the extent either party seeks to strike testimony or evidence, the Court has ruled in this Order based on its understanding of those requests and directed further supplementation of the request as the Court deems appropriate. Any party may renew or make a request to strike testimony or evidence pursuant to Federal Rule of Civil Procedure 37, including testimony offered by McNab or any other trial witnesses in this case.

To the extent additional sanctions are sought, in addition to the striking of testimony or evidence, the Court has such requests for additional sanctions under advisement. The Court also takes under advisement Alleguard's request for briefing and a hearing on any motion for sanctions and also takes under advisement Defendants' request for attorneys' fees and additional sanctions.

It is so ordered this 10th day of August, 2026.

Kristine G. Baker
Chief United States District Judge