**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**FOAM HOLDINGS, INC.**
**d/b/a Alleguard** **PLAINTIFF**

**v.** **Case No. 4:23-cv-00320-KGB**

**CREATIVE FOAM PRODUCTS, LLC, *et al.*** **DEFENDANTS**

**ORDER**

Pending before the Court is plaintiff Foam Holdings, Inc. d/b/a Alleguard's ("Alleguard") motion to amend trial exhibit list (Dkt. No. 259). Defendants Charles Tyner and Creative Foam Products, LLC ("Creative Foam") (collectively "Defendants") responded (Dkt. No. 272). For the following reasons, the Court denies Alleguard's motion to amend trial exhibit list (Dkt. No. 259).

## I. Background

Alleguard filed its verified complaint in this matter on April 3, 2023, alleging violations of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*, against Tyner and Creative Foam in count one (Dkt. No. 1, ¶¶ 55-71); violations of the Arkansas Uniform Trade Secrets Act ("AUTSA"), Arkansas Code Annotated, § 4-75-601, *et seq.*, against Tyner and Creative Foam in count two (*Id.*, ¶¶ 72-84); breach of contract against Tyner in count three based on a March 9, 2001, Confidentiality Agreement ("2001 Confidentiality Agreement") (*Id.*, ¶¶ 85-93); and unjust enrichment against Tyner and Creative Foam in count four (*Id.*, ¶¶ 94-96). Alleguard seeks injunctive and other specific relief (*Id.*, ¶¶ 97-105).

On April 17, 2023, in its response to the motion for temporary restraining order, Defendants argued the following:

> Alleguard has not demonstrated that it even has standing to enforce the confidentiality [agreement]. Since Tyner signed the confidentiality agreement on March 9, 2001, Drew Foam has been sold a total of four times, with the fourth sale

> being to W[ynnchurch], now Alleguard. On the face of the purported agreement, it does not provide that Drew Foam could assign the agreement to its successors and assigns. . . . Without knowing the specific terms of each of those sales, and absent any opportunity to conduct discovery, Alleguard has not demonstrated either that it has any rights under the purported [agreement] or that it can enforce any rights contemplated by that document.

(Dkt. No. 17, at 8–9).

Alleguard responded that "[c]ontrary to Defendants' position, Mr. Tyner entered into a valid confidentiality agreement," and promised the Court and all parties that "Alleguard w[ould] produce evidence showing that the confidentiality agreement was assigned to Alleguard post-sale." (Dkt. No. 21, at 7, n.5).

Defendants also answered and raised a defense of standing in their answer (Dkt. No. 37, at 15, ¶ 7).[1] With the Court's permission, on September 20, 2023, Defendants filed an amended answer asserting as a defense that Alleguard "lacks standing to enforce the alleged confidentiality policy on which Plaintiff's claims are based." (Dkt. No. 60, at 15, ¶ 7).

The discovery deadline in this case was November 12, 2025 (Dkt. No. 120). This Court ruled that certain matters raised before that deadline would be addressed by the Court (*see* Dkt. No. 136, at 15–16). However, the Court declined to grant the final request made by Alleguard for an extension of the discovery deadline (*Id.*).

On January 6, 2026, Tyner filed a motion for partial summary judgment as to count three of Alleguard's complaint (Dkt. No. 160). Specifically, Tyner asserted that judgment should be granted in his favor on Alleguard's breach of contract claim based on the 2001 Confidentiality Agreement (*Id.*, ¶ 1). Tyner argued that Alleguard lacks standing to enforce the 2001

[1] Defendants filed counterclaims against Alleguard that Defendants later moved to dismiss voluntarily (Dkt. No. 131). The Court granted that motion and dismissed Defendants' counterclaims prior to the start of trial (Dkt. No. 136, at 12–15).

Confidentiality Agreement because Alleguard was not a party to the agreement, the agreement was not assigned to Alleguard, and Alleguard is not a successor-in-interest to the original contracting party (*Id.*, ¶ 2). Tyner maintained that, even if Alleguard could enforce the 2001 Confidentiality Agreement, the 2001 Confidentiality Agreement is unenforceable as an improper restraint on trade under Arkansas law (*Id.*, ¶ 3). Further, Tyner asserted that he had not breached the 2001 Confidentiality Agreement regardless (*Id.*, ¶¶ 4, 6) or that Alleguard, through its conduct, waived the right to enforce or should be estopped from enforcing the 2001 Confidentiality Agreement (*Id.*, ¶ 5).

Alleguard opposed Tyner's motion for partial summary judgment, asserting disputed issues of material fact precluded granting summary judgment (Dkt. No. 199). Alleguard attached to its response the 2006 Asset Purchase Agreement ("2006 APA"); this appears based on the record before the Court to be the first time Alleguard or any party provided the 2006 APA during the course of the litigation (Dkt. No. 199-2; 253, at 11). Alleguard's response was filed on January 20, 2026, well after discovery in the case had closed. Alleguard specifically argued, in part, that it "has standing to enforce the Agreement under controlling Arkansas and Eighth Circuit authority recognizing successor enforcement of confidentiality covenants where, as here, the employee's duties and obligations remained unchanged." (*Id.*, at 2). Alleguard also maintained that facts in the record, at a minimum, created genuine disputed issues of material fact on breach, waiver, and estoppel (*Id.*, at 2–3).

In his reply, Tyner disputed much of Alleguard's response (Dkt. No. 214). For his initial argument, Tyner asserted that Alleguard should not be permitted to oppose summary judgment with the 2006 APA when Alleguard did not produce that agreement in discovery (Dkt. No. 214, at

5–6).[2] Tyner argued against application of the *de facto* merger doctrine upon which Alleguard relied and argued that, even if that doctrine applies, nothing in that doctrine or the 2006 APA provided a basis upon which Alleguard could prove a right to enforce the 2001 Confidentiality Agreement or establish a genuine issue of material fact to defeat his summary judgment motion (*Id.*, at 2).

Alleguard filed a surreply, arguing many points, including a claim that the 2006 APA was not requested by Defendants in discovery (Dkt. No. 231, at 15–19). In fact, while essentially asserting that it has "contractual privity" to enforce the 2001 Confidentiality Agreement (Dkt. No. 231, at 14 ("Other than the 2006 asset purchase transaction, Defendant does not specifically allege that any of the other Drew Foam corporate transactions actually break Alleguard's contractual privity to enforce the Confidentiality Agreement.")), Alleguard maintained that "none of Defendant's discovery requests specifically mention anything about Drew Foam's corporate transactions at all, much less the specific transactions in 2006 (Drew Foam Delaware), 2012

[2] Tyner argued with respect to the 2006 Asset Purchase Agreement, in part, as follows:

> The 2006 Asset Purchase Agreement fell under at least two of Defendants' Requests for Production. In Request for Production No. 6, Defendants requested that Alleguard "identify all documents or documentation . . . that supports, tends to support, or in any way relates to the factual allegations you made or claims you asserted against Defendants in your Complaint." Exhibit 2, Defendants First Set of Interrogatories and Requests for Production of Documents to Plaintiff, p. 8. And in Request for Production No. 19, Defendants requested that Alleguard "[p]roduce all documents, correspondence, records, or other material that relates to your allegations that Defendants have violated any applicable contract, agreement, statute, or duty that has harmed Alleguard or cased it to incur damages." *Id.* at p. 13. Additionally, Mr. Tyner raised deficiencies in Alleguard's response to both Requests. . . . And the subject of Drew Foam's many purchases and sales was the specific topic of multiple depositions, and of Defendants' subpoena to Wynnchurch Capitol, which Wynnchurch opposed.

(Dkt. No. 214, at 5 n.5).

(Gladstone), 2018 (Bradford Castle Partners), or 2020 (Foam Holdings).” (Dkt. No. 231, at 15). The Court understands these to be four corporate transactions—including corporate entities involved— that occurred from the date Tyner executed the 2001 Confidential Agreement to the date Alleguard filed suit attempting to enforce it.

At the summary judgment stage, the Court declined to strike the 2006 APA from the record in the case or to limit its consideration of the 2006 APA to favor one side only in this dispute (Dkt. No. 236, at 3). Construing all reasonable inferences from the record evidence in favor of Alleguard, the Court determined that genuine issues of material fact remained in dispute as to whether Alleguard had standing to enforce the 2001 Confidentiality Agreement under controlling law, whether Tyner had breached the 2001 Confidentiality Agreement, and whether Alleguard had waived its right to enforce the 2001 Confidentiality Agreement or should be estopped from doing so (*Id*., at 5). The Court denied Tyner’s motion for partial summary judgment (*Id*.).

The bench trial in this matter began on April 27, 2026, because of a delay with the January trial due to inclement weather, and the bench trial continued on April 28, 2026, and April 30, 2026 (Dkt. Nos. 243; 244; 247). The parties were directed by the Court to submit exhibit and witness lists to the Court 30 minutes before the beginning of trial and did so (Dkt. No. 120, at 3). The parties were also told by the Court during the pretrial conference that the Court would not admit any documents into evidence that were not produced during discovery. The Court stated, “I’m not going to entertain any motions to produce any more discovery. Discovery is closed. But documents that got produced after the discovery deadline can’t be used as exhibits at trial.” (Dkt. No. 253, at 13).

At approximately 2:00 p.m. Central Standard Time on Friday, July 24, 2026, Alleguard filed a motion to amend trial exhibit list seeking to add the 2006 APA, the 2018 Stock Purchase

Agreement,[3] and the 2020 Stock Purchase Agreement (collectively "Amended Exhibits") to its exhibit list (Dkt. No. 259). The Court does not understand Alleguard to seek to add the 2012 (Gladstone) transaction document to its exhibit list (Dkt. No. 259). The attached Amended Exhibits are heavily redacted, and Alleguard has filed under seal with the Court an unredacted copy of the documents (Dkt. No. 266). Alleguard made no such offer to provide an unredacted copy attorneys' eyes only to Defendants (*Id.*; *see* Dkt. No. 272, at 15–16). Defendants responded to the motion to amend trial exhibit list (Dkt. No. 272).

Defendants' response, which for brevity the Court does not restate here in full, recounts the relevant discovery history related to the Amended Exhibits (Dkt. No. 272, at 3–8).

The Court, having reviewed the parties' papers and the record, provides a summary of the relevant events below:

- April 3, 2023 – Alleguard filed a verified complaint alleging, in part, breach of contract against Tyner in count three based on the 2001 Confidentiality Agreement (Dkt. No. 1, ¶¶ 85-93), which verified complaint was executed specifically by Eva Madison as counsel for Alleguard and Dusty McNab as Vice President of Sales and Marketing for Foam Holdings, Inc. d/b/a Alleguard[4] (Dkt. No. 1, at 21–22).
- April 17, 2023 – Defendants responded to the motion for temporary restraining order and asserted that Alleguard has not demonstrated that it has standing to enforce the 2001 Confidentiality Agreement between Tyner and Drew Foam Companies, Inc. (Dkt. No. 17, at 8-9).

---

[3] Defendants note that the "2018 Stock Purchase Agreement" is actually a "MEMBER INTEREST PURCHASE AGREEMENT." (Dkt. No. 272, at 8; *see* Dkt. No. 252-2).

[4] Dusty McNab is also referred to in this record at times as Dustin McNab (*see* Dkt. No. 220, at 3).

- April 21, 2023 – Alleguard replied and promised to produce evidence showing that the 2001 Confidentiality Agreement was assigned to Alleguard post-sale (Dkt. No. 21, at 7, n.5).
- September 20, 2023 – Tyner filed an amended answer asserting as a defense that Alleguard lacks standing to enforce the alleged confidentiality policy on which Plaintiff's claims are based (Dkt. No. 60, at 15, ¶ 7).
- August 4, 2023 – Defendants, via subpoena, demanded that Wynnchurch Capital, L.P. ("Wynnchurch"), Alleguard's parent company, produce "[a]ll asset and/or liability purchase agreements and surrounding documentation related to your acquisition of Foam Holdings, LLC," and "[a]ll confidentiality agreements that are provided to your employees." (Dkt. No. 272-1, at 28–31).[5]
- August 4, 2023 – Alleguard, through counsel Eva Madison, objected to Defendants' subpoena to Wynnchurch based upon Federal Rule of Civil Procedure 26(d)'s prohibition on discovery prior to conferral under Federal Rule of Civil Procedure 26(f) (Dkt. No. 272-2). Alleguard's counsel was on notice as of that time of Defendants' request for "[a]ll asset and/or liability purchase agreements and surrounding documentation related to" the relevant transactions.

[5] McNab, in his deposition, taken June 5, 2025, explains the relationship between Wynnchurch and Foam Holdings, LLC (Dkt. No. 220, at 7).

Q: What is Wynnchurch Capital?
A: It's a private equity organization.
Q: Does Wynnchurch Capital have any relationship with Foam Holdings?
A: Yes.
Q: What is that relationship?
A: I believe they're the majority investor, if not the sole investor, of Foam Holdings.

- July 1, 2024 – Defendants served Wynnchurch with the above subpoena requesting, among other items, the transaction documents (Dkt. No. 272-3, at 1–3). Counsel for Alleguard, Don Myers, John T. Stembridge, Lisa D. Taylor, Eva C. Madison, and Kyle Kennedy received a communication from counsel for Defendants, Abtin Mehdizadegan, regarding Defendants' subpoena (Dkt. No. 272-3, at 3).
- July 12, 2024–September 20, 2024 – Wynnchurch, through Alleguard's transaction counsel Foley & Lardner LLP, objected to Defendants' subpoena (Dkt. Nos. 272-4). Counsel for Defendants and Wynnchurch correspond via email regarding the subpoena (Dkt. Nos. 272-4; 272-5; 272-6; 272-7 272-, *see* 272-8, at 2 n.2). Among other objections, Alleguard's transaction counsel objected that "Wynnchurch objects to the subpoena to the extent that the party seeking the information has not exhausted efforts to obtain any relevant information requested from [Alleguard]." (Dkt. No. 273-4, at 1).
- September 5, 2026 – Wynnchurch refused to produce the Amended Exhibits, asserting that "to the extent that the Subpoena seeks documents regarding Wynnchurch's transactions with Foam Holdings, LLC, any relevant documents should be in the possession of Foam Holdings, LLC." (Dkt. No. 272-6).
- April 3, 2025 – Judge Ray directed Alleguard to produce all documents "under the broadest construction of relevance that the rules require" that were "relevant to the claims [Alleguard has] asserted in [its] complaint as well as being relevant to

defenses the defendant has made." (Dkt. No. 260, Apr. 3, 2025 Hearing, at 22:18–22, 25:13–23).[6]

- August 6, 2025 – The Court issued its Third Amended Final Scheduling Order, setting the close of discovery for November 12, 2025, and requiring that the parties submit exhibit lists to the Court 30 minutes before the beginning of trial (Dkt. No. 120, at 3).
- November 12, 2025 – Discovery closed per the Court's Third Amended Final Scheduling Order (Dkt. No. 120, at 1).
- January 6, 2026 – Tyner filed his motion for partial summary judgment on the breach of contract claim, reasserting standing and chain of title defenses (Dkt. No. 259).
- January 6, 2026–January 20, 2026 – Alleguard represented that it "immediately located the company's copy of the 2006 agreement in its files." (Dkt. Nos. 262, at 4; 272-8, at 2).
- January 20, 2026 – Alleguard attached as an exhibit to its response to Tyner's motion for summary judgment the 2006 APA (Dkt. No. 199-2). The 2006 APA was not produced by Alleguard before the close of discovery.
- January 22, 2026 – The Court held a pretrial conference (Dkt. No. 208). On the record, the Court informed the parties of their obligations under the Federal Rules of Civil Procedure, stating in part as follows:

And then there's been a lot of back and forth with respect to discovery. Here's what I'm going to say about this:

[6] The Court, by separate Orders, addressed the many discovery issues pending before it, including those related to Judge Ray's Orders (Dkt. Nos. 252; 255; 258; 274).

> I'm not going to entertain any motions to produce any more discovery. Discovery is closed. *But documents that got produced after the discovery deadline can't be used as exhibits at trial. . . .*
>
> The rules go both ways. So if everybody wants to run in documents, then everybody can run in documents. If nobody wants to run in documents, then nobody should run in documents. If you object that the other side has produced a document late, don't turn around and produce a document late that you think you should be able to use and get in. Right?
>
> The rules are going to apply equally to both sides. *If there is an objection made that an exhibit used at trial or something that's talked about by a witness was requested in discovery and not produced by the deadline, I will look to the producing party or the party who has the witness on the stand and ask them to clearly identify for me when it was produced, the date it was produced, the Bates number it was produced under.*
>
> And if it was a discovery request that went unanswered and objected to and you think you can put a witness on the stand to run in an answer for it, I am going to ask for the same things. The objecting party can raise for me the discovery request that asked for the information and the deficient response. That will aid me in ruling on objections to evidence that's coming in at trial. I'm going to require that all the way through the trial, so be prepared. You have from now until Wednesday morning to get your ducks in a row and to be able to answer to me when you produced things in discovery that were called for or when you asked for things that were never produced and are trying to be run in at the trial of the matter.

(Dkt. No. 253, 13:8–14:17 (emphasis added)).

- April 27, 28, and 30, 2026 – The Bench Trial of this matter began on April 27, 2026, continued on April 28, 2026, and April 30, 2026 (Dkt. Nos. 243; 244; 247).
- April 27, 2026 – Mr. Stembridge, counsel for Alleguard, represented to the Court that: "Everything that we're relying on, every document, every document that's identified in Plaintiff's exhibits was produced timely during discovery. They have it. They have everything. We're not holding anything back." (Trial Tr., Vol. I, 125:6–9).

- May 26, 2026–July 8, 2026 – The Parties extensively briefed discovery issues raised during the first three days of trial, including Alleguard's non-production of the Amended Exhibits during the discovery period (Dkt. Nos. 252; 255; 258).
- July 24, 2026 – Alleguard filed its motion to amend trial exhibit list and incorporated brief in support (Dkt. No. 259). Alleguard's motion seeks to add the 2006 APA, the 2018 Stock Purchase Agreement, and the 2020 Stock Purchase Agreement (*Id.*). Alleguard does not request to add the 2012 transaction document as an exhibit, and Alleguard has not produced the 2012 transaction document in discovery or provided it to the Court after the close of discovery.
- August 6, 2026 – Defendants responded (Dkt. No. 272).

Alleguard represents in part that the Amended Exhibits "were not requested in discovery" (Trial Tr., Vol. III, 647:22–23), but the record before the Court belies Alleguard's representation. This issue need not be resolved for the Court to make a ruling on Alleguard's current motion.

Critically, it is undisputed that Alleguard did not produce prior to the close of discovery on November 12, 2025, the Amended Exhibits. Mr. Stembridge stated to the Court at trial when specifically asked about these documents: "We did not produce the—Plaintiff did not produce the 2012, 2018, and 2020 documents because we do not intend to rely on those documents to prove our claims in the case, so we did not need to affirmatively provide them." (Trial Tr., Vol. III, 647:18-23).

## II. Legal Standard

Federal Rule of Civil Procedure 16(b) "guides the district court's issuance and modification of pretrial scheduling orders and provides that '[e]xcept in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order,' which 'must limit the time to join other

parties, amend the pleadings, complete discovery, and file motions.'" *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (quoting Fed. R. Civ. P. 16(b)(1), (3)(A)). "If a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir. 2008). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). "The existence or degree of prejudice to the party opposing the modification and other factors may also affect the decision." *Id.* (internal quotation omitted). In the context of amending a pleading after the deadline has passed, the Eighth Circuit explains that "[g]ood cause may be shown by pointing to a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment. . . ." *Ellingsworth v. Vermeer Manufacturing Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020).

Federal Rule of Civil Procedure 16(e) provides that "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The parties concede that the "manifest injustice" standard of Rule 16(e) is "more demanding" than Rule 16(b)'s "good cause" standard (Dkt. Nos. 259, at 7; 272, at 9).

Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## III. Analysis

The Court denies Alleguard's motion to amend exhibit list (Dkt. No. 259).

### A. Federal Rule Of Civil Procedure 16

#### 1. Diligence

The Court determines that Alleguard fails to satisfy its burden under Rule 16.[7] A cursory review of the record in this case demonstrates that Alleguard has not acted diligently in attempting to comply with the Court's Order (Dkt. No. 120, at 3). Alleguard had every chance to produce during discovery the Amended Exhibits and then offer as trial exhibits the Amended Exhibits, yet, without fail, Alleguard declined the opportunity to do so. Instead, Alleguard made the deliberate choice not to produce the Amended Exhibits in discovery and to proceed with the position that the Amended Exhibits were unnecessary to its case (*see* Trial Tr., Vol. III, 647:18-23; Dkt. No. 259, at 3). If the Amended Exhibits were critical to Alleguard's case, Alleguard should have produced them in discovery and listed them on its trial exhibit list. If the Amended Exhibits are not necessary to Alleguard's case, then there is not good cause to permit leave to amend.

Applying the Eighth Circuit's analysis in *Ellingsworth*, the Court determines that Alleguard does not point to a change in the law, newly discovered facts—or newly "discovered" documents, given that the record supports that Alleguard and its parent company have refused to produce these documents in discovery since the early days of this case—or another significant change in circumstance that requires amendment. *Ellingsworth*, 949 F.3d at 1100. Moreover, like in *Ellingsworth*, "the litigation [is] at an advanced stage." *Id.* The parties are three days into a bench trial of this case. If the attempt to add the Amended Exhibits has "more to do with a change in litigation strategy than in the factual or legal basis of [the] case," which the record in this case

[7] For the reasons explained in this Order, Alleguard cannot satisfy the less demanding standard of "good cause" under Federal Rule of Civil Procedure 16(b). For these same reasons, the Court also determines that Alleguard does not satisfy the more demanding "manifest injustice" standard under Federal Rule of Civil Procedure 16(e).

supports, then this Court determines like in *Ellingsworth* "[t]hat is not sufficient to establish good cause" to permit the amendment. *Id.*

The Court writes to address Alleguard's contentions for why Alleguard believes it demonstrated diligence. The Court rejects each of them.

First, Alleguard argues that it acted with diligence because it could not have reasonably anticipated the need to list the Amended Exhibits as trial exhibits (Dkt. No. 259, at 8). The record belies Alleguard's assertion. Since April 2023, Alleguard has been on notice of Tyner's challenge to Alleguard's standing to enforce the 2001 Confidentiality Agreement in this case and the relevance of the Amended Exhibits (Dkt. No. 17, at 8–9). Alleguard, as the plaintiff in this case, has the affirmative obligation to demonstrate that it satisfies the requirements of Article III standing, which in a contract claim, necessarily involve proof of Alleguard's right to enforce the 2001 confidentiality agreement against Tyner. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017). Moreover, counsel for Alleguard cannot credibly claim that they did not know that the documents existed or did not know that Defendants sought those documents because counsel for Alleguard objected to subpoenas seeking transaction documents, and Alleguard's trial counsel were copied on Defendants' correspondence with Wynnchurch regarding efforts to identify the transaction documents (Dkt. Nos. 272-1–272-7). Moreover, in January 2026, Alleguard first provided the 2006 APA to the Court and Defendants.

Alleguard's second position skirts the question of whether it demonstrates good cause to amend (Dkt. No. 259, at 9–11). The Court understands Alleguard to argue that it can establish its contract claims without documentary evidence (*Id.*). The Court takes no position on whether this is possible or not; the Court declines to address the merits. However, notwithstanding Alleguard's merits-based argument, the Court is perplexed by Alleguard's middle-of-trial change in posture.

If Alleguard can establish its contract claims without documentary evidence, then Alleguard should do so. Accepting Alleguard's representation that it can prove its case without the documents (*see* Trial Tr., Vol. III, 647:18-23; Dkt. No. 259, at 3), there is no good cause for leave to amend Alleguard's trial exhibit list because such amendment would be unnecessary to Alleguard's case. On the other hand, if Alleguard requires documentary evidence not produced in discovery to prove its case, Alleguard's late breaking motion to amend appears to have "more to do with a change in litigation strategy than in the factual or legal basis" of the case. *Ellingsworth*, 949 F.3d at 1100. The possibility that Alleguard had a last-minute realization that it "had no other way to hold [Tyner] liable for allegedly" breaching the contract, even if true, is "not sufficient to establish good cause[.]" *Id.*

**2. Prejudice**

The Court also determines that, even if Alleguard were diligent in seeking to amend, which it was not, Defendants would be prejudiced by allowing Alleguard leave to amend now. Alleguard's contention that Tyner cannot claim surprise is unsupported by the record (Dkt. No. 259, at 15). The record reflects, and Defendants appear to agree, that Tyner was generally aware that the transactions in question occurred (Dkt. Nos. 259, at 6; 272, at 14). However, Alleguard presents no proof that Tyner was involved in the specific deals at the corporate level that would be supported, in part, by the Amended Exhibits nor that Tyner has any knowledge about the contents of the corporate level transaction documents that were the subject of subpoenas issued by Defendants but not complied with by Alleguard or its parent company in discovery and the subject of Judge Ray's Order directing Alleguard to produce all documents "under the broadest construction of relevance that the rules require" that were "relevant to the claims [Alleguard has] asserted in [its] complaint as well as being relevant to defenses the defendant has made." (Dkt. No.

260, Apr. 3, 2025, Hearing, at 22:18–22, 25:13–23). Thus, even though Tyner has a general awareness of the transactions, Tyner can still be prejudiced by the non-disclosed information in the corporate level transaction documents. There is no evidence in the record before the Court that Tyner possessed the corporate level transaction documents, that Tyner had specific knowledge of the contents of the corporate level transaction documents, nor that Tyner was responsible for producing them. Without something more, the Court declines to make the finding urged by Alleguard and declines to assign fault to Tyner on the failure to produce corporate level transaction documents.

Moreover, the Court determines that Defendants have demonstrated the potential prejudice of Alleguard's middle of trial amendment. By not having produced any of the Amended Exhibits until after the close of discovery, Alleguard thwarted Defendants' ability to depose any witnesses regarding the transactions and to conduct any further or follow-up discovery regarding the transactions. For instance, Alleguard includes in a footnote the reasons it contends the 2006 APA even though not signed by all parties should be admissible as evidence, claiming that "Defendants have identified no genuine question as to the authenticity of Alleguard's copy of the 2006 APA, nor any unfairness in its use" (Dkt. No. 259, at 14 n.9). That argument skips over the reality that Defendants did not have the 2006 APA during discovery to depose witnesses or conduct further or follow-up discovery regarding the authenticity of the document, its origins, or the underlying circumstances of the transaction itself to test whether the 2006 APA provided by Alleguard is authentic or admissible. That suffices to demonstrate prejudice at this stage of the bench trial.

Likewise, Defendants have every reason to anticipate surprise on the part of Alleguard because Defendants' copies of the proposed Amended Exhibits attached to Alleguard's motion are heavily redacted, despite counsel operating for years in this case pursuant to a Protective Order

with an attorneys' eyes only provision (Dkt. No. 35; *see also* Dkt. Nos. 50; 73; 136), meaning the Court understands at this stage that Defendants may still not have a full awareness of the contents of the Amended Exhibits, even though trial is to resume on Monday, August 10, 2026. None of the Amended Exhibits were produced during discovery, and the 2018, and 2020 transaction documents were never provided to the Court until submitted with the motion to amend exhibits filed in the middle of trial. Alleguard's proposed amendment is prejudicial to Defendants and directly contradicts counsel for Alleguard's ardent claim that "[w]e're not holding anything back. We're not trying to try this case surprise, and I will sit here and say that all day long. I am not trying to litigate this case by surprise. I am not trying to surprise them." (Trial Tr., Vol. I, 125:9–12).

**B. Federal Rule Of Civil Procedure 37**

Finally, while the Court determines that Alleguard fails to show good cause to amend its exhibit list and that Defendants face prejudice in allowing Alleguard to amend, in the alternative, the Court also notes that Alleguard's Amended Exhibits are inadmissible pursuant to Federal Rule of Civil Procedure 37(c)(1) and the Court's express instructions. Under Rule 37(c)(1), when a party fails to provide information, identify a witness, or produce documents pursuant to the broad disclosure requirements of Rule 26, the party is "not allowed to use" that information, witness, or document. Fed. R. Civ. P. 37(c)(1). Here, Alleguard did not produce any of the Amended Exhibits in discovery and cannot explain why. Indeed, despite Defendants' efforts to obtain copies of the Amended Exhibits, the record before the Court demonstrates that Alleguard stonewalled each of Defendants' many requests and attempts to obtain the documents. Under the circumstances of drawn out discovery, Alleguard's failure to produce the Amended Exhibits was not substantially justified nor was it harmless. Instead, Alleguard made the deliberate choice not to produce the

documents. Alleguard represented to this Court: "We did not produce the—Plaintiff did not produce the 2012, 2018, and 2020 documents because we do not intend to rely on those documents to prove our claims in the case, so we did not need to affirmatively provide them, and they also were not requested in discovery." (Trial Tr., Vol. III, 647:18-23). To allow Alleguard to change its position now would require turning a blind eye to the basic framework of discovery under the Federal Rules of Civil Procedure.

### C. Waiver, Completeness, And Federal Rule of Evidence 106

In an approximately eight-point-font footnote, Alleguard raises a flurry of additional reasons why the Court purportedly should permit Alleguard to amend its exhibit list (Dkt. No. 259, at 5 n.4). The Court, having studied each asserted reason, rejects each one. Among its arguments, Alleguard claims that: (1) Defendants' counsel's projection of the 2006 APA on the projector at trial waives Defendants' ability to object to the admission of the 2006 APA; (2) Federal Rule of Evidence 106's rule of completeness permits Alleguard to introduce the remainder of the statement; and (3) Tyner "opened the door" to the full admission of the evidence because Alleguard has a right to "clear up the false impression" that Tyner's reference to the 2006 APA may have created (*Id.*). Defendants correctly point out that, at best, these arguments can apply only to the 2006 APA, not the other proposed Amended Exhibits Alleguard seeks to add at this stage of the trial. Defendants also respond that, even as to the 2006 APA, the trial transcript reflects a very different reality, that the cases Alleguard cites are not on point, and that the rule of completeness is wholly inapposite (Dkt. No. 272, at 18).

The Court clarifies the record before it. Counsel for Defendants, while questioning McNab, requested the Bates numbers for "every single one of the deals from when Mr. Tyner signed [the 2001 contract] to when they went to enforce it." (Trial Tr., Vol. III, 646:7-10). Counsel

for Alleguard requested a recess (*Id.*, 646:18). After a short recess, counsel for Alleguard represented that Alleguard did not produce during discovery the 2006, 2012, 2018, or 2020 documents (*Id.*, 647:18–648:5). Counsel for Defendant, speaking to the Court with respect to the pending discovery dispute, then placed the 2006 APA on the projector and made argument regarding Alleguard's purported failure to establish standing. Defendants did not seek to admit the 2006 APA or offer the 2006 APA for its contents. No witness was presented with the 2006 APA, and to this point in the trial, no witness has been questioned on the contents of the 2006 APA.[8]

First, Alleguard's contention that "Tyner has waived any right to object" to the 2006 APA is unsupported by the cases Alleguard cites (Dkt. No. 259, at 5 n.4). Alleguard cites *Reinard v. Crown Equipment Corp.*, 983 F.3d 1064, 1066 (8th Cir. 2020), *Roth v. Homestake Mineral Co. of California*, 74 F.3d 843, 845–46 (8th Cir. 1996), and *United States v. Hernandez-Orozco,* 151 F.3d 866, 868-69 (8th Cir. 1998) (Dkt. No. 259, at 5 n.4). *Reinard* dealt with a plaintiff's waiver of objections to the admission of video simulations that the plaintiff preemptively introduced into evidence; the court determined preemptively introducing the evidence constituted waiver of objection to it, even after the court denied a motion in limine to exclude the evidence and even after the opposing party referenced the simulations during its opening statement at trial and displayed photographs from the filming of some of the simulations to prospective jurors during its "mini-opening" before *voir dire*. *Reinard*, 983 F.3d at 1066–69. *Roth* is no more helpful to Alleguard. In *Roth*, the plaintiff complained of the admission of a workers' compensation settlement figure as unfairly prejudicial. 74 F.3d at 844–45. The Eighth Circuit rejected Roth's

[8] Indeed, McNab testified that he had not seen asset purchase agreements or stock purchase agreements that date back to the company identified on the 2001 Confidentiality Agreement, Drew Foam Companies, Inc. (Trial Tr., Vol. III, 642: 11–17).

argument because Roth introduced the very exhibit that contained the settlement figure, not the opposing party (*Id.*).

*Hernandez-Orozco* is also not on point. 151 F.3d 866, at 868–69. Alleguard represents that *Hernandez-Orozco* stands for the proposition that "defense counsel's actual use of documents waived any objection to their introduction." (Dkt. No. 259, at 5 n.4). In *Hernandez-Orozco*, a criminal defendant complained of the admission of evidence that the defendant had given his wife some forged documents. 151 F.3d at 868–69. The defendant conceded at trial and on appeal that the evidence was admissible. *Id.* The defendant argued that the timing of the evidence's admission was an error. *Id.* The Eighth Circuit held that, in the light of the defendant's concessions regarding the evidence's admissibility and the defendant's use of the evidence, the only challenge was to timing of the evidence's introduction. *Id.*

Here, the 2006 APA was injected into this case in January 2006 by Alleguard in response to Tyner's motion for partial summary judgment. The 2006 APA was not produced during discovery. Neither Alleguard nor Tyner nor Creative Foam introduced the 2006 APA into evidence at trial, and the 2006 APA was not on Alleguard or Defendants' exhibit lists. Defendants did not "use" as evidence the 2006 APA or the other non-produced and late provided Amended Exhibits. Defendants did not question McNab about the contents of the 2006 APA. Instead, in argument to the Court, Defendants placed the document on the projector with respect to Defendants' longstanding discovery dispute that Alleguard failed to produce the document in discovery. Defendants' references to the 2006 APA were limited to argument to the Court regarding discovery.

*Reinard*, *Roth*, and *Hernandez-Orozco* do not apply. *Reinard* and *Roth* do not apply because Defendants do not complain about the admission of evidence that Defendants introduced,

preemptively or on their own accord, into evidence. At no time did Defendants introduce or seek to introduce the 2006 APA into evidence. *Hernandez-Orozco* does not apply because Defendants do not complain about the admission of evidence that Defendants concede is admissible—Defendants contend that the 2006 APA and other Amended Exhibits are inadmissible under Federal Rule of Civil Procedure 37. Defendants' reference to the 2006 APA is a complaint about documents that were not produced during discovery, despite being requested and ordered by Judge Ray to be produced, and Defendants' complaint about the 2018 and 2020 transaction documents is that those documents were not produced in discovery and were first provided, in redacted form, on July 24, 2026.

Second, Alleguard's argument regarding the rule of completeness of Federal Rule of Evidence 106 is rejected by the Court; the rule of completeness does not apply under these circumstances. The 2006 APA is not part of evidence in this case, and Defendants have not offered it as evidence. As such, there is not a "a part of a statement" in evidence for which fairness requires "any other part" to be considered at the same time. Fed. R. Evid. 106.

Third, the Court is unconvinced by Alleguard's argument that Defendants made "unfairly selective use of the document's contents in front of the Court." (Dkt. No. 259, at 5 n.4). Alleguard cites *Valdez v. Watkins Motor Lines, Inc.*, 758 F.3d 975 (8th Cir. 2014), for the proposition that "when one party makes prejudicial use of related evidence, the opponent may introduce otherwise inadmissible material to 'clear up the false impression' or 'complete an issue opened up by opposing counsel,' and that a party who opens the door cannot complain about admission of the responsive evidence." (Dkt. No. 259, at 5 n.4). In *Valdez*, the Eighth Circuit explained that, "[i]n theory, the admission of inadmissible evidence allows the injured party to cure the problem and clear up the false impression or to clarify or complete an issue opened up by [opposing] counsel."

758 F.3d at 981 (internal quotations omitted). "But the door is not opened to all similar, inadmissible evidence. Rather, [t]he evidence introduced [in response] must rebut something that had been elicited. . . . The doctrine of opening the door cannot be subverted into a rule for injection of prejudice." *Id.* (internal quotations omitted).

*Valdez* is inapplicable because Alleguard first provided the 2006 APA in January 2026 in response to Tyner's motion for partial summary judgment. If any party did, Alleguard made unfairly selective use of the document's contents in front of the Court by first providing the document after the close of discovery in an effort to defeat Tyner's motion for partial summary judgment. Alleguard first provided the document after the close of discovery, despite requests for the document during discovery and despite being ordered by Judge Ray to produce the document during discovery. Moreover, the 2006 APA was never introduced into evidence at trial by any party, nor was testimony regarding the contents of the 2006 APA or any other proposed Amended Exhibit elicited on cross examination during trial. The 2006 APA is not listed on any party's exhibit list and, therefore, could not be introduced as evidence at the trial of this matter given the Court's directive at the pretrial hearing. Indeed, McNabb—the only witness to take the stand in the three days of trial to date—has not testified about the 2006 APA or any of the other proposed Amended Exhibits.

**IV. Conclusion**

For the foregoing reasons, the Court denies Alleguard's motion for leave to amend exhibit list (Dkt. No. 259).

It is so ordered this 10th day of August, 2026.

Kristine G. Baker
Chief United States District Judge